GIRARDI | KEESE
THOMAS V. GIRARDI, Bar No. 36603
ROBERT W. FINNERTY, Bar No. 119775
1126 Wilshire Boulevard
Los Angeles, California 90017
Telephone:  (213) 977-0211
Facsimile:  (213) 481-1554

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

|  |  |
|---|---|
| KIMBERLY ARCHIE, as survivor of decedent Paul Bright Jr., JO CORNELL, as survivor of decedent Tyler Cornell, on behalf of themselves and all others similarly situated <br><br> Plaintiffs, <br><br> vs. <br><br> POP WARNER LITTLE SCHOLARS, INC., a nonprofit corporation; NATIONAL OPERATING COMMITTEE ON STANDARDS ATHLETIC EQUIPMENT, a nonprofit organization; USA FOOTBALL, a foreign nonprofit corporation , and DOES 1-100 <br><br> Defendants. | CASE NO. 2:16-cv-6603 <br><br> **CLASS ACTION COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

/ / /

/ / /

/ / /

/ / /

/ / /

## CLASS ACTION COMPLAINT

Kimberly Archie, as survivor of decedent Paul Bright Jr., and Jo Cornell, as survivor of decedent Tyler Cornell, on behalf of themselves and all others similarly situated (hereinafter "Plaintiffs and the Class Members") bring this class action complaint and allege the following against Defendants Pop Warner Little Scholars, Inc., National Operating Committee on Standards Athletic Equipment, USA Football, and DOES 1-100 (collectively "Defendants") and each of them as follows:

## I.

## FACTUAL BACKGROUND

1.     The Pop Warner Little Scholars program is a youth tackle football, cheer and dance program founded in 1929. Pop Warner was incorporated as a national nonprofit corporation  in 1959.

2.     Today, the Pop Warner program consists of eight regional conferences across forty-two states and several countries. Each region consists of separate leagues, associations and teams.

3.     Upon information and belief, over 250,000 children participate in the Pop Warner tackle football program per year.

4.     This action arises from the failures of Pop Warner Little Scholars, Inc., National Operating Committee on Standards Athletic Equipment and USA Football to provide for the safety and health of minor child participants of the Pop Warner tackle football program.

5.     Pop Warner Little Scholars, Inc., National Operating Committee on Standards Athletic Equipment and USA Football misrepresented material facts to Plaintiffs and the Class Members and the public at large regarding the safety of Pop Warner tackle football, including the safety of the equipment used by minor child participants.

/ / /

6.     According to National Operating Committee on Standards Athletic Equipment (hereinafter "NOCSEA"), all youth football helmets used by Pop Warner participants are governed by NOCSEA equipment safety standards.

7.     All Pop Warner hard-shell helmets contain a sticker stating that the helmet "meets NOCSEA standard".

8.     However, NOCSEA concedes that there are no youth specific helmet safety standards.

9.     As a result, NOCSEA's representation that the Pop Warner equipment, including but not limited to hard-shell helmets, meets NOCSEA standards is misleading, creating a false sense of security for Pop Warner participants and the parents and/or guardians who enroll them.

10.     Defendants NOCSEA, Pop Warner and USA Football have approved the NOCSEA helmet standard labels that are used knowing that they are misleading and will lead to injury for minor children.

11.     Pop Warner and USA Football have similarly engaged in misleading representations regarding the safety of Pop Warner football.

12.     Pop Warner advertises itself as a safety-first organization in which children play for coaches trained in proper tackling techniques, and that this technique makes youth tackle football safe for children as young as 5, who weigh as little as 45 pounds.

13.     In the Pop Warner Defendants' promotional documents and advertisements, Pop Warner claims, **"Datalys Institute's research data show that Pop Warner Rules and Heads-Up Football Training result in injury rate that has 87% fewer injuries than non-Heads-Up/non Pop Warner programs."**

14.     Defendant USA Football's also claimed in late 2015:

**Youth football leagues adopting Heads Up Football typically have 87 percent lower injury rates during practice in organizations with Heads Up Football coach education plus Pop Warner practice guidelines that**

-3-

**limit contact … [and] 82 percent lower concussion rate during practice
with Heads Up Football coach education and Pop Warner practice
guidelines among 11- to 15-year-old athletes.**

15.    However, it was later discovered that the "Heads Up" football training program did not reduce the risk of injury by the numbers reported.

16.    Pop Warner and USA Footballs' false representations regarding the safety of youth tackle football misled parents and/or guardians into enrolling their children in the Pop Warner program.

17.    Pop Warner further engages in false and misleading advertising regarding the level of training of their coaches and staff.

18.    For example, Pop Warner's website boasts:

**We have over 40,000 volunteers and coaches that are being trained
every year to offer the best and safest programs for you and your
children…The safety of our athletes is always the top priority and that
is why we provide extensive training for all our football and cheer &
dance coaches.**

19.    However, upon information and belief, Jon Butler, executive director of Pop Warner Little Scholars, Inc., conceded in a deposition that the national Pop Warner office does not check whether coaches in fact receive such training.

20.    Moreover, Jon Butler further conceded in a deposition that Pop Warner does not employ personnel with a medical background, athletic training background, or physical education background.

21.    Pop Warner, NOCSEA and USA Football continue to mislead Plaintiffs and the Class Members and the public at large regarding the safety of Pop Warner football, the equipment used, the techniques taught and the level of training of their coaches on the topic of child safety.

/ / /

-4-

22. Both Pop Warner and USA Football fail to adequately ensure that their coaches were properly trained and educated on the topic of safety, and what techniques were reasonably safe to teach minor child participants based on child appropriate performer readiness.

23. Moreover, Pop Warner and National Operating Committee on Standards for Athletic Equipment failed to adequately ensure that the equipment used by Pop Warner participants was adequate to protect minor children against the risk of brain injuries.

24. Pop Warner, NOCSEA, and USA Football each owe a duty of care to the minor children who participate in their Pop Warner program. An adult is required to exercise a greater degree of care towards children and anticipate their ordinary behavior. CACI 412. Furthermore, "A greater degree of care is generally owed to children because of their lack of capacity to appreciate risks and to avoid danger." *McDaniel v. Sunset Manor Co.* (1990) 220 Cal.App.3d 1, 7, citing *Casas v. Maulhardt Buick, Inc.* (1968) 258 Cal.App.2d 692, 697–700.

25. Pop Warner, NOCSEA, and USA Football's fraudulent misrepresentations regarding the safety of youth tackle football and their failure to meet their duty to safeguard minor children, including Plaintiffs and the Participant Class Members, against the increased risk associated with youth tackle football including but not limited repetitive head trauma coupled with the use of hard-shell helmets, a duty in which they voluntarily undertook, was willful, wanton, egregious, reckless, and with a high degree of moral culpability.

26. As a result of Pop Warner, NOCSEA, and USA Football's gross negligence and fraudulent misrepresentations, Plaintiffs and the Participant Class Members suffered repeated head trauma, including multiple concussions, which has led to severe chronic brain injuries, including but not limited to depression and Chronic Traumatic Encephalopathy (hereinafter "CTE").

/ / /

## II.

## PARTIES

**A.**   **Plaintiffs:**

27.   Plaintiff, Kimberly Archie, as survivor of decedent Paul Bright Jr., is a resident of the City of North Hollywood, County of Los Angeles, in the State of California. Paul Bright Jr. participated in Defendants Pop Warner's program from 1997 through 2004. In particular, Paul Bright Jr. was a member of the Sparks Pop Warner Steelers in Sparks, Nevada. In 2008, Paul Bright Jr. began experiencing behavioral issues acting unpredictably, recklessly and without care for the consequences. Paul had ongoing issues with concentrating, sleep disturbances, managing his emotions and decision making that escalated from his senior year of high school until his death. On September 1, 2014, Paul Bright Jr.'s erratic and reckless behavior ultimately lead to his untimely death. On April 9, 2015 it was discovered that Paul Bright Jr. suffered from Chronic Traumatic Encephalopathy.

28.   Plaintiff, Jo Cornell, as survivor of decedent Tyler Cornell, is a resident of the City of San Diego, in the State of California. Tyler Cornell participated in Defendants Pop Warner's program from 1997 through 2002. In particular, Tyler Cornell was a member of the Wescon Region Pop Warner Division, Rancho Bernardo, in San Diego, California. After his career with Pop Warner, Tyler began experiencing behavioral issues and was diagnosed with depression. On April 3, 2014 Tyler Cornell took his own life. On January 16, 2015 it was discovered that Tyler Cornell suffered from Chronic Traumatic Encephalopathy.

**B.**   **Defendants:**

29.   Defendant, Pop Warner Little Scholars, Inc. (hereinafter referred to as "Pop Warner") is a non-profit corporation incorporated and headquartered in Pennsylvania. Pop Warner Little Scholars, Inc. provides youth tackle football, cheerleading and dance programs for children ages 5 to 15 years old. Pop Warner Little Scholars, Inc. is a national

-6-

nonprofit corporation that operates across forty-two states, including California, and throughout numerous countries worldwide.

30.  Defendant, National Operating Committee on Standards for Athletic Equipment is a nonprofit organization with its principal place of business in Overland Park, Kansas. The NOCSEA organization sets the standards for athletic equipment safety. The NOCSAE organization is comprised of representatives from a number of national representative organizations that have an interest in athletic equipment. These include manufacturers, re-conditioners, athletic trainers, coaches, equipment managers, sports medicine and consumer organizations. NOCSEA is a self-appointed standard setting body whose members' primary focus is to generate profits.

31.  Defendant, USA Football is a 501(c)(3) non-profit organization organized under the laws of Virginia, with its headquarters at Indianapolis, Indiana. USA Football is the official youth football development partner of the NFL and its thirty-two teams.

32.  The true names and/or capacities, whether individual, corporate, associate or otherwise, of Defendants DOES 1 through 100, inclusive, and each of them, are unknown to Plaintiffs and the Class Members, who therefore sue said Defendants by such fictitious names.  Plaintiffs and the Class Members are informed and believe, and upon such information and belief allege, that each of the Defendants fictitiously named herein as a DOE is legally responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to, and proximately caused the injuries and damages to Plaintiffs and the Class Members hereinafter alleged.  Plaintiffs and the Class Members will seek leave of Court to amend this Complaint to assert the true names and/or capacities of such fictitiously named Defendants when the same have been ascertained.

33.  Plaintiffs and the Class Members are informed and believe, and based thereupon allege, that at all times mentioned herein, Defendants, and each of them, including DOES 1 through 100, were the agents, servants, employees and/or joint venturers of their co-Defendants, and were, as such, acting within the course, scope and authority of

-7-

said agency, employment and/or joint venture, and that each and every Defendants, as aforesaid, when acting as a principal, was negligent in the selection and hiring of each and every Defendants as an agent, employee and/or joint venturer.

## III.

## JURISDICTION AND VENUE

34.     Jurisdiction is proper pursuant to 28 U.S.C. § 1332 (d), the Class Action Fairness Act of 2005, because the proposed Class consists of more than 100 members; the amount in controversy exceeds the jurisdictional requirement of $5,000,000 exclusive of costs and interest; and diversity exists. The Court may also exercise supplemental jurisdiction over Plaintiff's and Class Member's state law claims pursuant to 28 U.S.C. § 1367.

35.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(3) because all Defendants are subject to this Courts personal jurisdiction. Each Defendant has the requisite minimum contacts with California so as to be subject to both types of personal jurisdiction – general jurisdiction and specific jurisdiction. All of Defendants contacts have been continuous and systematic over a significant period of time and throughout the Class period. Defendant Pop Warner operates several divisions throughout California. Moreover, Defendants NOCSEA and USA Football govern the rules of youth football played in California and encourage youth participation in the various divisions throughout California, including Los Angeles and Ventura. As described herein, Defendants' actions and omissions have caused harm in California to California residents, including minor children, and will continue to do so unless enjoined. Moreover, Defendants have had substantial, continuous, and systematic other contacts with California.

/ / /

/ / /

/ / /

# IV.

## CLASS ACTION ALLEGATIONS

36.     Plaintiffs, Kimberly Archie, as survivor of decedent Paul Bright Jr., and Jo Cornell, as survivor of decedent Tyler Cornell, brings this action on behalf of themselves and pursuant to the Federal Rules of Civil Procedure Rule 23(a), (b)(2), and (b)(3) and on behalf of the following class(es) of persons:

**The Participant Class:**

All persons, including deceased individuals, who participated in the Pop Warner youth tackle football program between 1997 to the present and are suffering or have suffered from brain injuries, damage or disease.

**The Adult Class**

All persons who enrolled their minor children in the Pop Warner tackle football program between 1997 to the present.

37.     Excluded from the Classes are:

(a) the officers and directors of any of Defendants;

(b) any judge or judicial officer assigned to this matter and his or her immediate family and staff; and

(c) any legal representatives, successor, or assign of any excluded persons or entities.

38.     This action is properly maintained as a class action because Plaintiffs can prove the  elements of each claim on a class-wide basis, using the same evidence that Plaintiffs would use to maintain and prove and individual action. Thus, the action may be properly maintained on behalf of each of the proposed Classes pursuant to FRCP 23.

39.     The Members of each Class are so numerous that joinder of all members would be impracticable. The  precise number of Class Members is unknown at this time. However, based on information and belief, the members of the Participant Class are made up of hundreds of thousands of members evidenced by the estimate that approximately 250,000

-9-

children enroll in Pop Warner tackle football across the country per year. Moreover, millions of minor children have participated in the program between 1997 to the present. In addition, based on information and belief, the members of the Parent Class are similarly made up of thousands of members evidenced by the estimate that approximately 250,000 children are enrolled by their parents and/or guardians in Pop Warner tackle football across the country per year. Moreover, millions of parents and/or guardians have enrolled their minor children in the program between 1997 to the present.

40.     Questions of law and fact common to the Class Members predominate over any questions affecting any individual member, and a class action is superior to all other available methods for the fair and efficient adjudication of the controversy.

41.     Common questions of law and fact include but are not limited to:

    a.  Whether Defendants misrepresented the safety of its youth tackle football;

    b.  Whether Defendants misrepresented the safety of their equipment;

    c.  Whether Defendants,  Pop Warner and USA Football's, representations about the qualifications of its coaches and the safety of its programs was likely to deceive consumers into enrolling in their programs;

    d.  Whether Plaintiffs and the Class Members are entitled to compensatory damages, including punitive and other monetary relief; and

    e.  Whether Plaintiff and Classes are entitled to relief, including but not limited to equitable, injunctive, and restitution.

42.      Plaintiffs' claims are typical of Class Member's claims because Class Members were comparably injured through Defendants' illegal and wrongful conduct as described herein.

43.     Plaintiffs are adequate Class Representatives because Plaintiffs are committed to prosecuting the action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of other Members of the Class and

CLASS ACTION COMPLAINT

Plaintiffs have the same non-conflicting interests as the other Class Members. Plaintiffs and their counsel  would fairly and adequately represent the interests of the Class Members.

44.    Class treatment is superior to any other available means of prosecution of fair and efficient adjudication of this controversy. There are no unusual difficulties that are likely to arise in the management of this action. The damages and other financial detriment suffered by Plaintiffs and Class Members are small compared to the burden and expense of prosecuting each action individually. Thus, it would be impracticable for Plaintiffs and Class Members to bring individual actions against Defendants for its wrongful and illegal conduct. Further, class treatment benefits the courts. Individualized litigation promises inconsistent or contradictory judgments, unnecessary overlap of resources, and increases the delay and expense to all those accessing the courts. Class treatment brings with it the benefit of a single adjudication, the supervision of a single court, and the consolidation of the courts' and the parties' resources.

45.    The prosecution of separate actions by individual Class Members would create the risk of inconsistent or varying adjudications with respect to individual Class Members which would establish incompatible standards of conduct for Defendants or which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests. Defendants have acted, or refused to act, on grounds generally applicable to, and causing injury to the Class Members. Therefore, preliminary and final injunctive relief and damages for Defendants' illegal conduct is appropriate.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

CLASS ACTION COMPLAINT

# V.

## FIRST CAUSE OF ACTION

## INDIVIDUALLY AND ON BEHALF OF THE CLASS MEMBERS:

## NEGLIGENCE

46.     Plaintiffs and the Class Members re-allege and incorporate by reference each of the preceding allegations in this complaint as though fully set forth at length herein.

47.     Defendants have violated Section 323 of the Restatement (Second) of Torts as adopted by the Courts in California, which states that,

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking.

48.     Throughout Defendants history, Defendants have consistently voluntary assumed a duty to protect the health and safety of its minor participants through the introduction of equipment such as hard-shell helmets and implementation of rules, policies and regulations.

49.     By enacting rules to protect the health and safety of its players, Defendants have repeatedly confirmed its duty to take reasonable and prudent actions to protect the health and safety of its minor tackle football participants when known and foreseeable risks exist.

50.     Moreover, Defendants reaffirm their duty by and through their respective websites and other public statements wherein they proclaim that the safety and protection of youth tackle football participants is their highest priority.

/ / /

-12-

51.    Defendants breached their duty to its players, including Plaintiffs and the Participant Class, to use ordinary care to protect the physical and mental health of the players, and to prevent them from being exposed to unreasonable risk of injury.

52.    Throughout the many years that Defendants have repeatedly established their duty to protect the health and safety of its players when known and foreseeable risks exist, Defendants failed to create and implement league-wide guidelines concerning the treatment and monitoring of players who suffer a brain injury during a practice or a game. Moreover, Defendants have failed to establish equipment standards that are designed and serve to protect minor children who participate in Defendants tackle football program, including Plaintiffs and the Participant Class.

53.    It has been well established since 1928 that repeated blows to the head can lead to head trauma, including CTE, commonly known as "punch drunk syndrome." Punch Drunk Syndrome has been prevalent in boxers who have repeatedly suffered concussions.

54.    Despite the fact that other sporting associations exist, such as the World Boxing Association, which have decades ago established standardized association-wide concussion management rules, Defendants failed to establish any guidelines or policies to protect the mental health and safety of its minor players.

55.    Moreover, Defendants failed to ensure that the safest equipment is used to protect its minor participants, including Plaintiffs and the Participant Class.

56.    An adult is required to exercise a greater degree of care towards children and anticipate their ordinary behavior. CACI 412. Furthermore, "A greater degree of care is generally owed to children because of their lack of capacity to appreciate risks and to avoid danger." *McDaniel v. Sunset Manor Co.* (1990) 220 Cal.App.3d 1, 7, citing *Casas v. Maulhardt Buick, Inc.* (1968) 258 Cal.App.2d 692, 697–700.

57.    Defendants' failures to fulfill its assumed duty to protect its minor players, including Plaintiffs and the Participant Class, include, but is not limited to, the following failures:

(a)     Failure to regulate and monitor practices, games, rules, equipment, and medical care so as to minimize the long-term risks associated with brain injuries including repetitive sub-concussive hits suffered by Pop Warner participants, including Plaintiffs and the Participant Class;

(b)     Failure to require that an adequate brain injury history be taken of Pop Warner participants;

(c)     Failure to ensure accurate diagnosis and recording of brain injury so the condition can be treated in an adequate and timely manner;

(d)     Failure to license and approve the best equipment available that will reduce, not increase, the risk of brain injury to minor children who participate in the Pop Warner football program;

(e)     Defendants increase of the risk of injury to minor children through repetitive head trauma coupled with the use of hard-shell helmets not adequately designed to protect their unique features and vulnerabilities.

58.     Defendants breached its assumed duty to protect the health and safety of its players, including Plaintiffs and the Participant Class, by subjecting them to an increased risk of brain injury, damage or disease through the use of equipment that is inadequately designed to protect the physical and mental health of minor children.

59.     Moreover, Defendants breached their assumed duty to protect the health and safety of its players, including Plaintiffs and the Participant Class, by failing to ensure that coaches are adequately trained and educated on the risks to minors of developing brain injury, damage or disease.

60.     National organizations have a responsibility to enforce rules they promulgate at the community level.

61.     Defendant Pop Warner advertises itself as a safety-first organization in which children play for coaches trained in proper tackling technique.

62.     Upon information and belief, Jon Butler, executive director of Defendant Pop Warner conceded in a deposition that the national office does not check whether coaches in fact receive such training.

63.     Moreover, Jon Butler further conceded in a deposition that Pop Warner does not employ personnel with a medical background, athletic training background, or physical education background.

64.     Defendants failed to provide complete, current, and competent information and directions to Pop Warner coaches and Plaintiffs and the Class Members regarding brain injuries and its prevention, symptoms, and treatment.

65.     If Defendants would have taken the necessary steps to oversee and protect Pop Warner participants, including  Plaintiffs and the Participant Class, by developing and implementing necessary guidelines, policies, and procedures; providing reasonably safe helmets designed for use by minor children; and educating and training all persons involved with the Pop Warner Teams in the recognition, prevention, and treatment of brain injuries, then Pop Warner participants, such as Plaintiffs and the Participant Class, would not have suffered from repeated head trauma or the effects of that condition, would have recovered more rapidly, or would not have suffered or become at risk of suffering from long-term brain damage, dementia, depression and CTE, as well as other long term brain injuries.

66.     Under all of the above circumstances, it was foreseeable that Defendants violations of their duties would cause or substantially contribute to the personal injuries suffered by Plaintiffs and the Participant Class.

67.     The aforementioned acts and omissions of the Defendants demonstrate that the Defendants acted with callous indifference to the rights and duties owed to Plaintiffs, the Participant Class and the public at large.

68.     The Defendants acted willfully, wantonly, egregiously, with reckless abandon, and with a high degree of moral culpability.

-15-

CLASS ACTION COMPLAINT

69.     Defendants committed acts of omission and commission, which collectively and severally, constituted gross negligence.  Defendants' gross negligence was a proximate and producing cause of the personal injuries, death and other damages suffered by Plaintiffs and the Participant Class.

70.     As a direct and proximate result of Defendants gross negligence, Plaintiffs and the Participant Class have suffered economic losses, including, but not limited to, loss of income, brain injury, damage and disease and death.

71.     As a direct and proximate result of Defendants gross negligence, Plaintiffs and the Participant Class are entitled to damages, as alleged herein or allowed by law, from Defendants in an amount reasonably anticipated to exceed the jurisdictional minimum.

## VI.

### SECOND CAUSE OF ACTION

### INDIVIDUALLY AND ON BEHALF OF THE CLASS MEMBERS:

### FRAUD

72.     Plaintiffs and the Class Members re-allege and incorporate by reference each of the preceding allegations in this complaint as though fully set forth at length herein.

73.     According to CCP §1709 "One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." CCP §1710 further states "A deceit, within the meaning of the last section, is either:

1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;

2. The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true;

/ / /

/ / /

-16-

CLASS ACTION COMPLAINT

3. The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or,

4. A promise, made without any intention of performing it."

74.    Defendants Pop Warner and USA Football made material representations to youth tackle football participants and the parents and/or guardians of said participants, including Plaintiffs and the Class Members, and the public at large regarding the safety of tackle football for minor children, the level of training and education received by the coaches of Pop Warner football and the adequacy of the equipment worn by Pop Warner participants.

75.    The material misrepresentations made by Defendant Pop Warner include but are not limited to remarks that all Pop Warner coaches are provided extensive training to ensure the safety of the minor children who participate in the Pop Warner program.

76.    In fact, the national Pop Warner office does not check whether coaches in fact receive such training.

77.    The material misrepresentations made by Defendant USA Football include but are not limited to remarks that youth football leagues adopting Heads Up Football training experience a significantly lower rate of head injuries.

78.    It was later revealed that said training program does not reduce the risk of injury by the numbers reported.

79.    The material misrepresentations made by Defendant NOCSEA include but are not limited to remarks that all youth Pop Warner helmets meet NOCSEA standards.

80.    Defendant NOCSEA's remarks are misleading because NOCSEA concedes that there are no youth specific helmet safety standards.

81.    Defendants have approved the NOCSEA helmet standard labels that are used and know that they are misleading and will lead to injury for minor children.

82. Defendants knew that the material misrepresentations were false when they were made.

83. The persons who made the misrepresentations as agents of Defendants and Defendants intended to defraud, among others, the Plaintiffs and the Class Members in this action.

84. The Plaintiffs and the Class Members, among others, justifiably relied on these misrepresentations to their detriment.

85. Defendants knew that the Plaintiffs and the Class Members would rely on Defendants misrepresentations.

86. The Plaintiffs and the Class Members, among others, were damaged by these misrepresentations.

87. As a direct and proximate result of Defendants fraudulent conduct, Plaintiffs and the Class Members have suffered economic losses, including, but not limited to, loss of income, brain injury, damage and disease and death.

88. As a direct and proximate result of Defendants fraudulent conduct, Plaintiffs and the Class Members are entitled to damages, as alleged herein or allowed by law, from Defendants in an amount reasonably anticipated to exceed the jurisdictional minimum.

## VII.
## THIRD CAUSE OF ACTION
## INDIVIDUALLY AND ON BEHALF OF THE CLASS MEMBERS:
## FRAUDULENT CONCEALMENT

89. Plaintiffs and the Class Members re-allege and incorporate by reference each of the preceding allegations in this complaint as though fully set forth at length herein.

90. According to CCP §1709 "One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he

-18-

thereby suffers." CCP §1710 further states "A deceit, within the meaning of the last section, is either:

>    1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;

>    2. The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true;

>    3. The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or,

>    4. A promise, made without any intention of performing it."

91.     Defendants concealed from Plaintiffs and the Class Members the risks and health consequences of minors sustaining repetitive sub-concussive hits and head injuries, and intentionally misrepresented to Plaintiffs and the Class Members that tackle football with hard-shell helmets is safe for minor children. Moreover, Defendants fraudulently concealed the fact that NOCSEA does not maintain equipment standards for youth tackle football participants. Instead, Defendants misrepresented that Pop Warner helmets meet NOCSEA standards without disclosing that NOCSEA does not maintain standards specific to youth participants.

92.     Defendants NOCSEA, Pop Warner and USA Football have approved the NOCSEA helmet standard labels that are used and know that they are misleading and will lead to injury for minor children.

93.     Defendant Pop Warner also misrepresented the level of training and education received by Pop Warner coaches so as to instill a false sense of security in Plaintiffs and the Class Members, including the parents and/or guardians of the Pop Warner participants.

94.     Defendants, through misleading advertisements, public statements and published articles misrepresented the level of risk associated with youth tackle football and concealed the lack of adequate safety standards for youth football equipment.

95.     Defendants' advertisements have clearly created player reliance. Defendant Pop Warner stated that **"We have over 40,000 volunteers and coaches that are being trained every year to offer the best and safest programs for you and your children…The safety of our athletes is always the top priority and that is why we provide extensive training for all our football and cheer & dance coaches."**

96.     Moreover, Defendant USA Football stated:

**Youth football leagues adopting Heads Up Football typically have 87 percent lower injury rates during practice in organizations with Heads Up Football coach education plus Pop Warner practice guidelines that limit contact … [and] 82 percent lower concussion rate during practice with Heads Up Football coach education and Pop Warner practice guidelines among 11- to 15-year-old athletes.**

97.     Defendants also represent on the helmets of Pop Warner participants that the helmets meet NOCSEA standards. However, Defendants intentionally omit that NOCSEA does not maintain safety standards for youth equipment.

98.     Defendants willfully concealed their omissions and false representations from Plaintiffs and the Class Members in order to prevent negative publicity and induce Plaintiffs and the Class Members to participate in the Pop Warner program.

99.     Defendants knew that Plaintiffs and the Class Members would rely on the inaccurate information provided by Defendants.

100.    Plaintiffs and the Class Members relied on this inaccurate information during their enrollment in Defendants programs.

101.    Plaintiffs and the Class Members had no way of knowing that Defendants representations were false and dangerously misleading.

102.    As a direct and proximate result of Defendants fraudulent conduct, Plaintiffs and the Class Members have suffered economic losses, including, but not limited to, loss of income, brain injury, damage and disease and death.

103.   As a direct and proximate result of Defendants fraudulent conduct, Plaintiffs and the Class Members are entitled to damages from Defendants in an amount reasonably anticipated to exceed the jurisdictional minimum.

## VIII.
## FOURTH CAUSE OF ACTION
## INDIVIDUALLY AND ON BEHALF OF THE CLASS MEMBERS:
## NEGLIGENT MISREPRESENTATION

104.   Plaintiffs and the Class Members re-allege and incorporate by reference each of the preceding allegations in this complaint as though fully set forth at length herein.

105.   Defendants Pop Warner and USA Football made multiple material misrepresentations to youth tackle football participants and the parents and/or guardians of said participants, including Plaintiffs and the Class Members, and the public at large through public statements, published articles and advertisements which it knew or should have known were misleading. These material misrepresentations involve the safety of tackle football for minor children, the safety of their age of entry, the level of training and education received by the coaches of Pop Warner football and the adequacy of the equipment worn by Pop Warner participants.

106.   The material misrepresentations made by Defendant Pop Warner include but are not limited to remarks that all Pop Warner coaches are provided extensive training to ensure the safety of the minor children who participate in the Pop Warner program.

107.   In fact, the national Pop Warner office does not check whether coaches in fact receive such training.

108.   The material misrepresentations made by Defendant USA Football include but are not limited to remarks that youth football leagues adopting Heads Up Football training experience a significantly lower rate of head injuries.

/ / /

-21-

109.   However, it was later discovered that the "Heads Up" football training program did not reduce the risk of injury by the numbers reported.

110.   Moreover, Defendants misrepresented that Pop Warner helmets meet NOCSEA standards without disclosing that NOCSEA does not maintain standards specific to youth participants.

111.   Defendants NOCSEA, Pop Warner and USA Football have approved the NOCSEA helmet standard labels that are used and knew, or should have known, that they are misleading and will lead to injury for minor children.

112.   Defendants made these misrepresentations and actively concealed adverse information at a time when they knew, or should have known, because of their superior position of knowledge, that the statements and representations were not true.

113.   Defendants knew or should have known of the misleading nature of these statements when they were made.

114.   Although Defendants may have honestly believed that their representations were true, Defendants had no reasonable grounds for believing that the representations were true when they made them.

115.   The Plaintiffs and the Class Members, among others, reasonably relied on Defendants misrepresentations to their detriment when deciding whether to participate and/or enroll their children in the Pop Warner tackle football programs.

116.   Defendants knew, or should have known, that the Plaintiffs and the Class Members would rely on the Defendants misrepresentations.

117.   Defendants  made misrepresentations and actively concealed information with the intention that Plaintiffs and the Class Members would rely on the misrepresentations or omissions in selecting their course of action.

118.   The Plaintiffs and the Class Members, among others, were damaged by these misrepresentations.

/ / /

119.   As a direct and proximate result of Defendants negligent misrepresentations, Plaintiffs and the Class Members have suffered economic losses, including, but not limited to, loss of income, brain injury, damage and disease and death.

120.   As a result of the negligent acts and omission of Defendants, Plaintiffs and the Class are entitled to damages, as alleged herein or allowed by law, from Defendants in an amount reasonably anticipated to exceed the jurisdictional minimum.

## IX.

### FIFTH CAUSE OF ACTION

### INDIVIDUALLY AND ON BEHALF OF THE CLASS MEMBERS:

### (VIOLATION OF BUSINESS & PROFESSIONS CODE § 17200 et seq.;

### DECEPTIVE BUSINESS PRACTICES)

121.   Plaintiffs and the Class Members re-allege and incorporate by reference each of the preceding allegations in this complaint as though fully set forth at length herein.

122.   The conduct of Defendants with respect to the systematic marketing and deception of Pop Warner participants, both minor children and the parents and/or guardians of said children, including Plaintiffs and the Class Members, as more particularly described above is an unlawful or deceptive business practice within the meaning of California Business and Professions Code § 17200 prohibiting such practices.  Defendants' unlawful practices include the Defendants' representations through advertising that  provided a safe environment for children.  These statements were made despite the Defendants' knowledge of the lack of safety precautions for children.

123.   Plaintiffs, on behalf of themselves, the Class Members, and the general public, seek an order requiring Defendants to immediately cease such acts of unlawful, deceptive and misleading advertising and enjoining Defendants from continuing to violate Business & Professions Code § 17200 et seq.  Plaintiffs and the Class Members additionally request an order requiring Defendants to engage in a corrective advertising campaign.  Plaintiffs also

-23-

request an order requiring Defendants to make restitution to Plaintiffs and to the Class Members of all monies wrongfully acquired by Defendants by means of their violations of Business & Professions Code § 17200 et seq.

## X.

### SIXTH CAUSE OF ACTION

### INDIVIDUALLY AND ON BEHALF OF THE CLASS MEMBERS:

### (VIOLATION OF BUSINESS & PROFESSIONS CODE

### SECTION 17500 et seq.)

124.    Plaintiffs and the Class Members re-allege and incorporate by reference each of the preceding allegations in this complaint as though fully set forth at length herein.

125.    Business & Professions Code § 17500 prohibits unfair, deceptive, untrue and misleading advertising.

126.    Defendants' use of various forms of media to advertise, call attention to, or give validity to the sale of services, which are not as represented with their advertising constitutes unfair, deceptive, untrue and/or misleading advertising within the meaning of Business & Professions Code § 17500 et seq.  Defendants advertising conduct, including their misrepresentations and concealment of the true facts alleged above is likely to have deceived and continue to deceive Plaintiffs and the Class Members and the public at large. Defendants reasonably should know and should have known that such advertisements were unfair, deceptive, untrue and/or misleading.  The misrepresentations and nondisclosures by Defendants of material facts detailed above constitute unfair, deceptive, untrue and misleading advertising and constitute a violation of Business & Professions Code § 17500 et seq.

127.    Plaintiffs and the Class Members request an order requiring Defendants to make restitution to Plaintiffs and the Class Members of all monies wrongfully acquired by Defendants by means of their violations of Business & Professions Code § 17535 et seq.

during the Class period.  Pursuant to Business & Professions Code § 17535 et seq.
Plaintiffs, on behalf of themselves, the Class Members, and the general public, also seek an
order requiring Defendants to immediately cease such acts of deceptive and misleading
advertising, including that youth tackle football is safe for minor children and that
equipment meets NOCSEA regulatory standards, and enjoining Defendants from continuing
to violate Business & Professions Code § 17500 et seq.

# XI.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class Members
respectfully request that the Court enter judgment in their favor and against Defendants, as
follows:

A.    Certification of the proposed Classes, including appointment of Plaintiff's
counsel as Class Counsel;

B.    An order temporarily and permanently enjoining Defendants from continuing
the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C.    Injunctive relief;

D.    An order requiring Defendants NOCSEA to provide warning labels on all
helmets including disclosure of the risk of exposure to CTE and other neurological damage
and disease.

E.    An order requiring Defendants NOCSEA to provide helmet safety and design
standards geared toward minor football participants.

F.    Costs, restitution, damages, including punitive damages, and disgorgement in
an amount to be determined at trial;

G.    An order requiring Defendants to pay both pre- and post-judgment interest on
any amounts awarded;

H.     An award of costs and attorneys' fees; and

I.     Any other relief the Court may deem appropriate.


DATED: September 1, 2016                    GIRARDI|KEESE


                                   BY: /s/ Robert W. Finnerty
                                        THOMAS V. GIRARDI
                                        ROBERT W. FINNERTY
                                        Attorney for Plaintiffs


## XII.

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves, and all others similarly situated, hereby demand a jury trial for all claims so triable.


DATED: September 1, 2016                    GIRARDI|KEESE


                                   BY: /s/ Robert W. Finnerty
                                        THOMAS V. GIRARDI
                                        ROBERT W. FINNERTY
                                        Attorney for Plaintiffs

-26-