1 GIRARDI | KEESE
THOMAS V. GIRARDI, State Bar No. 36603
2 tgirardi@girardikeese.com
ROBERT W. FINNERTY, State Bar No. 119775
3 rfinnerty@girardikeese.com
1126 Wilshire Boulevard
4 Los Angeles, California 90017
Telephone: (213) 977-0211
5 Facsimile: (213) 481-1554

6 Attorneys for Plaintiffs

7
UNITED STATES DISTRICT COURT
8
CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION
9

10
KIMBERLY ARCHIE, as survivor of          Case No. 2:16-cv-6603-PSG-PLA
11 decedent Paul Bright Jr.; JO
CORNELL, as survivor of decedent         **FIRST AMENDED CLASS ACTION**
12 Tyler Cornell, on behalf of themselves   **COMPLAINT**
and all others similarly situated; JO
13 CORNELL, an individual, on behalf of     **DEMAND FOR JURY TRIAL**
herself and all others similarly situated;
14 DEBRA MCCRAE, on behalf of
Richard Caldwell, on behalf of           The Hon. Philip Gutierrez
15 themselves and all others similarly
situated; SHANNON BARNES,
16 guardian ad litem for CHASE
BARNES; SHANNON BARNES,
17 guardian ad litem for DREW BARNES;
SHANNON BARNES, guardian ad
18 litem for CADE BARNES;

19
                  Plaintiffs,
20

21      v.

22
POP WARNER LITTLE SCHOLARS,
23 INC.; a nonprofit corporation; SPARKS
NEVADA POP WARNER
24 FOOTBALL LEAGUE, INC., a non-
profit corporation; PALOMAR POP
25 WARNER FOOTBALL
CONFERENCE, INC., a California
26 corporation; MIDVALLEY POP
WARNER FOOTBALL & CHEER,
27 INC., a non-profit corporation;
ALBANY POP WARNER, a non-profit
28 corporation; NATIONAL

OPERATING COMMITTEE ON
STANDARDS ATHLETIC
EQUIPMENT, a nonprofit
organization; USA FOOTBALL, a
foreign nonprofit corporation , and
DOES 1-100,

Defendants.

## FIRST AMENDED CLASS ACTION COMPLAINT

Kimberly Archie, as survivor of decedent Paul Bright Jr., and Jo Cornell, as survivor of decedent Tyler Cornell, on behalf of themselves and all others similarly situated (hereinafter "Wrongful Death Plaintiffs and Class Members"), Jo Cornell, an individual, on behalf of herself and all others similarly situated, (hereinafter "Adult Plaintiffs and the Class Members"), Debra McCrae, on behalf of Richard Caldwell, on behalf of themselves and all others similarly situated (hereinafter "Personal Injury Plaintiffs and Class Members"), Shannon Barnes, guardian ad litem for Chase Barnes, Drew Barnes and Cade Barnes, on behalf of themselves and all others similarly situated (hereinafter "Medical Monitoring Plaintiffs and the Class Members"), (collectively referred to as "Plaintiffs and the Class Members") bring this class action complaint and allege the following against Defendants Pop Warner Little Scholars, Inc., Palomar Pop Warner Football Conference, Inc., Sparks Nevada Pop Warner Football League, Inc., Midvalley Pop Warner Football & Cheer, Inc., Albany Pop Warner, National Operating Committee on Standards Athletic Equipment, USA Football, Inc., and DOES 1-100 (collectively "Defendants") and each of them as follows:

### I.

### PARTIES

A.    **Plaintiffs:**

1.    Plaintiff, Kimberly Archie, as survivor of decedent Paul Bright Jr., is a resident of the City of North Hollywood, County of Los Angeles, in the State of California. Paul Bright Jr. participated in Defendants Pop Warner's program from 1997

---

through 2004. In particular, Paul Bright Jr. was a member of the Sparks Pop Warner Steelers in Sparks, Nevada. As a result of Defendants' actions and omissions, as further described below, Paul sustained various injuries, including but not limited to injuries to his head. In 2008, Paul Bright Jr. began experiencing behavioral issues acting unpredictably, recklessly and without care for the consequences. Paul had ongoing issues with concentrating, sleep disturbances, managing his emotions and decision making that escalated from his senior year of high school until his death. On September 1, 2014, Paul Bright Jr.'s erratic and reckless behavior ultimately lead to his untimely death. On April 9, 2015 it was discovered that Paul Bright Jr. suffered from Chronic Traumatic Encephalopathy.

2.    Plaintiff, Jo Cornell, is a resident of the City of San Diego, in the State of California. Her son, Decedent Tyler Cornell, participated in Defendants Pop Warner's program from 1997 through 2002. In particular, Tyler Cornell was a member of the Wescon Region, Palomar Pop Warner Conference, Rancho Bernardo Association, in San Diego, California. As a result of Defendants' actions and omissions, as further described below, Tyler sustained various injuries, including but not limited to injuries to his head. After playing Pop Warner, Tyler began experiencing behavioral issues and was diagnosed with depression. On April 3, 2014 Tyler Cornell took his own life. On January 16, 2015 it was discovered that Tyler Cornell suffered from Chronic Traumatic Encephalopathy.

3.    Plaintiff, Debra McCrae, on behalf of Richard Caldwell, is a resident of the City of San Diego, in the State of California. Richard Caldwell participated in Defendants' Pop Warner program from 1996 through 2003. In particular, Richard Caldwell was a member of the Wescon Region, Palomar Pop Warner Conference, Raptors Pop Warner team in Rancho Bernardo, County of San Diego, in the State of California. Throughout Richard's career as a participant in Defendants' Pop Warner program, Richard suffered multiple concussions resulting in multiple trips to the emergency room. Sometime after Richard Caldwell stopped playing in Defendants' Pop

Warner program, Richard displayed bouts of erratic behavior and was diagnosed with depression. In November of 2015, Richard was involved in an auto versus pedestrian accident which has rendered him incapacitated and bound by a wheelchair. To date, Richard is housed in a facility away from his family where he receives care twenty-four hours per day, seven days per week.

4.      Plaintiff, Shannon Barnes, guardian ad litem for her three minor children Chase Barnes, Drew Barns and Cade Barnes, is a resident of the City of Albany in the state of Oregon. All three of Ms. Barnes children participated in the Midvalley Pop Warner Conference, Albany association in the state of Oregon. Chase Barnes played Pop Warner from 2009 through 2012 and again in 2015. Drew Barnes played Pop Warner from 2010 through 2015. Cade Barnes played Pop Warner in 2014. As a result of Defendants' actions and omissions, as further described below, Chase, Drew and Cade Barnes have been placed at an increased risk of injury, including but not limited to brain damage, disease and CTE.

**B.    <u>Defendants:</u>**

5.      Defendant, Pop Warner Little Scholars, Inc. (hereinafter referred to as "Pop Warner") is a non-profit corporation incorporated and headquartered in Pennsylvania. Pop Warner Little Scholars, Inc. provides youth tackle football, cheerleading and dance programs for children ages 5 to 15 years old. Pop Warner Little Scholars, Inc. is a national nonprofit corporation that operates across forty-two states, including California, and throughout numerous countries worldwide.

6.      Defendant, Palomar Pop Warner Football Conference, Inc., (hereinafter referred to as "Palomar PW"), is a California corporation incorporated and headquartered in Temecula, California. Palomar Pop Warner Football Conference, Inc. is a youth tackle football and cheerleading conference affiliated with the national Pop Warner Little Scholars, Inc. organization.

7.      Defendant Sparks Nevada Pop Warner Football League, Inc., (hereinafter referred to as "Sparks PW"), was a non-profit corporation incorporated and

1   headquartered in Sparks, Nevada. Sparks Nevada Pop Warner Football League, Inc.

2   provided youth tackle football and cheerleading programs for children ages 5 to 14

3   years old. Sparks Nevada Pop Warner Football League, Inc. was a non-profit

4   corporation affiliated with the national Pop Warner Little Scholars, Inc. organization

5   from at least October 24, 1988 until October 31, 2015.

6         8.    Defendant Midvalley Pop Warner Football & Cheer, Inc. (hereinafter

7   referred to as "Midvalley PW") is a non-profit corporation incorporated and

8   headquartered in Albany, Oregon. Defendant Midvalley Pop Warner Football & Cheer,

9   Inc. is a youth tackle football and cheerleading conference affiliated with the national

10  Pop Warner Little Scholars, Inc. organization from at least 2003 to the present.

11        9.    Defendant Albany Pop Warner (hereinafter referred to as "Albany PW") is

12  a non-profit corporation incorporated and headquartered in Albany, Oregon. Defendant

13  Albany Pop Warner is a youth tackle football association affiliated with the national

14  Pop Warner Little Scholars, Inc. organization from at least 2012 to the present.

15        10.    Defendant, National Operating Committee on Standards for Athletic

16  Equipment ("NOCSAE") is a nonprofit organization with its principal place of business

17  in Overland Park, Kansas. The NOCSAE organization sets the standards for athletic

18  equipment safety. The NOCSAE organization is comprised of representatives from a

19  number of national representative organizations that have an interest in athletic

20  equipment. These include manufacturers, re-conditioners, athletic trainers, coaches,

21  equipment managers, sports medicine and consumer organizations. NOCSAE is a self-

22  appointed standard setting body whose members' primary focus is to generate

23  profits. NOCSAE receives a royalty fee from every licensee who uses its name, logo,

24  seal, or other trademarked item when certifying or recertifying equipment.

25        11.    Defendant, USA Football is a 501(c)(3) non-profit organization organized

26  under the laws of Virginia, with its headquarters at Indianapolis, Indiana. USA Football

27  is the official youth football development partner of the NFL and its thirty-two teams.

28        12.    The true names and/or capacities, whether individual, corporate, associate

or otherwise, of Defendants DOES 1 through 100, inclusive, and each of them, are unknown to Plaintiffs and the Class Members, who therefore sue said Defendants by such fictitious names. Plaintiffs and the Class Members are informed and believe, and upon such information and belief allege, that each of the Defendants fictitiously named herein as a DOE is legally responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to, and proximately caused the injuries and damages to Plaintiffs and the Class Members hereinafter alleged.  Plaintiffs and the Class Members will seek leave of Court to amend this Complaint to assert the true names and/or capacities of such fictitiously named Defendants when the same have been ascertained.

13.    Plaintiffs and the Class Members are informed and believe, and based thereupon allege, that at all times mentioned herein, Defendants, and each of them, including DOES 1 through 100, were the agents, servants, employees and/or joint venturers of their co-Defendants, and were, as such, acting within the course, scope and authority of said agency, employment and/or joint venture, and that each and every Defendants, as aforesaid, when acting as a principal, was negligent in the selection and hiring of each and every Defendants as an agent, employee and/or joint venturer.

## II.

## **GENERAL ALLEGATIONS**

14.    This action arises from the failures of Pop Warner Little Scholars, Inc., Palomar Pop Warner Football Conference, Inc., Sparks Nevada Pop Warner Football League, Inc., Midvalley Pop Warner Football & Cheer, Inc., Albany Pop Warner, National Operating Committee on Standards Athletic Equipment and USA Football to provide for the safety and health of minor child participants of the Pop Warner tackle football program.

15.    The Pop Warner Little Scholars program is a youth tackle football, cheer and dance program founded in 1929. Pop Warner was incorporated as a national nonprofit corporation in 1959.

16.     Today, the Pop Warner program consists of eight regional conferences across forty-two states and several countries. Each region consists of separate leagues, associations and teams.

17.     Upon information and belief, over 250,000 children participate in the Pop Warner tackle football program per year. However, participation in youth tackle football has been in decline in recent years.

18.     Pop Warner Little Scholars, Inc., Palomar Pop Warner Football Conference, Inc., Sparks Nevada Pop Warner Football League, Inc., Midvalley Pop Warner Football & Cheer, Inc., Albany Pop Warner, National Operating Committee on Standards Athletic Equipment, USA Football, and Does 1 through 100, and each of them, misrepresented material facts to Plaintiffs and the Class Members and the public at large regarding the safety of Pop Warner tackle football, including the safety of the equipment used by minor child participants.

19.     Upon information and belief, Defendant NOCSAE was created in 1969 to commission research to prevent injuries.  To this end, Defendant NOCSAE created standards for various athletic equipment, including football helmets.

20.     Defendant NOCSAE published its standards for football helmet safety in 1973.  Upon information and belief NOCSAE's standards are used by every level of football from Pop Warner to the National Football League.  Indeed, many of the Youth Football Leagues across the nation actually require that the equipment meet NOCSAE standards.

21.     The NOCSAE organization is comprised of representatives from a number of national representative organizations that have an interest in athletic equipment. These include manufacturers, reconditioners, athletic trainers, coaches, equipment managers, sports medicine and consumer organizations.

22.     NOCSAE advertises that it is an "independent and nonprofit standard-setting body that aims to enhance athletic safety through scientific research and the

1    creation of performance standards for protective equipment."[1]

2         23.    In reality, Defendant NOCSAE exists to shield helmet manufacturers from

3    liability. Indeed, in an article published in 2010 in the New York Times, NOCSAE

4    Vice President Dr. Robert Cantu stated that the NOCSAE board "has become as

5    concerned about legal liability as about child safety."[2]

6         24.    NOCSAE creates the allure that football helmets are safe by allowing a

7    sticker to be placed on the helmets that states "Meets NOCSAE Standards."

8         25.    All of Defendant Pop Warner's hard-shell helmets contain a sticker stating

9    that the helmet "meets NOCSAE standard". For a large number of parents, this sticker

10   is equated with safety.

11        26.    However, NOCSAE concedes that there are no specific safety standards

12   for youth sports.

13        27.    As a result, NOCSAE's representation that the Pop Warner equipment,

14   including but not limited to hard-shell helmets, meets NOCSAE standards is

15   misleading, creating a false sense of security for Pop Warner participants and the

16   parents and/or guardians who enroll them.

17        28.    Defendants NOCSAE, Pop Warner, Palomar PW, Sparks PW, Midvalley

18   PW, Albany PW and USA Football have approved the NOCSAE helmet standard labels

19   that are used knowing that they are misleading and will lead to injury for minor

20   children.

21        29.    Defendants Pop Warner and USA Football have similarly engaged in

22   misleading representations regarding the safety of Pop Warner football.

23        30.    Pop Warner advertises itself as a safety-first organization in which

24   children play for coaches trained in proper tackling techniques, and that this technique

25

26   _____

     [1] http://nocsae.org/wp-content/uploads/2014/05/NOCSAE-jan-24-release-final.pdf

27   [2] http://www.nytimes.com/2010/10/21/sports/football/21helmets.html?_r=1&pagewa

28   nted=all&

makes youth tackle football safe for children as young as 5, who weigh as little as 45 pounds.

31.   In the Pop Warner Defendants' promotional documents and advertisements, Pop Warner claims, "Datalys Institute's research data show that Pop Warner Rules and Heads-Up Football Training result in injury rate that has 87% fewer injuries than non-Heads-Up/non Pop Warner programs."[3]

32.   Defendant USA Football's also claimed in late 2015:

Youth football leagues adopting Heads Up Football typically have 87 percent lower injury rates during practice in organizations with Heads Up Football coach education plus Pop Warner practice guidelines that limit contact … [and] 82 percent lower concussion rate during practice with Heads Up Football coach education and Pop Warner practice guidelines among 11- to 15-year-old athletes.[4]

33.   Defendant USA Football also stated "Heads Up leagues had a 34 percent reduction in concussions in practice and a 29 percent reduction in games..."[5]

34.   However, it was later discovered that the "Heads Up" football training program did not reduce the risk of injury by the numbers reported. Indeed, it remains uncertain whether USA Football's Heads Up Football training program alone plays any significant role in decreasing the risk of injury to youth participants.

35.   Defendants', Pop Warner and USA Football, false representations regarding the safety of youth tackle football misled parents and/or guardians into enrolling their children in the Pop Warner program.

36.   Defendant Pop Warner further engages in false and misleading advertising

---

[3] http://www.popwarner.com/about_us/benefits.htm

[4] http://boston.cbslocal.com/2016/07/27/report-nfl-usa-football-trumpeted-false-data-about-protecting-kids-from-concussions-and-injuries/

[5] *Id.*

Case No. 2:16-cv-6603

FIRST AMENDED CLASS ACTION COMPLAINT

1   regarding the level of training of their coaches and staff.

2       37.     For example, Pop Warner's website boasts:

3       We have over 40,000 volunteers and coaches that are being trained every

4       year to offer the best and safest programs for you and your

5       children…The safety of our athletes is <u>always the top priority</u> and that is

6       why we provide extensive training for all our football and cheer & dance

7       coaches.[6]

8       38.     However, upon information and belief, Jon Butler, executive director of

9   Pop Warner Little Scholars, Inc., conceded in a deposition that the national Pop Warner

10  office does not check whether coaches in fact receive such training.

11      39.     Moreover, Jon Butler further conceded in a deposition that Pop Warner

12  does not employ personnel with a medical background, athletic training background, or

13  physical education background.

14      40.     Defendants Pop Warner, Palomar PW, Sparks PW, Midvalley PW, Albany

15  PW, USA Football, NOCSAE, and Does 1 through 100, and each of them, continue to

16  mislead Plaintiffs and the Class Members and the public at large regarding the safety of

17  Pop Warner football, the equipment used, the techniques taught and the level of training

18  of their coaches on the topic of child safety.

19      41.     Both Defendant Pop Warner and Defendant USA Football fail to

20  adequately ensure that their coaches were properly trained and educated on the topic of

21  safety, and what techniques were reasonably safe to teach minor child participants

22  based on child appropriate performer readiness.

23      42.     Moreover, Defendants Pop Warner and National Operating Committee on

24  Standards for Athletic Equipment failed to adequately ensure that the equipment used

25  by Pop Warner participants was adequate to protect minor children against the risk of

26  brain injuries.

27  _____

28  [6] http://www.popwarner.com/about_us/benefits.htm

43.    Defendants Pop Warner, Palomar PW, Sparks PW, Midvalley PW, Albany PW, USA Football, NOCSAE, and Does 1 through 100, and each of them, each owe a duty of care to the minor children who participate in their Pop Warner program. An adult is required to exercise a greater degree of care towards children and anticipate their ordinary behavior. CACI 412. Furthermore, "A greater degree of care is generally owed to children because of their lack of capacity to appreciate risks and to avoid danger." *McDaniel v. Sunset Manor Co.* (1990) 220 Cal.App.3d 1, 7, citing *Casas v. Maulhardt Buick, Inc.* (1968) 258 Cal.App.2d 692, 697–700.

44.    Defendants', Pop Warner, Palomar PW, Sparks PW, Midvalley PW, Albany PW, USA Football, NOCSAE, and Does 1 through 100, fraudulent misrepresentations regarding the safety of youth tackle football and their failure to meet their duty to safeguard minor children, including Plaintiffs and the Class Members, against the increased risk associated with youth tackle football including but not limited repetitive head trauma coupled with the use of hard-shell helmets, a duty in which they voluntarily undertook, was willful, wanton, egregious, reckless, and with a high degree of moral culpability.

45.    As a result of Pop Warner, Palomar PW, Sparks PW, Midvalley PW, Albany PW, USA Football, NOCSAE's, and Does 1 through 100, gross negligence and fraudulent misrepresentations, Plaintiffs and the Class Members suffered repeated head trauma, including multiple concussions, which has led to severe chronic brain injuries, including but not limited to depression and Chronic Traumatic Encephalopathy (hereinafter "CTE") as well as an increased risk for future injury.

### III.

### **JURISDICTION AND VENUE**

46.    Jurisdiction is proper pursuant to 28 U.S.C. § 1332 (d), the Class Action Fairness Act of 2005, because the proposed Class consists of more than 100 members; the amount in controversy exceeds the jurisdictional requirement of $5,000,000 exclusive of costs and interest; and diversity exists. The Court may also exercise

supplemental jurisdiction over Plaintiff's and Class Member's state law claims pursuant to 28 U.S.C. § 1367.

47.     This Court has personal jurisdiction over Defendants. Many of the acts and omissions giving rise to this action occurred in California. Defendants have sufficient minimum contacts in California and intentionally avail themselves of the laws and protections of California.

48.     Defendant Pop Warner operates and controls several Pop Warner leagues throughout California. Defendant Pop Warner's leagues across the state of California include the Orange Empire Pop Warner, Mount Baldy Pop Warner, San Diego Pop Warner, Palomar Pop Warner, Peninsula Pop Warner (Northern California), Los Angeles County Pop Warner, Imperial Valley Pop Warner, and Sagebrush Empire Pop Warner. Defendant Pop Warner plays an active role in creating Pop Warner leagues throughout the State of California. Moreover, Defendant Pop Warner regularly holds conferences in cities throughout California. Furthermore, Defendant Pop Warner has had substantial, continuous, and systematic other contacts with California.

49.     Defendant NOCSAE promotes equipment safety standards adopted by sports organizations and regulators operating throughout California. Defendant NOCSAE enters into licensing agreements with football helmet manufacturers who buy and sell goods throughout the state of California. Moreover, these same licensing agreements allow helmet manufacturers to place NOCSAE's logo and/or trademark on equipment distributed to youth, high school, college and professional football programs throughout California.

50.     Defendant NOCSAE has purposefully availed itself of the benefits and laws of California because organizations such as Defendant Pop Warner and Defendant USA Football, who operate leagues throughout California, incorporate a requirement that helmets worn by Pop Warner participants meet NOCSAE's standards. For example, Defendant Pop Warner Little Scholars 2014 official rule book states:

Only helmets bearing the NOCSAE Seal of Certification may be worn.

All helmets must bear the current NOCSAE approved "Warning Label" in a visible position on the outside of the helmet. This "Warning Label" is the same label that is furnished by all helmet manufacturers and quality reconditioners.[7]

51.     Moreover, NOCSAE's website specifically refers to California's law which requires helmet to be reconditioned and recertified yearly.[8] Additionally, NOCSAE has an interactive website that allows residents from California to apply for research grants.[9] The grants funded by NOCSAE must be related to NOCSAE's "stated program interest."[10] NOCSAE has specifically funded one research where the research was performed in Santa Monica, California. Moreover, Defendant NOCSAE has had substantial, continuous, and systematic other contacts with California.

52.     Defendant USA Football govern the rules of youth football played in California and encourage youth participation in the various divisions throughout California, including Los Angeles and Ventura. Moreover, Defendant USA Football, Inc. has had substantial, continuous, and systematic other contacts with California.

53.     As described herein, the actions and omissions of each Defendant in California have caused harm in California to California residents, including minor children, and will continue to do so unless enjoined. Plaintiffs, Tyler Cornell, Richard Caldwell, and several of the Class Members, sustained severe and significant injury while participating in Defendant Pop Warner's California based youth tackle football programs. Plaintiffs used helmets purportedly certified by Defendant NOCSAE which increased the risk of harm and future injury while participating in Defendant Pop Warner's California based youth tackle football programs. Moreover, Adult Plaintiffs

---

[7] http://files.leagueathletics.com/Images/Club/14311/2014_Rule_Book.pdf

[8] http://nocsae.org/wp-content/uploads/2011/11/NOCSAE-e-newsletter-11-09.pdf

[9] http://nocsae.org/research/applying-for-funding/

[10] *Id.*

and the Class Members suffered pecuniary loss as a result Defendants actions in California.

54.     Defendants wrongful actions and inactions which give rise to Plaintiffs' and the Class Members' claims took place in California. Moreover, Plaintiffs and the Class Members claims arise out of Defendants contacts with California, as described above. Finally, the tragic deaths of Plaintiffs Tyler Cornell and Paul Bright Jr. occurred in the State of California.

55.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(3) because all Defendants are subject to this Court's personal jurisdiction. Each Defendant has the requisite minimum contacts with California so as to be subject to both types of personal jurisdiction – general jurisdiction and specific jurisdiction.

56.     Moreover venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) as a substantial amount part of the events or omissions giving rise to the claim occurred in this District.

### IV.

### <u>CLASS ACTION ALLEGATIONS</u>

57.     Plaintiffs, Kimberly Archie, as survivor of decedent Paul Bright Jr., Jo Cornell, as survivor of decedent Tyler Cornell, Debra McCrae, on behalf of Richard Caldwell, Jo Cornell, an individual, and Shannon Barnes, guardian ad litem for Chase Barnes, Drew Barnes and Cade Barnes, bring this action on behalf of themselves and all others similarly situated, pursuant to the Federal Rules of Civil Procedure Rule 23(a), (b)(2), and (b)(3) and on behalf of the following class(es) of persons:

**1.      The Personal Injury Class:**

All persons who participated in the Pop Warner youth tackle football program from 1997 to the present and are suffering or have suffered from brain injuries, damage or disease.

/ / /

/ / /

2.      **Wrongful Death Class:**

All deceased individuals (hereinafter "Decedents") who participated in the Pop Warner youth tackle football program from 1997 to the present for which the Complaint alleges the cause of death and/or contributing cause of death was due to, in whole or in part, injuries sustained from their participation in the Pop Warner youth tackle football program.

3.      **Medical Monitoring Class:**

All persons who played youth tackle football in the Pop Warner Little Scholars youth tackle football program from 1997 to the present.

4.      **The Adult Class:**

All persons who enrolled their minor children in the Pop Warner tackle football program from 1997 to the present.

58.     Excluded from the Classes are: (1) the officers and directors of any of the Defendants; (2) any judge or judicial officer assigned to this matter and his or her immediate family and staff; and (3) any legal representatives, successor, or assigns of any excluded persons or entities.

59.     This action is properly maintained as a class action because Plaintiffs can prove the elements of each claim on a class-wide basis, using the same evidence that Plaintiffs would use to maintain and prove and individual action. Thus, the action may be properly maintained on behalf of each of the proposed Classes pursuant to Fed. R. Civ. P. 23.

60.     The Members of each Class are so numerous that joinder of all members would be impracticable. The precise number of Class Members is unknown at this time. However, based on information and belief, the members of the Personal Injury Class and Medical Monitoring class are made up of hundreds of thousands of members evidenced by the estimate that approximately 250,000 children enroll in Pop Warner tackle football across the country per year. Moreover, millions of minor children have participated in the program from 1997 to the present. In addition, based on information

and belief, the members of the Adult Class are similarly made up of thousands of members evidenced by the estimate that approximately 250,000 children are enrolled by their parents and/or guardians in Pop Warner tackle football across the country per year. Moreover, millions of parents and/or guardians have enrolled their minor children in the program from 1997 to the present.

61.   Questions of law and fact common to the Class Members predominate over any questions affecting any individual member, and a class action is superior to all other available methods for the fair and efficient adjudication of the controversy.

62.   Common questions of law and fact include but are not limited to:

     a.   Whether Defendants misrepresented the safety of its youth tackle football;

     b.   Whether Defendants misrepresented the safety of their equipment;

     c.   Whether Defendants, Pop Warner and USA Football's, representations about the qualifications of its coaches and the safety of its programs was likely to deceive consumers into enrolling in their programs;

     d.   Whether Plaintiffs and the Class Members are entitled to compensatory damages, including punitive and other monetary relief; and

     e.   Whether Plaintiff and Classes are entitled to relief, including but not limited to equitable, injunctive, and restitution.

63.   Plaintiffs' claims are typical of the Class Member's claims because the Class Members were comparably injured through Defendants' illegal and wrongful conduct as described herein.

64.   Plaintiffs are adequate Class Representatives because Plaintiffs are committed to prosecuting the action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of other Members of the Class and Plaintiffs have the same non-conflicting interests as the other Class

1    Members. Plaintiffs and their counsel  would fairly and adequately represent the

2    interests of the Class Members.

3          65.    Class treatment is superior to any other available means of prosecution of

4    fair and efficient adjudication of this controversy. There are no unusual difficulties that

5    are likely to arise in the management of this action. The damages and other financial

6    detriment suffered by Plaintiffs and Class Members are small compared to the burden

7    and expense of prosecuting each action individually. Thus, it would be impracticable

8    for Plaintiffs and Class Members to bring individual actions against Defendants for its

9    wrongful   and   illegal   conduct.   Further,   class   treatment   benefits   the   courts.

10   Individualized litigation promises inconsistent or contradictory judgments, unnecessary

11   overlap of resources, and increases the delay and expense to all those accessing the

12   courts.  Class  treatment  brings  with  it  the  benefit  of  a  single  adjudication,  the

13   supervision  of  a  single  court,  and  the  consolidation  of  the  courts'  and  the  parties'

14   resources.

15         66.    The prosecution of separate actions by individual Class Members would

16   create the risk of inconsistent or varying adjudications with respect to individual Class

17   Members which would establish incompatible standards of conduct for Defendants or

18   which would, as a practical matter, be dispositive of the interests of the other members

19   not parties to the adjudication or substantially impair or impede their ability to protect

20   their interests. Defendants have acted, or refused to act, on grounds generally applicable

21   to, and causing injury to the Class Members. Therefore, preliminary and final injunctive

22   relief and damages for Defendants' illegal conduct is appropriate.

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

## V.

### FIRST CAUSE OF ACTION

### INDIVIDUALLY AND ON BEHALF OF THE CLASS MEMBERS:

### NEGLIGENCE

**(As Against All Defendants and Does)**

67.     Plaintiffs and the Class Members re-allege and incorporate by reference each of the preceding allegations in this complaint as though fully set forth at length herein.

68.     Defendants Pop Warner, Palomar PW, Sparks PW, Midvalley PW, Albany PW, USA Football, NOCSAE, and DOES 1 through 100, and each of them, have violated Section 323 of the Restatement (Second) of Torts as adopted by the Courts in California, which states that:

> One who undertakes, gratuitously or for consideration, to render services
> to another which he should recognize as necessary for the protection of
> the other's person or things, is subject to liability to the other for physical
> harm resulting from his failure to exercise reasonable care to perform his
> undertaking, if (a) his failure to exercise such care increases the risk of
> such harm, or (b) the harm is suffered because of the other's reliance
> upon the undertaking.

69.     Each Defendant voluntarily assumed a duty to protect the health and safety of minor participants of the Pop Warner youth tackle football league.

70.     Defendant Pop Warner voluntarily created a youth tackle football program for children ages five through sixteen. By and through this program, Defendant Pop Warner created an environment wherein children, under Defendant Pop Warner's supervision, engage in an activity that increases the risk to their health and safety. Moreover, Defendant Pop Warner develops rules and regulations governing Pop Warner players and coaches while engaged in Defendant's program.

71.     Defendant Pop Warner voluntarily adopted safety standards, including

1    equipment safety standards, and mandated that every Pop Warner participant, including

2    Plaintiffs and the Class Members, abide by the adopted safety standards. Moreover,

3    Defendant Pop Warner advertises that its coaches underwent training to ensure the

4    safety of the participants.  Upon information and belief, Defendant Pop Warner,

5    however, did not in fact make sure that each coach underwent the training.  This lead to

6    untrained coaches teaching participants bad tackling habits that drastically increased the

7    risk of harm and future injury to the participants, including Plaintiffs and the Class

8    Members.

9         72.    Defendant NOCSAE voluntarily assumed a duty to protect youth tackle

10   football participants, including Plaintiffs and the Class Members, when it established

11   equipment safety standards and offered them for adoption by various sports

12   organizations and regulatory bodies, including Defendant Pop Warner and Defendant

13   USA Football.  Moreover, NOCSAE allowed helmet manufacturers and reconditioners,

14   including its board members John Riddle, Ken Nimmons, Byron Goldman and John

15   Tucker, Jr., to certify that the helmets "Meets NOCSAE Standards".  This certification

16   was placed on youth football helmets as reassurance to parents across the country that

17   the helmets were specially designed and tested despite the fact that NOCSAE failed to

18   establish a safety standard geared toward youth participants.

19        73.    Defendant USA Football, as Pop Warner's national governing body,

20   voluntarily assumed a duty to protect Pop Warner participants, including Plaintiffs and

21   the Class Members, when it established safety standards, educational support for

22   coaches and players, and coaching certification programs.

23        74.    Defendants repeatedly confirm their respective duties to take reasonable

24   and prudent actions to protect the health and safety of Pop Warner players, including

25   Plaintiffs and the Class Members, when known and foreseeable risks exist.

26        75.    Moreover, Defendants reaffirm their respective duties by and through their

27   respective websites and other public statements wherein they proclaim that the safety

28   and protection of football participants are their highest priority.

FIRST AMENDED CLASS ACTION COMPLAINT

76. For example, Defendant Pop Warner's website states "[t]he mission of Pop Warner Little Scholars is to enable young people to benefit from participation in team sports and activities in a safe and structured environment[11]…[t]he safety of our athletes is <u>always the top priority</u> and that is why we provide extensive training for all our football…coaches."

77. In addition, Defendant USA Football, Inc.'s website states "[f]rom practice to playoffs, we work to make the game better and safer, ensuring that nothing stands in the way of a player's excitement for the sport…[w]e evolve and grow the sport through innovative standards and best practices to advance coach and player development, participation and safety within the fun of the game and its inherent values."[12]

78. Finally, Defendant NOCSAE's website states "[s]ince its inception in 1969, NOCSAE has been a leading force in the effort to improve athletic equipment, and to reduce injuries through robust standards for athletic equipment."[13] The website goes on to state that NOCSAE "[r]ecogniz[es] its value to the safety and protection of athletes" and instructs viewers to "[e]nsure sports helmets meet NOCSAE safety standards".[14]

79. Defendants breached their duty to youth tackle football participants, including Plaintiffs and the Class Members, to use ordinary care to protect their physical and mental health, and to prevent them from being exposed to unreasonable risk of injury, and thereby increasing Plaintiffs and the Class Members' risk of harm and future injury.

80. Throughout the many years that Defendants have repeatedly established their duty to protect the health and safety of youth tackle football participants, including

---

[11] http://www.popwarner.com/about_us/mission.htm

[12] https://usafootball.com/about-usaf/

[13] http://nocsae.org/about-nocsae/

[14] http://nocsae.org/about-nocsae/history-and-purpose/

Plaintiffs and the Class Members, when known and foreseeable risks exist, Defendants Pop Warner and USA Football failed to create and implement league-wide guidelines concerning the treatment and monitoring of players who suffer a brain injury during a practice or a game.

81.    Moreover, Defendants NOCSAE and Pop Warner have failed to establish and/or adopt equipment standards that are designed and serve to protect minor children who participate in Defendant Pop Warner's youth tackle football program, including Plaintiffs and the Class Members. In fact, Defendant NOCSAE knew that its safety standards were inadequate for youth participants, but failed to update the standards for fear of civil liability.

82.    It has been well established since 1928 that repeated blows to the head can lead to head trauma, including CTE, commonly known as "punch drunk syndrome." Punch Drunk Syndrome has been prevalent in boxers who have repeatedly suffered concussions.

83.    Despite the fact that other sporting associations have decades ago established standardized association-wide concussion management rules, Defendants Pop Warner and USA Football have failed to establish any guidelines or policies to protect the mental health and safety of its minor players.

84.    Moreover, Defendants Pop Warner, Palomar PW, Sparks PW, Midvalley PW, Albany PW, USA Football, NOCSAE, and DOES 1 through 100, and each of them, have failed to ensure that the safest equipment is used to protect minor participants, including Plaintiffs and the Class Members.

85.    An adult is required to exercise a greater degree of care towards children and anticipate their ordinary behavior. CACI 412. Furthermore, "A greater degree of care is generally owed to children because of their lack of capacity to appreciate risks and to avoid danger." *McDaniel v. Sunset Manor Co.* (1990) 220 Cal.App.3d 1, 7, citing *Casas v. Maulhardt Buick, Inc.* (1968) 258 Cal.App.2d 692, 697–700.

86.    Defendants failures to fulfill their  assumed duties to protect minor Pop

Warner participants, including Plaintiffs and the Class Members, include, but is not limited to, the following failures:

**Defendant Pop Warner:**

    a.    Failure to regulate and monitor practices, games, rules, equipment, coaches and medical care so as to minimize the long-term risks associated with brain injuries including repetitive sub-concussive hits suffered by Pop Warner participants, including Plaintiffs and the Class Members;

    b.    Failure to require that an adequate brain injury history be taken of Pop Warner participants;

    c.    Failure to ensure accurate diagnosis and recording of brain injury so the condition can be treated in an adequate and timely manner;

    d.    Failure to license and approve the best equipment available that will reduce, not increase, the risk of brain injury to minor children who participate in the Pop Warner youth tackle football program;

    e.    Failure to prevent the increased risk of injury to minor children through repetitive head trauma coupled with the use of hard-shell helmets not adequately designed to protect children's unique features and vulnerabilities.

**Defendant USA Football:**

    a.    Failure to ensure the safety of tackle football for minor children participants;

    b.    Failure to mandate and confirm the level of training and education received by the coaches of Pop Warner football;

    c.    Failure to ensure the adequacy of the safety equipment worn by Pop Warner participants.

**Defendant NOCSAE:**

    a.    Failure to develop equipment standards that are designed to protect

minor children who participate in Defendant Pop Warner's youth tackle football program, including Plaintiffs and the Class Members;

b.   Failure to inform parents that its equipment standards were not tested to ensure the safety of minor participants, including Plaintiffs and the Class Members.

87.   Defendants Pop Warner, Palomar PW, Sparks PW, Midvalley PW, Albany PW, USA Football, NOCSAE, and DOES 1 through 100, and each of them, breached their assumed duties to protect the health and safety of youth tackle football participants, including Plaintiffs and the Class Members, by subjecting them to an increased risk of brain injury, damage or disease through the use of equipment, including hard shell helmets, that are inadequately designed to protect the physical and mental health of minor children, including Plaintiffs and the Class Members.

88.   Moreover, Defendants Pop Warner and USA Football breached their assumed duty to protect the health and safety of youth tackle football participants, including Plaintiffs and the Class Members, by failing to ensure that coaches are adequately trained and educated on the risks to minors of developing brain injury, damage or disease.

89.   National organizations have a responsibility to enforce rules they promulgate at the community level.

90.   Defendants advertise themselves as a safety-first organization in which children play for coaches trained in proper tackling technique.

91.   Upon information and belief, Jon Butler, executive director of Defendant Pop Warner conceded in a deposition that the national office does not check whether coaches in fact receive such training.

92.   Moreover, Jon Butler further conceded in a deposition that Pop Warner does not employ personnel with a medical background, athletic training background, or physical education background.

93.    Defendants Pop Warner and USA Football failed to provide complete, current, and competent information and directions to Pop Warner coaches and its participants, including Plaintiffs and the Class Members, regarding brain injuries and its prevention, symptoms, and treatment.

94.    If Defendants Pop Warner, Palomar PW, Sparks PW, Midvalley PW, Albany PW, USA Football, NOCSAE, and Does 1 through 100, and each of them, would have taken the necessary steps to oversee and protect Pop Warner participants, including Plaintiffs and the Class Members, by (1) developing and implementing necessary safety guidelines, policies, and procedures; (2) developing and adopting reasonably safe youth tackle football helmet standards designed to protect the unique features and vulnerabilities of minor children participants; (3) educating and training all persons involved with the Pop Warner Teams, and confirming the completion of said education and training, in the recognition, prevention, and treatment of brain injuries, then Pop Warner participants, such as Plaintiffs and the Class Members, would not have suffered from repeated head trauma or the effects of that condition, would have recovered more rapidly, or would not have suffered or become at risk of suffering from long-term brain damage, dementia, depression and CTE, as well as other long term brain injuries.

95.    Under all of the above circumstances, it was foreseeable that Defendants' violations of their duties would cause or substantially contribute to the personal injuries suffered by Plaintiffs and the Class Members.

96.    The aforementioned acts and omissions of the Defendants demonstrate that each Defendant acted with callous indifference to the rights and duties owed to Plaintiffs, the Class Members and the public at large.

97.    Defendants acted willfully, wantonly, egregiously, with reckless abandon, and with a high degree of moral culpability.

98.    Defendants committed acts of omission and commission, which collectively and severally, constituted gross negligence. Defendants' gross negligence

1 was a proximate and producing cause of the personal injuries, death and other damages
2 suffered by Plaintiffs and the Class Members.

3      99.   As a direct and proximate result of Defendants' gross negligence,
4 Plaintiffs and the Class Members have suffered economic losses, including, but not
5 limited to, loss of income, brain injury, damage and disease, emotional distress, medical
6 monitoring, and death.

7      100.   As a direct and proximate result of Defendants' gross negligence,
8 Plaintiffs and the Class Members are entitled to damages, as alleged herein or allowed
9 by law, from Defendants in an amount reasonably anticipated to exceed the
10 jurisdictional minimum.

11                              **VI.**
12                    **SECOND CAUSE OF ACTION**
13      **INDIVIDUALLY AND ON BEHALF OF THE CLASS MEMBERS:**
14                            **FRAUD**
15              **(As Against All Defendants and Does)**

16      101.   Plaintiffs and the Class Members re-allege and incorporate by reference
17 each of the preceding allegations in this complaint as though fully set forth at length
18 herein.

19      102.   According to California Code of Civil Procedure §1709 "One who
20 willfully deceives another with intent to induce him to alter his position to his injury or
21 risk, is liable for any damage which he thereby suffers." C.C.P. §1710 further states "A
22 deceit, within the meaning of the last section, is either:

23      a.   The suggestion, as a fact, of that which is not true, by one who does
24           not believe it to be true;

25      b.   The assertion, as a fact, of that which is not true, by one who has no
26           reasonable ground for believing it to be true;

27      c.   The suppression of a fact, by one who is bound to disclose it, or

28

who gives information of other facts which are likely to mislead for want of communication of that fact; or,

    d.    A promise, made without any intention of performing it."

103.   Defendants Pop Warner, Palomar PW, Sparks PW, Midvalley PW, Albany PW, USA Football, NOCSAE, and DOES 1 through 100, and each of them, made material misrepresentations to youth tackle football participants and the parents and/or guardians of said participants, including Plaintiffs and the Class Members, and the public at large regarding the safety of tackle football for minor children, the level of training and education received by the coaches of Pop Warner football and the adequacy of the equipment worn by Pop Warner participants.

104.   The material misrepresentations made by Defendant Pop Warner include, but are not limited to, remarks that all Pop Warner coaches are provided extensive training to ensure the safety of the minor children who participate in the Pop Warner program.

105.   In particular, Defendant Pop Warner's website states, "[t]he safety of our athletes is <u>always the top priority</u> and that is why we provide extensive training for all our football and cheer & dance coaches." The website goes on to state "[w]e have over 40,000 volunteers and coaches that are being trained every year to offer the best and safest programs for you and your children."

106.   In fact, the national Pop Warner office does not check whether coaches in fact receive such training.

107.   Moreover, Defendant Pop Warner misrepresented the safety of the equipment used by Pop Warner participants. For example, Defendant Pop Warner's executive director wrote, "[a]t Pop Warner, safety is our number one priority when it comes to our young athletes. We emphasize teaching proper techniques, ***using the right equipment*** and making sure our members are educated about all potential injuries."[15]

---

[15] http://www.popwarner.com/fan_zone/executivedir_blog.htm

(emphasis added).

108. In reality, Defendant Pop Warner mandates the use of NOCSAE certified equipment which does not include a youth specific safety standard. Defendant Pop Warner requires the use of NOCSAE certified equipment, including hard-shell helmets, despite the fact that said standards do not account for the unique features and vulnerabilities of minor children when it comes to concussion and head injury prevention.

109. The material misrepresentations made by Defendant USA Football include but are not limited to remarks that youth football leagues that incorporate Heads Up Football training experience a significantly lower rate of head injuries.

110. In fact, USA Football's Heads Up Football training program does not reduce the risk of injury to youth participants by the numbers reported. Indeed, it remains uncertain whether USA Football's Heads Up Football training program alone plays any significant role in decreasing the risk of injury to youth participants.

111. The material misrepresentations made by Defendant NOCSAE pertain to suggestions that youth tackle football helmets meet NOCSAE standards.

112. Defendant NOCSAE's standards are misleading because NOCSAE does not maintain youth specific helmet safety standards.

113. Defendant NOCSAE establishes tackle football helmet standards which fail to independently acknowledge the distinct behavioral and anatomical differences between youth tackle football participants and adults. Defendant NOCSAE disseminates these standards and licenses their logo to youth tackle football helmet manufacturers and youth tackle football programs with the knowledge that their standards are misleading and will lead to injury for minor children. Moreover, for years, Defendant NOCSAE knew that the standards were outdated, but failed to update the standards for fear of civil liability.

114. Each Defendant knew that the material misrepresentations described above were false when they were made.

115.   The persons who made the misrepresentations as agents of Defendants and Defendants intended to defraud, among others, Plaintiffs and the Class Members, in order to encourage their participation in youth tackle football programs, including, but not limited to, Pop Warner Little Scholars.

116.   Plaintiffs and the Class Members, among others, justifiably relied on Defendant Pop Warner, Palomar PW, Sparks PW, Midvalley PW, Albany PW, USA Football, NOCSAE's, and DOES 1 through 100, and each of them, misrepresentations to their detriment.

117.   Defendants Pop Warner, Palomar PW, Sparks PW, Midvalley PW, Albany PW, USA Football, NOCSAE, and DOES 1 through 100, and each of them, knew that Plaintiffs and the Class Members would rely on their respective misrepresentations.

118.   Plaintiffs and the Class Members, among others, were damaged by these misrepresentations.

119.   As a direct and proximate result of Defendants fraudulent conduct, Plaintiffs and the Class Members suffered economic losses, including, but not limited to, loss of income, brain injury, damage and disease, emotional distress, medical monitoring, and death.

120.   As a direct and proximate result of Defendants fraudulent conduct, Plaintiffs and the Class Members are entitled to damages, as alleged herein or allowed by law, from Defendants in an amount reasonably anticipated to exceed the jurisdictional minimum.

## VII.

### THIRD CAUSE OF ACTION

### INDIVIDUALLY AND ON BEHALF OF THE CLASS MEMBERS:

### FRAUDULENT CONCEALMENT

### (As Against All Defendants and Does)

121.   Plaintiffs and the Class Members re-allege and incorporate by reference each of the preceding allegations in this complaint as though fully set forth at length

herein.

122.   According to C.C.P. §1709 "One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." C.C.P. §1710 further states "A deceit, within the meaning of the last section, is either:

    a.    The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;

    b.    The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true;

    c.    The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or,

    d.    A promise, made without any intention of performing it."

123.   Defendants Pop Warner, Palomar PW, Sparks PW, Midvalley PW, Albany PW, USA Football, NOCSAE, and DOES 1 through 100, and each of them, concealed from Plaintiffs and the Class Members the risks and health consequences of minors who sustain repetitive sub-concussive hits and head injuries, and intentionally misrepresented to Plaintiffs and the Class Members that tackle football with hard-shell helmets is safe for minor children. Moreover, Defendants fraudulently concealed the fact that NOCSAE does not maintain equipment standards for youth tackle football participants. Instead, Defendants NOCSAE and Pop Warner misrepresented that (1) the standards promulgated by Defendant NOCSAE were sufficient to protect minor tackle football participants and (2) Pop Warner helmets meet NOCSAE's standards without disclosing that Defendant NOCSAE does not maintain equipment safety standards specific to youth participants.

124.   Defendants Pop Warner, Palomar PW, Sparks PW, Midvalley PW, Albany PW, USA Football, and NOCSAE have approved the NOCSAE helmet standard labels with the knowledge that they are misleading and will lead to injury for minor children.

125.    Defendants Pop Warner and USA Football also misrepresented the level of training and education received by Pop Warner coaches so as to instill a false sense of security in Plaintiffs and the Class Members, including the parents and/or guardians of the Pop Warner participants, regarding the safety of youth tackle football.

126.    Defendants Pop Warner and USA Football, through misleading advertisements, public statements and published articles misrepresented the level of risk associated with youth tackle football and concealed the lack of adequate safety standards for youth football equipment.

127.    Defendants', Pop Warner and USA Football, advertisements have clearly created parent and player reliance.

128.    Defendant Pop Warner stated that:

> We have over 40,000 volunteers and coaches that are being trained every year to offer the best and safest programs for you and your children…The safety of our athletes is always the top priority and that is why we provide extensive training for all our football and cheer & dance coaches.

129.    Moreover, Defendant USA Football stated:

> Youth football leagues adopting Heads Up Football typically have 87 percent lower injury rates during practice in organizations with Heads Up Football coach education plus Pop Warner practice guidelines that limit contact … [and] 82 percent lower concussion rate during practice with Heads Up Football coach education and Pop Warner practice guidelines among 11- to 15-year-old athletes.

130.    Defendant USA Football also stated "Heads Up leagues had a 34 percent reduction in concussions in practice and a 29 percent reduction in games..."

131.    Defendants Pop Warner, Palomar PW, Sparks PW, Midvalley PW, Albany PW, USA Football, NOCSAE, and DOES 1 through 100, and each of them, also misrepresented that youth tackle football helmets meet NOCSAE standards and are

therefore safe. However, Defendants Pop Warner, Palomar PW, Sparks PW, Midvalley PW, Albany PW, USA Football, NOCSAE, and DOES 1 through 100, and each of them, intentionally omit that NOCSAE does not maintain youth specific safety standards for youth equipment.

132. Defendants willfully concealed their omissions and false representations from Plaintiffs and the Class Members in order to prevent negative publicity and induce Plaintiffs and the Class Members to participate in the Pop Warner program.

133. Defendants Pop Warner, Palomar PW, Sparks PW, Midvalley PW, Albany PW, USA Football, NOCSAE, and DOES 1 through 100, and each of them, knew that Plaintiffs and the Class Members would rely on the inaccurate information they provided.

134. Plaintiffs and the Class Members relied on this inaccurate information during their enrollment in Defendant Pop Warner's programs.

135. Plaintiffs and the Class Members had no way of knowing that Defendants representations were false and dangerously misleading.

136. As a direct and proximate result of Defendants fraudulent conduct, Plaintiffs and the Class Members have suffered economic losses, including, but not limited to, loss of income, brain injury, damage and disease, emotional distress, medical monitoring, and death.

137. As a direct and proximate result of Defendants fraudulent conduct, Plaintiffs and the Class Members are entitled to damages from Defendants in an amount reasonably anticipated to exceed the jurisdictional minimum.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

# VIII.

## FOURTH CAUSE OF ACTION

### INDIVIDUALLY AND ON BEHALF OF THE CLASS MEMBERS:

### NEGLIGENT MISREPRESENTATION

### (As Against All Defendants and Does)

138.   Plaintiffs and the Class Members re-allege and incorporate by reference each of the preceding allegations in this complaint as though fully set forth at length herein.

139.   Defendants Pop Warner and USA Football made multiple material misrepresentations to youth tackle football participants and the parents and/or guardians of said participants, including Plaintiffs and the Class Members, and the public at large through public statements, published articles and advertisements which it knew or should have known were misleading. These material misrepresentations involve: (1) the safety of tackle football for minor children; (2) the safety of their age of entry; (3) the level of training and education received by the coaches of Pop Warner football; and (4) the adequacy of the equipment worn by Pop Warner participants.

140.   The material misrepresentations made by Defendant Pop Warner include but are not limited to remarks that all Pop Warner coaches are provided extensive training to ensure the safety of the minor children who participate in the Pop Warner program.

141.   In particular, Defendant Pop Warner's website states, "[t]he safety of our athletes is <u>always the top priority</u> and that is why we provide extensive training for all our football and cheer & dance coaches." The website goes on to state "[w]e have over 40,000 volunteers and coaches that are being trained every year to offer the best and safest programs for you and your children."

142.   In fact, the national Pop Warner office does not check whether coaches in fact receive such training.

143.   Moreover, Defendant Pop Warner misrepresented the safety of the

equipment used by Pop Warner participants. For example, Defendant Pop Warner's executive director wrote, "[a]t Pop Warner, safety is our number one priority when it comes to our young athletes. We emphasize teaching proper techniques, ***using the right equipment*** and making sure our members are educated about all potential injuries." (emphasis added).

144.   In reality, Defendant Pop Warner mandates the use of NOCSAE certified equipment which does not include a youth specific safety standard. Defendant Pop Warner requires the use of NOCSAE certified equipment, including hard-shell helmets, despite the fact that said standards do not account for the unique features and vulnerabilities of minor children when it comes to concussion and head injury prevention.

145.   The material misrepresentations made by Defendant USA Football include but are not limited to remarks that youth football leagues that incorporate Heads Up Football training experience a significantly lower rate of head injuries.

146.   In fact, it was later revealed that USA Football's Heads Up Football training program does not reduce the risk of injury to youth participants by the numbers reported. Indeed, it remains uncertain whether USA Football's Heads Up Football training program alone plays any significant role in decreasing the risk of injury to youth participants.

147.   The material misrepresentations made by Defendant NOCSAE pertain to suggestions that all youth Pop Warner helmets meet NOCSAE standards.

148.   Defendant NOCSAE's standards are misleading because NOCSAE does not maintain youth specific helmet safety standards.

149.   Defendant NOCSAE establishes tackle football helmet standards which fail to independently acknowledge the distinct behavioral and anatomical differences between youth tackle football participants and adults. Defendant NOCSAE disseminates these standards to youth tackle football helmet manufacturers and youth tackle football programs with the knowledge that said standards are misleading and will

1   lead to injury for minor children.

2       150.   Defendants Pop Warner, Palomar PW, Sparks PW, Midvalley PW, Albany

3   PW, USA Football, NOCSAE, and DOES 1 through 100, and each of them, made these

4   misrepresentations and actively concealed adverse information at a time when they

5   knew, or should have known, because of their superior position of knowledge, that the

6   statements and representations were not true.

7       151.   Defendants Pop Warner, Palomar PW, Sparks PW, Midvalley PW, Albany

8   PW, USA Football, NOCSAE, and DOES 1 through 100, and each of them, knew or

9   should have known of the misleading nature of these statements when they were made.

10      152.   Although Defendants Pop Warner, Palomar PW, Sparks PW, Midvalley

11  PW, Albany PW, USA Football, NOCSAE, and DOES 1 through 100, and each of

12  them, may have honestly believed that their representations were true, they had no

13  reasonable grounds for believing that the representations were true when they made

14  them.

15      153.   Plaintiffs and the Class Members, among others, reasonably relied on

16  Defendants Pop Warner, Palomar PW, Sparks PW, Midvalley PW, Albany PW, USA

17  Football, NOCSAE's, and DOES 1 through 100, and each of them, misrepresentations

18  to their detriment when deciding whether to participate and/or enroll their children in

19  the Pop Warner tackle football programs.

20      154.   Defendants Pop Warner, Palomar PW, Sparks PW, Midvalley PW, Albany

21  PW, USA Football, NOCSAE, and DOES 1 through 100, and each of them, knew, or

22  should have known, that Plaintiffs and the Class Members would rely on Defendants'

23  misrepresentations.

24      155.   Defendants Pop Warner, Palomar PW, Sparks PW, Midvalley PW, Albany

25  PW, USA Football, NOCSAE, and DOES 1 through 100, and each of them, made

26  misrepresentations and actively concealed information with the intention that Plaintiffs

27  and the Class Members would rely on the misrepresentations or omissions in selecting

28  their course of action.

156.   Plaintiffs and the Class Members, among others, were damaged by these misrepresentations.

157.   As a direct and proximate result of Defendants negligent misrepresentations, Plaintiffs and the Class Members have suffered economic losses, including, but not limited to, loss of income, brain injury, damage and disease, emotional distress, medical monitoring, and death.

158.   As a result of the negligent acts and omission of Defendants, Plaintiffs and the Class Members are entitled to damages, as alleged herein or allowed by law, from Defendants in an amount reasonably anticipated to exceed the jurisdictional minimum.

## IX.

### FIFTH CAUSE OF ACTION

### WRONGFUL DEATH

### (As Against All Defendants and Does)

159.   Wrongful Death Plaintiffs and the Class Members hereby incorporate by reference each and every allegation contained in the foregoing paragraphs, as though each was fully set forth at length herein.

160.   As a direct and proximate result of Defendants wrongful and deceptive conduct, as described herein, and the nature of Decedents' injuries, Wrongful Death Plaintiffs and the Class Members did not and could not have discovered that Defendants Pop Warner, Palomar PW, Sparks PW, Midvalley PW, Albany PW, USA Football, NOCSAE, and Does 1 through 100, were the cause of each Decedent's death, within two years of the filing of this complaint, and within the parameters set forth in Code of Civil Procedure § 340.8. Wrongful Death Plaintiff, Jo Cornell, as survivor of Tyler Cornell, did not, and could not, discover that Tyler suffered from CTE until January 16, 2015 when a posthumous test revealed his diagnosis.  Wrongful Death Plaintiff, Kimberly Archie, as survivor of Paul Bright, Jr., did not, and could not, discover that Paul suffered from CTE until April 9, 2015 when a posthumous test revealed his diagnosis.

161.   As a further direct and proximate result of the Decedents' death, the Wrongful Death Plaintiffs and the Class Members have been permanently deprived of the Decedents' love, care, companionship, comfort, services, society, solace, contributions, financial support, physical assistance, affection and moral support, all to their damage in an amount in excess of the minimum subject matter jurisdiction of this court, and according to proof.

162.   By reason of the conduct of the Defendants, and each of them, the Wrongful Death Plaintiffs and the Class Members have incurred funeral and burial expenses in such an amount as will be proven at the time of trial.  The Wrongful Death Plaintiffs and the Class Members have lost the use of interest on money owed from the date of this incident until judgment as follows: on funeral and burial expenses; on loss of support; on the pecuniary value of the loss of love, care, companionship, comfort, services, society, solace and moral support.

## X.

### SIXTH CAUSE OF ACTION

### INDIVIDUALLY AND ON BEHALF OF THE CLASS MEMBERS:

### VIOLATION OF BUSINESS & PROFESSIONS CODE § 17200 et seq.;

### DECEPTIVE BUSINESS PRACTICES

#### (As Against All Defendants and Does)

163.   Plaintiffs and the Class Members re-allege and incorporate by reference each of the preceding allegations in this complaint as though fully set forth at length herein.

164.   The conduct of Defendants Pop Warner, Palomar PW, Sparks PW, Midvalley PW, Albany PW, USA Football, NOCSAE, and DOES 1 through 100, and each of them, with respect to the systematic marketing and deception of Pop Warner participants, both minor children and the parents and/or guardians of said children, including Plaintiffs and the Class Members, as more particularly described above is an unlawful or deceptive business practice within the meaning of California Business and

Professions Code § 17200 prohibiting such practices.  Defendants' unlawful practices include Defendants misrepresentations through advertising that provided a safe environment for children. These statements were made despite Defendants' knowledge of the lack of safety precautions for children.

165.  Plaintiffs, on behalf of themselves, the Class Members, and the general public, seek an order requiring Defendants Pop Warner, Palomar PW, Sparks PW, Midvalley PW, Albany PW, USA Football, NOCSAE, and DOES 1 through 100, and each of them, to immediately cease such acts of unlawful, deceptive and misleading advertising and enjoining Defendants from continuing to violate Business & Professions Code § 17200 et seq.  Plaintiffs and the Class Members additionally request an order requiring Defendants to engage in a corrective advertising campaign.  Plaintiffs also request an order requiring Defendants to make restitution to Plaintiffs and to the Class Members of all monies wrongfully acquired by Defendants by means of their violations of Business & Professions Code § 17200 et seq.

**XI.**

**SEVENTH CAUSE OF ACTION**

**INDIVIDUALLY AND ON BEHALF OF THE CLASS MEMBERS:**

**VIOLATION OF BUSINESS & PROFESSIONS CODE**

**SECTION 17500 et seq.**

**(As Against All Defendants and Does)**

166.  Plaintiffs and the Class Members re-allege and incorporate by reference each of the preceding allegations in this complaint as though fully set forth at length herein.

167.  Business & Professions Code § 17500 prohibits unfair, deceptive, untrue and misleading advertising.

168.  Defendants', Pop Warner, Palomar PW, Sparks PW, Midvalley PW, Albany PW, USA Football, NOCSAE, and DOES 1 through 100, and each of them, use of various forms of media to advertise, call attention to, or give validity to the sale of

37

Case No. 2:16-cv-6603

1   services, which are not as represented in their advertising constitutes unfair, deceptive,

2   untrue and/or misleading advertising within the meaning of Business & Professions

3   Code § 17500 et seq. Defendants' advertising conduct, including their

4   misrepresentations and concealment of the true facts alleged above is likely to have

5   deceived and continue to deceive Plaintiffs and the Class Members and the public at

6   large. Defendants reasonably should know and should have known that such

7   advertisements were unfair, deceptive, untrue and/or misleading. The

8   misrepresentations and non-disclosures by Defendants of material facts detailed above

9   constitute unfair, deceptive, untrue and misleading advertising and constitute a

10  violation of Business & Professions Code § 17500, et seq.

11      169.   Plaintiffs and the Class Members request an order requiring Defendants to

12  make restitution to Plaintiffs and the Class Members of all monies wrongfully acquired

13  by Defendants by means of their violations of Business & Professions Code § 17535 et

14  seq. during the Class period. Pursuant to Business & Professions Code § 17535 et seq.

15  Plaintiffs, on behalf of themselves, the Class Members, and the general public, also

16  seek an order requiring Defendants to immediately cease such acts of deceptive and

17  misleading advertising, including that youth tackle football is safe for minor children,

18  all coaches are adequately trained to offer the best and safest programs for youth

19  participants and that equipment meets NOCSAE regulatory standards, and enjoining

20  Defendants from continuing to violate Business & Professions Code § 17500 et seq.

21

22                                    **XII.**

23                         **PRAYER FOR RELIEF**

24      WHEREFORE, Plaintiffs, individually and on behalf of the Class Members

25  respectfully request that the Court enter judgment in their favor and against Defendants,

26  as follows:

27      A.    Certification of the proposed Classes; including appointment of Plaintiff's

28  as Class Counsel;

1    B.    An order temporarily and permanently enjoining Defendants from

2    continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in

3    this Complaint;

4    C.    Injunctive relief;

5    D.    For future medical monitoring costs, according to proof;

6    E.    An order requiring Defendants NOCSAE to provide warning labels on all

7    helmets including disclosure of the risk of exposure to CTE and other neurological

8    damage and disease;

9    F.    An order requiring Defendants NOCSAE to provide helmet safety and

10   design standards geared toward minor football participants;

11   G.    Costs, restitution, damages, including punitive damages, and disgorgement

12   in an amount to be determined at trial;

13   H.    An order requiring Defendants to pay both pre- and post-judgment interest

14   on any amounts awarded;

15   I.    An award of costs and attorneys' fees; and;

16   J.    Any other relief the Court may deem appropriate.

17

18   DATED: January 9, 2017          GIRARDI | KEESE

19

20

21                          By:  ___/s/ Robert W. Finnerty___

22                               ROBERT W. FINNERTY
                                 Attorneys for Plaintiffs

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Los Angeles, State of California.  My business address is 1126 Wilshire Boulevard, Los Angeles, CA 90017-1904.

On January 9, 2017, I served true copies of the following document(s) described as **FIRST AMENDED CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL** on the interested parties in this action as follows:

**BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on January 9, 2017, at Los Angeles, California.

/s/ Terry Yamasaki
Terry Yamasaki