1 | GIRARDI | KEESE
THOMAS V. GIRARDI, State Bar No. 36603
2 | tgirardi@girardikeese.com
ROBERT W. FINNERTY, State Bar No. 119775
3 | rfinnerty@girardikeese.com
1126 Wilshire Boulevard
4 | Los Angeles, California 90017
Telephone: (213) 977-0211
5 | Facsimile: (213) 481-1554

6 | Attorneys for Plaintiffs

7

8 | UNITED STATES DISTRICT COURT

9 | CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

10

11 | KIMBERLY ARCHIE, as survivor of decedent Paul Bright Jr.; JO CORNELL, as survivor of decedent Tyler Cornell, on behalf of themselves and all others similarly situated; JO CORNELL, an individual, on behalf of herself and all others similarly situated;

Case No. 2:16-cv-6603-PSG-PLA

**THIRD AMENDED CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

The Hon. Philip Gutierrez

Plaintiffs,

v.

POP WARNER LITTLE SCHOLARS, INC.; a nonprofit corporation; and DOES 1-100,

Defendants.

## THIRD AMENDED CLASS ACTION COMPLAINT

Kimberly Archie, as survivor of decedent Paul Bright Jr., and Jo Cornell, as survivor of decedent Tyler Cornell, on behalf of themselves and all others similarly situated (hereinafter "Wrongful Death Plaintiffs and Class Members"), Jo Cornell, an individual, on behalf of herself and all others similarly situated, (hereinafter "Adult Plaintiffs and the Class Members"), (collectively referred to as "Plaintiffs and the Class Members") bring this class action complaint and allege the following against

1

Defendants Pop Warner Little Scholars, Inc. and DOES 1-100 (collectively "Defendants") and each of them as follows:

## I.

## PARTIES

A.    **Plaintiffs:**

1.    Plaintiff, Kimberly Archie, as survivor of decedent Paul Bright Jr., is the biological mother of decedent Paul Bright, and is a resident of the City of North Hollywood, County of Los Angeles, in the State of California. Plaintiff Archie's son, Paul Bright Jr., participated in Defendants Pop Warner's program from 1997 through 2004. In particular, Paul Bright Jr. was a member of the Sparks Pop Warner Steelers in Sparks, Nevada. As a result of Defendants' actions and omissions, as further described below, Paul sustained various injuries, including, but not limited to, injuries to his brain. In 2008, Paul Bright Jr. began experiencing behavioral issues acting unpredictably, recklessly and without care for the consequences. Paul had ongoing issues with concentrating, sleep disturbances, managing his emotions and decision making that escalated from his senior year of high school until his death. On September 1, 2014, Paul Bright Jr.'s erratic and reckless behavior ultimately lead to his untimely death. On April 9, 2015 it was discovered that Paul Bright Jr. suffered from Chronic Traumatic Encephalopathy. Plaintiff Kimberly Archie could not have discovered that her son, Paul Bright Jr. suffered from CTE before April 9, 2015 because Paul's CTE was discovered after a thorough study, by Boston University, of Paul's brain after he passed away. Plaintiff Kimberly Archie received the results of the study on or around April 9, 2015.  Plaintiff Kimberly Archie could not have received the diagnosis during Paul's life because CTE is diagnosed postmortem.

2.    Plaintiff, Jo Cornell, is a resident of the City of San Diego, in the State of California. Her son, Decedent Tyler Cornell, participated in Defendants Pop Warner's program from 1997 through 2002. In particular, Tyler Cornell was a member of the Wescon Region, Palomar Pop Warner Conference, Rancho Bernardo Association, in

San Diego, California. As a result of Defendants' actions and omissions, as further described below, Tyler sustained various injuries, including but not limited to injuries to his brain. After playing Pop Warner, Tyler began experiencing behavioral issues and was diagnosed with depression. On April 3, 2014 Tyler Cornell took his own life. On January 16, 2015 it was discovered that Tyler Cornell suffered from Chronic Traumatic Encephalopathy. Plaintiff Jo Cornell could not have discovered Decedent Tyler Cornell's CTE diagnosis before January 16, 2015 because Decedent Tyler Cornell's CTE was discovered after a thorough study, by Boston University, of Tyler Cornell's brain after he passed away. Plaintiff Jo Cornell received the results of the study on January 16, 2015. Plaintiff Jo Cornell could not have received the diagnosis during Tyler's life because CTE is diagnosed postmortem. Based on the forgoing, Ms. Cornell's could not have reasonably discovered facts as to Tyler's clinical diagnosis of Chronic Traumatic Encephalopathy that supports the cause of action of negligence and wrongful death against named defendants until January 16, 2015.

**B.    Defendants:**

3.    Defendant, Pop Warner Little Scholars, Inc. (hereinafter referred to as "Pop Warner") is a non-profit corporation incorporated and headquartered in Pennsylvania. Pop Warner Little Scholars, Inc. provides youth tackle football, cheerleading and dance programs for children ages 5 to 15 years old. Pop Warner Little Scholars, Inc. is a national nonprofit corporation that operates across forty-two states, including California, and throughout numerous countries worldwide.

4.    The true names and/or capacities, whether individual, corporate, associate or otherwise, of Defendants DOES 1 through 100, inclusive, and each of them, are unknown to Plaintiffs and the Class Members, who therefore sue said Defendants by such fictitious names. Plaintiffs and the Class Members are informed and believe, and upon such information and belief allege, that each of the Defendants fictitiously named herein as a DOE is legally responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to, and proximately caused the

1 injuries and damages to Plaintiffs and the Class Members hereinafter alleged. Plaintiffs
2 and the Class Members will seek leave of Court to amend this Complaint to assert the
3 true names and/or capacities of such fictitiously named Defendants when the same have
4 been ascertained.

5      5.    Plaintiffs and the Class Members are informed and believe, and based
6 thereupon allege, that at all times mentioned herein, Defendants, and each of them,
7 including DOES 1 through 100, were the agents, servants, employees, alter-egos,
8 and/or joint venturers of their co-Defendants, and were, as such, acting within the
9 course, scope and authority of said agency, employment and/or joint venture, and that
10 each and every Defendants, as aforesaid, when acting as a principal, was negligent in
11 the selection and hiring of each and every Defendants as an agent, employee and/or
12 joint venturer.

13 **II.**

14 **GENERAL ALLEGATIONS**

15      6.    This action arises from Defendant Pop Warner Little Scholars, Inc.'s
16 failure to provide for the safety and health of minor child participants of the Pop
17 Warner tackle football program.

18      7.    The Pop Warner Little Scholars program is a youth tackle football, cheer
19 and dance program founded in 1929. Pop Warner was incorporated as a national
20 nonprofit corporation in 1959.

21      8.    Today, the Pop Warner program consists of eight regional conferences
22 across forty-two states and several countries. Each region consists of separate leagues,
23 associations and teams.

24      9.    Upon information and belief, over 400,000 children participate in the Pop
25 Warner tackle football program per year. However, participation in youth tackle
26 football has been in decline in recent years.

27      10.    Pop Warner Little Scholars, Inc. and Does 1 through 100, and each of
28 them, misrepresented material facts to Plaintiffs and the Class Members and the public

4

at large regarding the safety of Pop Warner tackle football, including the safety of the equipment used by minor child participants.

11.     Upon information and belief, the National Operating Committee on Standards for Athletic Equipment (hereinafter "NOCSAE") was created in 1969 to commission research to prevent injuries.  To this end, NOCSAE created standards for various athletic equipment, including football helmets.

12.     Every league, from Pop Warner to the NFL mandates that the helmets used Meets NOCSAE Standards.  NOCSAE does not have a specific youth standard.

13.     NOCSAE adopted the Severity Index (hereinafter "SI") as a failure criteria when testing football helmets and developing football equipment standards. The test involves dropping a football helmet from a range of heights, with a maximum height of 1.3 meters, onto a thick rubber pad to measure linear acceleration and the effect of the impact on various portions of the helmet. The test, through a series of mathematical calculations, reveals a SI that is assigned to the football helmet to determine whether it passes certification for use by tackle football participants.

14.     The original NOCSAE football helmet standard had a failure limit of 1500 SI, which was later reduced to 1200 SI. NOCSAE published its standards for football helmet safety in 1973.

15.     NOCSAE's standard mandates that the actual SI number of a particular football helmet test should not be referenced, only that it is above or below 1200. Indeed, SI scores are not made available to the public. Upon information and belief, NOCSAE's standards are used by every level of football from Pop Warner to the National Football League.  Indeed, many of the Youth Football Leagues across the nation actually require that the football helmets meet NOCSAE standards, and in turn, that the helmets bear the NOCSAE logo – including Defendant Pop Warner Little Scholars, Inc.

16.     Defendant Pop Warner, however, has known since at least November of 2000 that football helmet impacts that result in a SI of 559 SI, well below the NOCSAE

standard of 1200, result in a 95% chance of concussion for the participant. As a result, a concussion is almost certain to occur at SI levels half that of the current 1200 SI NOCSAE standard used today.

17. Defendant Pop Warner has known this information since on or around November 2000 and has failed to inform the consumers, including Plaintiffs. Instead, Defendant Pop Warner mandates the use of tackle football helmets that bear NOCASAE's logo, i.e. meets NOCSAE standards, creating the false sense of security that the helmet has been tested for safety and protection against injury.

18. Defendant Pop Warner creates the allure that its program is safe by mandating the use of helmets bearing a sticker that states "Meets NOCSAE Standards."

19. All of Defendant Pop Warner's hard-shell helmets contain a sticker stating that the helmet "Meets NOCSAE standard". For virtually all parents, this sticker is equated with safety.

20. However, NOCSAE notably concedes that there are no specific safety standards for youth sports. In other words, NOCSAE safety specifications fail to differentiate between adult tackle football participants and children tackle football participants, despite the drastic and varying differences between the two.

21. Defendant Pop Warner has approved the NOCSAE helmet standard labels that are used, and even mandated their use, knowing that they are misleading and will increase the risk of injury for minor children. The NOCSAE logo on youth tackle football helmets, including but not limited to hard-shell helmets, "Meets NOCSAE Standards" creates a false sense of security for Pop Warner participants and the parents and/or guardians who enroll them.

22. Defendant Pop Warner has further engaged in misleading representations regarding the safety of Pop Warner football.

23. Tackle football with helmets is a violent game which exposes all who play it to risk of sprained and dislocated joints, broken bones, ruptured organs, paralysis,

1    death and brain damage. Defendant Pop Warner has knowingly exposed children to

2    those risks for decades.

3        24.     Defendant Pop Warner advertises itself as a safety-first organization in

4    which children play for coaches trained in proper tackling techniques, and that this

5    technique makes youth tackle football safe for children as young as 5, who weigh as

6    little as 45 pounds.

7        25.     Defendant Pop Warner further creates the illusion that pop warner football

8    is safe by mandating the use of helmets that "Meets NOCSAE standards." Defendant

9    Pop Warner, however, knows that NOCSAE does not have a youth specific standard.

10       26.     The risk of Chronic Traumatic Encephalopathy ("CTE") in a collision

11    sport has been understood since 1928 when in the *Journal of American Medical*

12    *Association* article forensic pathologist Dr. Harris on Standford Martland, the chief

13    medical examiner of Essex County in Newark, New Jersey, noted tremors, slowed

14    movement, confusion, and speech problems typical of the condition in boxers.

15    Additionally, as early as 1936 scientists noted that "athletes entering into competitions

16    in which brain injuries are frequent and knock-outs common should realize that they are

17    exposing themselves not only to immediate injury but also to remote and sinister

18    effects.

19       27.     CTE is the result of the cumulative toll of hundreds of traumatic impacts

20    to the brain. Brain damage can occur without an identified concussion, from traumatic

21    forces that are seemingly routine in collision sports. There may be multiple brain

22    damaging events in any one football game, but the injured individual may show no

23    overt signs of concussion. CTE may also involve progressive degeneration of the brain

24    tissue. **These changes in the brain can begin months, years, or even decades after**

25    **the last brain trauma or end of active athletic involvement.**

26       28.     There is both an early phase and late phase of CTE. During the early

27    stages of CTE, relatively young people will suffer from primarily behavior and mood

28    symptoms. In the later stages, CTE involves an early onset of severe cognitive and

1  motor decline.

2      29.    Additionally, in the early stages of CTE, severe depression and suicide are

3  among the most common features. CTE creates a significant risk for suicide as it

4  synergistically combines depression, anxiety, paranoia, reduced impulse control,

5  behavioral extremes that can often be violent, and despair for those suffering with its

6  effects.

7      30.    The risk of head and brain injury in football has been understood at least

8  as long ago as the first football helmet, i.e. circa 1894.

9      31.    Children are more vulnerable to injury, particularly head, neck and brain

10 injuries than adults. The reasons for this additional vulnerability include the fact that

11 children's brains and heads are disproportionately large compared to the rest of the

12 body. Additionally, children typically have weak necks compared to adults. The extra

13 size and weight of the head coupled with a child's weaker neck results in less ability to

14 limit the degree to which the head will be subject to rotational forces in a collision.

15 Rotational forces (which are the most dangerous inside the brain) will be greater for a

16 child, proportional to the severity of the impact.

17     32.    The weight of the helmet adds additional weight to the issues of the head

18 being disproportionately large.

19     33.    Additionally, a child's brain takes longer to recover from a concussion

20 than an adult's brain.

21     34.    Children's brains have less myelin than adults' brains. Myelin is a type of

22 insulator to axonal fibers that connect the brain internally and throughout the nervous

23 system. Myelin serves to protect neurons from damage. The less myelin, the more risk

24 for damage.

25     35.    Key brain developments are occurring in children between the ages of 10

26 and 13. Traumatic injury to the brain during such period will have a significant impact

27 and lead to CTE.

28     36.    Neurons are the primary thinking and information transfer cell in the

8

Case No. 2:16-cv-6603

brain.   The earlier a person becomes exposed to neural wasting activities (brain trauma), the greater the likelihood that the "neuronal reserve" of such person will be prematurely exhausted before normal aging.

37.     Each person has a certain number of functioning neurons, which exceed the number required to function as an adult.   Through the normal aging process a person will lose a predictable number of neurons each decade of life.   Clinically significant early brain function decline is substantially related to the number of neuron's left in a human brain, dipping below the number required for normal cognitive, behavioral, mood and physical function.   Playing tackle football involves repetitive brain trauma, which kills brain cells.   The younger a person starts playing tackle football, the longer they play tackle football, the more likely it is that their neuronal reserve will prematurely dip below the level needed for normal cognitive, mood, behavioral and physical function.   Accelerating the pace of neuronal decline will accelerate the point in time at which a person becomes demented.

38.     The youth football helmet presents an unreasonable risk of harm to the user because the helmet was not designed for minors, there are known design defects, inadequate fitting instructions and inadequate adult manufacturing standards applied towards an even more vulnerable population, child athletes.

39.     Defendant Pop Warner knew, or should have known, about the dangers of playing football, especially without proper equipment and/or using improper techniques.   Defendant Pop Warner, however, failed to warn Plaintiffs, and the putative class, about the dangers of using improper equipment and/or techniques.

40.     Defendants', Pop Warner's, false representations regarding the safety of youth tackle football misled parents and/or guardians into enrolling their children in the Pop Warner program.

41.     Defendant Pop Warner engages in false and misleading advertising regarding the level of training of their coaches and staff.

42.     For example, Pop Warner's website boasts:

We have over 40,000 volunteers and coaches that are being trained every year to offer the best and safest programs for you and your children…The safety of our athletes is <u>always the top priority</u> and that is why we provide extensive training for all our football and cheer & dance coaches.[1]

43.     However, upon information and belief, Jon Butler, executive director of Pop Warner Little Scholars, Inc., conceded in a deposition that the national Pop Warner office does not check whether coaches in fact receive such training.

44.     Moreover, Jon Butler further conceded in a deposition that Pop Warner does not employ personnel with a medical background, athletic training background, or physical education background.

45.     Defendants Pop Warner and Does 1 through 100, and each of them, continue to mislead Plaintiffs and the Class Members and the public at large regarding the safety of Pop Warner football, including the dramatic inadequacies of the equipment it provides, the equipment used, the techniques taught and the level of training of their coaches on the topic of child safety.

46.     Defendant Pop Warner failed to adequately ensure that their coaches were properly trained and educated on the topic of safety, and what techniques were reasonably safe to teach minor child participants based on child appropriate performer readiness.

47.     Defendants Pop Warner and Does 1 through 100, and each of them, failed to adequately ensure that the equipment used by Pop Warner participants was adequate to protect minor children against the risk of brain injuries.

48.     Defendants Pop Warner and Does 1 through 100, and each of them, each owe a duty of care to the minor children who participate in their Pop Warner program. An adult is required to exercise a greater degree of care towards children and anticipate

---

[1] http://www.popwarner.com/about_us/benefits.htm

THIRD AMENDED CLASS ACTION COMPLAINT

their ordinary behavior. CACI 412. Furthermore, "A greater degree of care is generally owed to children because of their lack of capacity to appreciate risks and to avoid danger." *McDaniel v. Sunset Manor Co.* (1990) 220 Cal.App.3d 1, 7, citing *Casas v. Maulhardt Buick, Inc.* (1968) 258 Cal.App.2d 692, 697–700.

49.     Defendants' Pop Warner and Does 1 through 100, fraudulent misrepresentations regarding the safety of youth tackle football and their failure to meet their duty to safeguard minor children, including Plaintiffs and the Class Members, against the increased risk associated with youth tackle football including but not limited repetitive brain trauma coupled with the use of hard-shell helmets not adequately designed to protect their unique vulnerabilities, a duty in which they voluntarily undertook, was willful, wanton, egregious, reckless, and with a high degree of moral culpability.

50.     As a result of Pop Warner's and Does 1 through 100, gross negligence and fraudulent misrepresentations, Plaintiffs and the Class Members suffered repeated brain trauma, including multiple concussions, which has led to severe chronic brain injuries, including but not limited to depression and Chronic Traumatic Encephalopathy (hereinafter "CTE") as well as substantially certain  risk for future injury.

### III.

### JURISDICTION AND VENUE

51.     Jurisdiction is proper pursuant to 28 U.S.C. § 1332 (d), the Class Action Fairness Act of 2005, because the proposed Class consists of more than 100 members; the amount in controversy exceeds the jurisdictional requirement of $5,000,000 exclusive of costs and interest; and diversity exists. The Court may also exercise supplemental jurisdiction over Plaintiff's and Class Member's state law claims pursuant to 28 U.S.C. § 1367.

52.     This Court has personal jurisdiction over Defendants. Many of the acts and omissions giving rise to this action occurred in California. Defendants have sufficient minimum contacts in California and intentionally avail themselves of the laws and

1    protections of California.

2        53.    Defendant Pop Warner operates and controls several Pop Warner leagues

3    throughout California. Defendant Pop Warner's leagues across the state of California

4    include the Orange Empire Pop Warner, Mount Baldy Pop Warner, San Diego Pop

5    Warner, Palomar Pop Warner, Peninsula Pop Warner (Northern California), Los

6    Angeles County Pop Warner, Imperial Valley Pop Warner, and Sagebrush Empire Pop

7    Warner. Defendant Pop Warner plays an active role in creating Pop Warner leagues

8    throughout the State of California. Moreover, Defendant Pop Warner regularly holds

9    conferences in cities throughout California. Furthermore, Defendant Pop Warner has

10   had substantial, continuous, and systematic other contacts with California.

11       54.    Plaintiffs are informed and believe and based thereon allege that

12   Defendant Pop Warner has approximately 14,000 to 32,000 total tackle football

13   participants in its California-based programs.

14       55.    Plaintiffs are informed and believe and based thereon allege that in order

15   to start a local Pop Warner football league, the league representative must submit a

16   league registration form to Defendant Pop Warner.

17       56.    If Defendant Pop Warner approves the local league, the local league must

18   pay Defendant Pop Warner a league fee of $25 per team per year.

19       57.    Each of these local leagues has the option of obtaining insurance through

20   Defendant Pop Warner. If the local leagues purchase insurance through Defendant Pop

21   Warner, Defendant Pop Warner adds a 3% surcharge to the price of the insurance.

22       58.    Plaintiffs are informed and believe, and based thereon allege that various

23   local leagues in California purchase their league insurance through Defendant Pop

24   Warner.

25       59.    Once Defendant Pop Warner approves a league, Defendant Pop Warner

26   continues to assert substantial control over the leagues. Indeed, Defendant Pop Warner's

27   own website illustrates the Pop Warner "Chain of Command" depicting Defendant Pop

28

Warner as having authority over the various local leagues.[2]

60.     Each year, Defendant Pop Warner requires each league to purchase Defendant Pop Warner's rule book.

61.     Defendant Pop Warner provides a full time executive support staff to support all the local leagues in assisting in policy creation.

62.     Defendant Pop Warner requires each local league team to submit a roster to Defendant Pop Warner verifying the participants' age and weight.

63.     This is required because Defendant Pop Warner has strict age and weight requirements for each of its divisions.

64.     If any of the local leagues want to vary from Defendant Pop Warner's strict weight requirements, the local league must submit that request to Defendant Pop Warner and Defendant Pop Warner determines whether or not to grant the variance.

65.     Defendant Pop Warner facilitates the local league's recruitment of coaches through Defendant Pop Warner's website.

66.     Defendant Pop Warner requires annual background checks from every volunteer in any Pop Warner association.

67.     Defendant Pop Warner also represents that it provides "extensive training for all of our football…coaches." It represents that it has over 40,000 volunteers and coaches that are being trained every year to offer the best and safest programs for its participants.

68.     Defendant Pop Warner facilitates the required training for the coaches by providing the courses for sale, while also outlining the rules and deadlines for obtaining coaching certification.

69.     All participants in Pop Warner must abide by a Code of Conduct that is created by Defendant Pop Warner. If the rules in the Code of Conduct are broken,

---

[2] http://www.popwarner.com/Default.aspx?tabid=1463868

Defendant Pop Warner has the authority to impose a penalty.

70. On Defendant Pop Warner's website, Defendant Pop Warner offers a "National League Finder" to help consumers find their local leagues.

71. Defendant Pop Warner provides uniform enrollment forms required to register in any Pop Warner football program nationwide. Defendant Pop Warner requires each participant to wear a Pop Warner patch, which Defendant Pop Warner sells to the local leagues.

72. In addition to providing the youth participants with uniforms, Defendant Pop Warner also provided the youth participants with their football helmets.

73. Defendant Pop Warner's also sets a schedule for the local leagues.

74. Indeed, Defendant Pop Warner's Calendar indicates that on September 16, 2016, all leagues are required to submit to Defendant Pop Warner all insurance, league registrations forms, and league dues. Additionally, Defendant Pop Warner's 2016 calendar stated that in July, Defendant Pop Warner would mail the annual rule book to the local leagues, and that August 1, 2016 was the first day that the local leagues were allowed to hold practices.

75. Defendant Pop Warner's 2011 IRS form 990 states in part the following description for Defendant Pop Warner's duties "Administrating leagues, scholastics…"

76. The IRS form 990 is professionally prepared by a CPA, reviewed by Defendant Pop Warner's Board of Directors and Executive Director John Butler.

77. Indeed, Defendant Pop Warner's Mission Statement includes the objective to provide a safe playing environment for the youth participants. Examples of this, according to its website, include (1) "Pop Warner provid[ing] Coaching Clinics and Risk Management Training," "An enforced national rule book incorporate[ing] time-tested rules," and (3) "A full-time executive support staff support[ing] all local associations and assist[ing] in sound policy creation."

78. Plaintiffs are informed and believe and based thereon allege that the "Santa Cruz Stingrays" youth football team is a d/b/a of Pop Warner Little Scholars, Inc.

79.     Defendant Pop Warner organizes a youth football Super Bowl every year.

80.     Decedents Tyler Cornell and Paul Bright both played in Defendant Pop Warner regional playoff games in hopes of earning a spot in Defendant Pop Warner's Super Bowl.  Decedent Paul Bright's playoff game took place in California.

81.     NOCSAE founding members claimed a need to create their own organization because ASTM was "too slow". Since 1973 the only change to the pass or fail severity index measurement of linear force used by NOCSAE was lowering the pass or fail threshold from 1500 to 1200 in 1997. Helmets with lower SI were grandfathered in and never removed from the market. There were no limits at that time for a number of years helmet could be in circulation or adequate system for the average consumer to know what year the product had been made or purchased.

82.     Organizations such as Defendant Pop Warner who operate leagues throughout California, incorporate a requirement that helmets worn by Pop Warner participants meet NOCSAE's standards. For example, Defendant Pop Warner Little Scholars 2014 official rule book states:

> Only helmets bearing the NOCSAE Seal of Certification may be worn.
> All helmets must bear the current NOCSAE approved "Warning Label"
> in a visible position on the outside of the helmet. This "Warning Label"
> is the same label that is furnished by all helmet manufacturers and
> quality reconditioners.[3]
>
>> Plaintiffs are informed and believe, and based thereon allege that between 14,000 and 32,000 youth football participants play for California Pop Warner leagues.  Plaintiffs are further informed and believe and based thereon allege that California high school football leagues also require the use of NOCSAE certified helmets.

---

[3] http://files.leagueathletics.com/Images/Club/14311/2014_Rule_Book.pdf

83.     As described herein, the actions and omissions of each Defendant in California have caused harm in California to California residents, including minor children, and will continue to do so unless enjoined. Plaintiff Tyler Cornell and Paul Bright, Jr. and several of the Class Members, sustained severe and significant injury while participating in Defendant Pop Warner's California based youth tackle football programs. Plaintiffs used helmets purportedly certified by NOCSAE which increased the risk of harm and future injury while participating in Defendant Pop Warner's California based youth tackle football programs. Moreover, Adult Plaintiffs and the Class Members suffered pecuniary loss as a result Defendants actions in California.

84.     Defendants wrongful actions and inactions which give rise to Plaintiffs' and the Class Members' claims took place in California. Moreover, Plaintiffs and the Class Members claims arise out of Defendants contacts with California, as described above. Finally, the tragic deaths of Plaintiffs Tyler Cornell and Paul Bright Jr. occurred in the State of California.

85.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(3) because all Defendants are subject to this Court's personal jurisdiction. Each Defendant has the requisite minimum contacts with California so as to be subject to personal jurisdiction under the theory of specific jurisdiction.

86.     Moreover venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) as a substantial amount part of the events or omissions giving rise to the claim occurred in this District.

## IV.

## CLASS ACTION ALLEGATIONS

87.     Plaintiffs, Kimberly Archie, as survivor of decedent Paul Bright Jr., Jo Cornell, as survivor of decedent Tyler Cornell, and Jo Cornell, an individual, bring this action on behalf of themselves and all others similarly situated, pursuant to the Federal Rules of Civil Procedure Rule 23(a), (b)(2), and (b)(3) and on behalf of the following

class(es) of persons:

**1.      Wrongful Death Class:**

All deceased individuals (hereinafter "Decedents") who participated in the Pop Warner youth tackle football program from 1997 to the present for which the Complaint alleges the cause of death and/or contributing cause of death was due to, in whole or in part, injuries sustained from their participation in the Pop Warner youth tackle football program.

**2.      Medical Monitoring Class:**

All persons who played youth tackle football in the Pop Warner Little Scholars youth tackle football program from 1997 to the present.

**3.      The Adult Class:**

All persons who enrolled their minor children in the Pop Warner tackle football program from 1997 to the present.

88.     Excluded from the Classes are: (1) the officers and directors of any of the Defendants; (2) any judge or judicial officer assigned to this matter and his or her immediate family and staff; and (3) any legal representatives, successor, or assigns of any excluded persons or entities.

89.     This action is properly maintained as a class action because Plaintiffs can prove the elements of each claim on a class-wide basis, using the same evidence that Plaintiffs would use to maintain and prove and individual action. Thus, the action may be properly maintained on behalf of each of the proposed Classes pursuant to Fed. R. Civ. P. 23.

90.     The Members of each Class are so numerous that joinder of all members would be impracticable. The precise number of Class Members is unknown at this time. However, based on information and belief, the members of the Class are made up of hundreds of thousands of members evidenced by the estimate that approximately 250,000 children enroll in Pop Warner tackle football across the country per year. Moreover, millions of minor children have participated in the program from 1997 to the

present. In addition, based on information and belief, the members of the Adult Class are similarly made up of thousands of members evidenced by the estimate that approximately 250,000 children are enrolled by their parents and/or guardians in Pop Warner tackle football across the country per year. Moreover, millions of parents and/or guardians have enrolled their minor children in the program from 1997 to the present.

91.     Questions of law and fact common to the Class Members predominate over any questions affecting any individual member, and a class action is superior to all other available methods for the fair and efficient adjudication of the controversy.

92.     Common questions of law and fact include but are not limited to:

  a.     Whether Defendants misrepresented the safety of its youth tackle football program;

  b.     Whether Defendants misrepresented the safety of their equipment;

  c.     Whether Defendant Pop Warner's representations about the qualifications of its coaches and the safety of its programs was likely to deceive consumers into enrolling in their programs;

  d.     Whether Plaintiffs and the Class Members are entitled to compensatory damages, including punitive and other monetary relief; and

  e.     Whether Plaintiff and Classes are entitled to relief, including but not limited to equitable, injunctive, and restitution.

93.     Plaintiffs' claims are typical of the Class Member's claims because the Class Members were comparably injured through Defendants' illegal and wrongful conduct as described herein.

94.     Plaintiffs are adequate Class Representatives because Plaintiffs are committed to prosecuting the action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of other Members of the Class and Plaintiffs have the same non-conflicting interests as the other Class Members. Plaintiffs and their counsel  would fairly and adequately represent the

interests of the Class Members.

95.   Class treatment is superior to any other available means of prosecution of fair and efficient adjudication of this controversy. There are no unusual difficulties that are likely to arise in the management of this action. The damages and other financial detriment suffered by Plaintiffs and Class Members are small compared to the burden and expense of prosecuting each action individually. Thus, it would be impracticable for Plaintiffs and Class Members to bring individual actions against Defendants for its wrongful and illegal conduct. Further, class treatment benefits the courts. Individualized litigation promises inconsistent or contradictory judgments, unnecessary overlap of resources, and increases the delay and expense to all those accessing the courts. Class treatment brings with it the benefit of a single adjudication, the supervision of a single court, and the consolidation of the courts' and the parties' resources.

96.   The prosecution of separate actions by individual Class Members would create the risk of inconsistent or varying adjudications with respect to individual Class Members which would establish incompatible standards of conduct for Defendants or which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests. Defendants have acted, or refused to act, on grounds generally applicable to, and causing injury to the Class Members. Therefore, preliminary and final injunctive relief and damages for Defendants' illegal conduct is appropriate.

## V.

### FIRST CAUSE OF ACTION

### INDIVIDUALLY AND ON BEHALF OF THE CLASS MEMBERS:

### NEGLIGENCE

### (As Against All Defendants and Does)

97.   Plaintiffs and the Class Members re-allege and incorporate by reference each of the preceding allegations in this complaint as though fully set forth at length

1 | herein.

2 | 98. Defendants Pop Warner and DOES 1 through 100, and each of them, have
3 | violated Section 323 of the Restatement (Second) of Torts as adopted by the Courts in
4 | California, which states that:

5 | One who undertakes, gratuitously or for consideration, to render services
6 | to another which he should recognize as necessary for the protection of
7 | the other's person or things, is subject to liability to the other for physical
8 | harm resulting from his failure to exercise reasonable care to perform his
9 | undertaking, if (a) his failure to exercise such care increases the risk of
10 | such harm, or (b) the harm is suffered because of the other's reliance
11 | upon the undertaking.

12 | 99. Each Defendant voluntarily assumed a duty to protect the health and safety
13 | of minor participants of the Pop Warner youth tackle football league.

14 | 100. Defendant Pop Warner voluntarily created a youth tackle football program
15 | for children ages five through sixteen. By and through this program, Defendant Pop
16 | Warner created an environment wherein children, under Defendant Pop Warner's
17 | supervision, engage in an activity that increases the risk to their health and safety.
18 | Moreover, Defendant Pop Warner develops rules and regulations governing Pop
19 | Warner players and coaches while engaged in Defendant's program.

20 | 101. As early as 1992, Defendant Pop Warner voluntarily adopted safety
21 | standards, including equipment safety standards, and mandated that every Pop Warner
22 | participant, including Plaintiffs and the Class Members, abide by the adopted safety
23 | standards. Defendant Pop Warner, however, knew that NOCSAE's standards did not
24 | have a youth specific standard.  Despite this knowledge, Defendant Pop Warner
25 | mandated the use of helmets that "Meets NOCSAE Standards." Defendant Pop Warner
26 | required the children to wear helmets that "Meets NOCSAE Standards" to create a false
27 | sense of security among parents, like Plaintiffs Kimberly Archie, and Jo Cornell to
28 | enroll their children in Defendant Pop Warner's local football programs.

102.   Moreover, Defendant Pop Warner advertises that its coaches underwent training to ensure the safety of the participants.  Upon information and belief, Defendant Pop Warner, however, did not in fact make sure that each coach underwent the training.  This lead to untrained coaches teaching participants bad tackling habits that, coupled with the faulty equipment provided by Defendant Pop Warner, drastically increased the risk of harm and future injury to the participants, including Plaintiffs and the Class Members.

103.   Defendants repeatedly confirm their respective duties to take reasonable and prudent actions to protect the health and safety of Pop Warner players, including Plaintiffs and the Class Members, when known and foreseeable risks exist.

104.   Moreover, Defendants reaffirm their respective duties by and through their respective websites and other public statements wherein they proclaim that the safety and protection of football participants are their highest priority.

105.   For example, Defendant Pop Warner's website states "[t]he mission of Pop Warner Little Scholars is to enable young people to benefit from participation in team sports and activities in a safe and structured environment[4]…[t]he safety of our athletes is always the top priority and that is why we provide extensive training for all our football…coaches."

106.   Defendants breached their duty to youth tackle football participants, including Plaintiffs and the Class Members, to use ordinary care to protect their physical and mental health, and to prevent them from being exposed to unreasonable risk of injury, and thereby increasing Plaintiffs and the Class Members' risk of harm and future injury.

107.   Throughout the many years that Defendants have repeatedly established their duty to protect the health and safety of youth tackle football participants, including Plaintiffs and the Class Members, when known and foreseeable risks exist, Defendants

---

[4] http://www.popwarner.com/about_us/mission.htm

THIRD AMENDED CLASS ACTION COMPLAINT

Pop Warner failed to create and implement league-wide guidelines concerning the treatment and monitoring of players who suffer a brain injury during a practice or a game.

108.   Moreover, Defendant Pop Warner failed to establish and/or adopt equipment standards that are designed and serve to protect minor children who participate in Defendant Pop Warner's youth tackle football program, including Plaintiffs and the Class Members. In fact, Defendant Pop Warner knew that its safety standards were inadequate for youth participants, but failed to update the standards for fear of civil liability.

109.   It has been well established since 1928 that repeated blows to the head can lead to brain trauma, including CTE, commonly known as "punch drunk syndrome." Punch Drunk Syndrome has been prevalent in boxers who have repeatedly suffered concussions.

110.   Despite the fact that other sporting associations have decades ago established standardized association-wide concussion management rules, Defendant Pop Warner has failed to establish any guidelines or policies to protect the mental health and safety of its minor players.

111.   Moreover, Defendants Pop Warner and DOES 1 through 100, and each of them, have failed to ensure that the safest equipment is used to protect minor participants, including Plaintiffs and the Class Members.

112.   An adult is required to exercise a greater degree of care towards children and anticipate their ordinary behavior. CACI 412. Furthermore, "A greater degree of care is generally owed to children because of their lack of capacity to appreciate risks and to avoid danger." *McDaniel v. Sunset Manor Co.* (1990) 220 Cal.App.3d 1, 7, citing *Casas v. Maulhardt Buick, Inc.* (1968) 258 Cal.App.2d 692, 697–700.

113.   Defendants' failures to fulfill their assumed duties to protect minor Pop Warner participants, including Plaintiffs and the Class Members, include, but is not limited to, the following failures:

**Defendant Pop Warner:**

    a.   Failure to regulate and monitor practices, games, rules, equipment, coaches and medical care so as not to increase the risks associated with repetitive unlimited sub-concussive hits suffered by Pop Warner participants, including Plaintiffs and the Class Members;

    b.   Failure to require that an adequate brain injury history be taken of Pop Warner participants;

    c.   Failure to ensure accurate diagnosis and recording of brain injury so the condition can be treated in an adequate and timely manner;

    d.   Failure to license and approve the best equipment available that will reduce, not increase, the risk of brain injury to minor children who participate in the Pop Warner youth tackle football program;

    e.   Failure to prevent the increased risk of injury to minor children through repetitive brain trauma coupled with the use of hard-shell helmets not adequately designed to protect children's unique features and vulnerabilities.

    f. Failure to develop equipment standards that are designed to protect minor children who participate in Defendant Pop Warner's youth tackle football program, including Plaintiffs and the Class Members;

    g.   Failure to inform parents that its equipment standards were not tested to ensure the safety of minor participants, including Plaintiffs and the Class Members.

114.   Defendants Pop Warner and DOES 1 through 100, and each of them, breached their assumed duties to protect the health and safety of youth tackle football participants, including Plaintiffs and the Class Members, by subjecting them to an increased risk of brain injury, damage or disease through the use of equipment, including hard shell helmets, that are inadequately designed to protect the physical and

1   mental health of minor children, including Plaintiffs and the Class Members.

2       115.   Moreover, Defendant Pop Warner breached its assumed duty to protect the

3   health and safety of youth tackle football participants, including Plaintiffs and the Class

4   Members, by failing to ensure that coaches are adequately trained and educated on the

5   risks to minors of developing brain injury, damage or disease.

6       116.   National organizations have a responsibility to enforce rules they

7   promulgate at the community level.

8       117.   Defendant advertises itself as a safety-first organization in which children

9   play for coaches trained in proper tackling technique.

10       118.   Upon information and belief, Jon Butler, executive director of Defendant

11   Pop Warner conceded in a deposition that the national office does not check whether

12   coaches in fact receive such training.

13       119.   Moreover, Jon Butler further conceded in a deposition that Pop Warner

14   does not employ personnel with a medical background, athletic training background, or

15   physical education background.

16       120.   Defendant Pop Warner failed to provide complete, current, and competent

17   information and directions to Pop Warner coaches and its participants, including

18   Plaintiffs and the Class Members, regarding brain injuries and its prevention,

19   symptoms, and treatment.

20       121.   If Defendants Pop Warner and Does 1 through 100, and each of them,

21   would have taken the necessary steps to oversee and protect Pop Warner participants,

22   including Plaintiffs and the Class Members, by (1) developing and implementing

23   necessary safety guidelines, policies, and procedures; (2) developing and adopting

24   reasonably safe youth tackle football helmet standards designed to protect the unique

25   features and vulnerabilities of minor children participants; (3) educating and training all

26   persons involved with the Pop Warner Teams, and confirming the completion of said

27   education and training, in the recognition, prevention, and treatment of brain injuries,

28   then Pop Warner participants, such as Plaintiffs and the Class Members, would not

THIRD AMENDED CLASS ACTION COMPLAINT

have suffered from repeated brain trauma or the effects of that condition, would have recovered more rapidly, or would not have suffered or become at risk of suffering from long-term brain damage, dementia, depression and CTE, as well as other long term brain injuries.

122.   Defendant Pop Warner increased the risk of harm to Plaintiffs and the putative class by, among other things, mandating the use of equipment that increased the risk of harm to minor participants.

123.   Under all of the above circumstances, it was foreseeable that Defendants' violations of their duties would cause or substantially contribute to the personal injuries suffered by Plaintiffs and the Class Members.

124.   The aforementioned acts and omissions of the Defendants demonstrate that each Defendant acted with callous indifference to the rights and duties owed to Plaintiffs, the Class Members and the public at large.

125.   Defendants acted willfully, wantonly, egregiously, with reckless abandon, and with a high degree of moral culpability.

126.   Defendants committed acts of omission and commission, which collectively and severally, constituted gross negligence. Defendants' gross negligence was a proximate and producing cause of the personal injuries, death and other damages suffered by Plaintiffs and the Class Members.

127.   As a direct and proximate result of Defendants' gross negligence, Plaintiffs and the Class Members have suffered economic losses, including, but not limited to, loss of income, brain injury, damage and disease, emotional distress, medical monitoring, and death.

128.   As a direct and proximate result of Defendants' gross negligence, Plaintiffs and the Class Members are entitled to damages, as alleged herein or allowed by law, from Defendants in an amount reasonably anticipated to exceed the jurisdictional minimum.

# VI.

## SECOND CAUSE OF ACTION

## INDIVIDUALLY AND ON BEHALF OF THE CLASS MEMBERS:

### FRAUD

### (As Against All Defendants and Does)

129.   Plaintiffs and the Class Members re-allege and incorporate by reference each of the preceding allegations in this complaint as though fully set forth at length herein.

130.   According to California Code of Civil Procedure §1709 "One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." C.C.P. §1710 further states "A deceit, within the meaning of the last section, is either:

    a.    The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;

    b.    The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true;

    c.    The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or,

    d.    A promise, made without any intention of performing it."

131.   Defendants Pop Warner and DOES 1 through 100, and each of them, made material misrepresentations to youth tackle football participants and the parents and/or guardians of said participants, including Plaintiffs and the Class Members, and the public at large regarding the safety of tackle football for minor children, the level of training and education received by the coaches of Pop Warner football and the adequacy of the equipment worn by Pop Warner participants.

132.   The material misrepresentations made by Defendant Pop Warner include,

but are not limited to, remarks that all Pop Warner coaches are provided extensive training to ensure the safety of the minor children who participate in the Pop Warner program.

133.   In particular, Defendant Pop Warner's website states, "[t]he safety of our athletes is <u>always the top priority</u> and that is why we provide extensive training for all our football and cheer & dance coaches." The website goes on to state "[w]e have over 40,000 volunteers and coaches that are being trained every year to offer the best and safest programs for you and your children."

134.   In fact, the national Pop Warner office does not check whether coaches in fact receive such training.

135.   Moreover, Defendant Pop Warner misrepresented the safety of the equipment used by Pop Warner participants. For example, Defendant Pop Warner's executive director wrote, "[a]t Pop Warner, safety is our number one priority when it comes to our young athletes. We emphasize teaching proper techniques, ***using the right equipment*** and making sure our members are educated about all potential injuries."[5] (emphasis added).

136.   In reality, Defendant Pop Warner mandates the use of NOCSAE certified equipment which does not include a youth specific safety standard, and actually increases the risk of harm to youth participants. Defendant Pop Warner requires the use of NOCSAE certified equipment, including hard-shell helmets, despite the fact that said standards do not account for the unique features and vulnerabilities of minor children when it comes to concussion and head and brain injury prevention.

137.   NOCSAE's standards are misleading because NOCSAE does not maintain youth specific helmet safety standards.

138.   Defendant Pop Warner mandates the use of NOCSAE's tackle football helmet standards which fail to independently acknowledge the distinct behavioral and

---

[5] http://www.popwarner.com/fan_zone/executivedir_blog.htm

Case No. 2:16-cv-6603

anatomical differences between youth tackle football participants and adults. Defendant Pop Warner mandates the use of NOCSAE's logo with the knowledge that the standards are misleading and will lead to injury for minor children. Moreover, for years, Defendant Pop Warner knew that the standards that they mandated were outdated, but failed to update the standards.

139.  Defendant knew that the material misrepresentations described above were false when they were made.

140.  The persons who made the misrepresentations as agents of Defendant Pop Warner, and DOES 1-100, and Defendant intended to defraud, among others, Plaintiffs and the Class Members, in order to encourage their participation in youth tackle football programs, including, but not limited to, Pop Warner Little Scholars.

141.  Plaintiffs and the Class Members, among others, justifiably relied on Defendant Pop Warner and DOES 1 through 100 misrepresentations to their detriment.

142.  Defendants Pop Warner and DOES 1 through 100 knew that Plaintiffs and the Class Members would rely on their respective misrepresentations.

143.  Plaintiffs and the Class Members, among others, were damaged by these misrepresentations.

144.  As a direct and proximate result of Defendants" fraudulent conduct, Plaintiffs and the Class Members suffered economic losses, including, but not limited to, loss of income, brain injury, damage and disease, emotional distress, medical monitoring, and death.

145.  As a direct and proximate result of Defendants' fraudulent conduct, Plaintiffs and the Class Members are entitled to damages, as alleged herein or allowed by law, from Defendants in an amount reasonably anticipated to exceed the jurisdictional minimum.

/ / /

/ / /

/ / /

# VII.

## THIRD CAUSE OF ACTION

## INDIVIDUALLY AND ON BEHALF OF THE CLASS MEMBERS:

### FRAUDULENT CONCEALMENT

### (As Against All Defendants and Does)

146.  Plaintiffs and the Class Members re-allege and incorporate by reference each of the preceding allegations in this complaint as though fully set forth at length herein.

147.  According to C.C.P. §1709 "One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." C.C.P. §1710 further states "A deceit, within the meaning of the last section, is either:

    a.    The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;

    b.    The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true;

    c.    The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or,

    d.    A promise, made without any intention of performing it."

148.  Defendants Pop Warner and DOES 1 through 100, and each of them, concealed from Plaintiffs and the Class Members the risks and health consequences of minors who sustain repetitive unlimited sub-concussive hits and brain injuries, and intentionally misrepresented to Plaintiffs and the Class Members that tackle football with hard-shell helmets is safe for minor children. Moreover, Defendants fraudulently concealed the fact that NOCSAE does not maintain equipment standards for youth tackle football participants. Instead, Defendants Pop Warner and DOES 1 through 100 misrepresented that (1) the NOCSAE standards were sufficient to protect minor tackle

football participants and (2) Pop Warner helmets meet NOCSAE's standards without disclosing that NOCSAE does not maintain equipment safety standards specific to youth participants.

149. Defendants Pop Warner and DOES 1 through 100 have mandated the use of NOCSAE helmet standard labels with the knowledge that they are misleading and will lead to brain injury for minor children.

150. Defendant Pop Warner also misrepresented the level of training and education received by Pop Warner coaches so as to instill a false sense of security in Plaintiffs and the Class Members, including the parents and/or guardians of the Pop Warner participants, regarding the safety of youth tackle football.

151. Defendant Pop Warner, through misleading advertisements, public statements and published articles misrepresented the level of risk associated with youth tackle football and concealed the lack of adequate safety standards for youth football equipment.

152. Defendants Pop Warner's advertisements have clearly created parent and player reliance.

153. Defendant Pop Warner stated that:

> We have over 40,000 volunteers and coaches that are being trained every year to offer the best and safest programs for you and your children…The safety of our athletes is <u>always the top priority</u> and that is why we provide extensive training for all our football and cheer & dance coaches.

154. Defendants Pop Warner and DOES 1 through 100, and each of them, also misrepresented that youth tackle football helmets meet NOCSAE standards and are therefore safe. However, Defendants Pop Warner and DOES 1 through 100, and each of them, intentionally omit that NOCSAE does not maintain youth specific safety standards for youth equipment.

155. Defendants willfully concealed their omissions and false representations

from Plaintiffs and the Class Members in order to prevent negative publicity and induce Plaintiffs and the Class Members to participate in the Pop Warner program.

156.   Defendants Pop Warner and DOES 1 through 100, and each of them, knew that Plaintiffs and the Class Members would rely on the inaccurate information they provided.

157.   Plaintiffs and the Class Members relied on this inaccurate information during their enrollment in Defendant Pop Warner's programs.

158.   Plaintiffs and the Class Members had no way of knowing that Defendants representations were false and dangerously misleading.

159.   As a direct and proximate result of Defendants' fraudulent conduct, Plaintiffs and the Class Members have suffered economic losses, including, but not limited to, loss of income, brain injury, damage and disease, emotional distress, medical monitoring, and death.

160.   As a direct and proximate result of Defendants' fraudulent conduct, Plaintiffs and the Class Members are entitled to damages from Defendants in an amount reasonably anticipated to exceed the jurisdictional minimum.

## VIII.

### FOURTH CAUSE OF ACTION

### INDIVIDUALLY AND ON BEHALF OF THE CLASS MEMBERS:

### NEGLIGENT MISREPRESENTATION

### (As Against All Defendants and Does)

161.   Plaintiffs and the Class Members re-allege and incorporate by reference each of the preceding allegations in this complaint as though fully set forth at length herein.

162.   Defendant Pop Warner made multiple material misrepresentations to youth tackle football participants and the parents and/or guardians of said participants, including Plaintiffs and the Class Members, and the public at large through public statements, published articles and advertisements which it knew or should have known

were misleading. These material misrepresentations involve: (1) the safety of tackle football for minor children; (2) the safety of their age of entry; (3) the level of training and education received by the coaches of Pop Warner football; and (4) the adequacy of the equipment worn by Pop Warner participants.

163.   The material misrepresentations made by Defendant Pop Warner include but are not limited to remarks that all Pop Warner coaches are provided extensive training to ensure the safety of the minor children who participate in the Pop Warner program.

164.   In particular, Defendant Pop Warner's website states, "[t]he safety of our athletes is always the top priority and that is why we provide extensive training for all our football and cheer & dance coaches." The website goes on to state "[w]e have over 40,000 volunteers and coaches that are being trained every year to offer the best and safest programs for you and your children."

165.   In fact, the national Pop Warner office does not check whether coaches in fact receive such training.

166.   Moreover, Defendant Pop Warner misrepresented the safety of the equipment used by Pop Warner participants. For example, Defendant Pop Warner's executive director wrote, "[a]t Pop Warner, safety is our number one priority when it comes to our young athletes. We emphasize teaching proper techniques, *using the right equipment* and making sure our members are educated about all potential injuries." (emphasis added).

167.   In reality, Defendant Pop Warner mandates the use of NOCSAE certified equipment which does not include a youth specific safety standard. Defendant Pop Warner requires the use of NOCSAE certified equipment, including hard-shell helmets, despite the fact that said standards do not account for the unique features and vulnerabilities of minor children when it comes to concussion and brain injury prevention.

168.   Upon information and belief, NOCSAE's standards actually increase the

1  risk of harm to youth participants.

2  169.   NOCSAE's standards are misleading because NOCSAE does not maintain
3  youth specific helmet safety standards.

4  170.   NOCSAE establishes tackle football helmet standards which fail to
5  independently acknowledge the distinct behavioral and anatomical differences between
6  youth tackle football participants and adults. Defendant Pop Warner mandates the use
7  of helmets bearing the NOCSAE standard for all of its youth tackle football programs
8  with the knowledge that said standards are misleading and will lead to injury for minor
9  children.

10  171.   Defendants Pop Warner and DOES 1 through 100, and each of them, made
11  these misrepresentations and actively concealed adverse information at a time when
12  they knew, or should have known, because of their superior position of knowledge, that
13  the statements and representations were not true.

14  172.   Defendants Pop Warner and DOES 1 through 100, and each of them, knew
15  or should have known of the misleading nature of these statements when they were
16  made.

17  173.   Although Defendants Pop Warner and DOES 1 through 100, and each of
18  them, may have honestly believed that their representations were true, they had no
19  reasonable grounds for believing that the representations were true when they made
20  them.

21  174.   Plaintiffs and the Class Members, among others, reasonably relied on
22  Defendants Pop Warner's and DOES' 1 through 100 misrepresentations to their
23  detriment when deciding whether to participate and/or enroll their children in the Pop
24  Warner tackle football programs.

25  175.   Defendants Pop Warner, and DOES 1 through 100, knew, or should have
26  known, that Plaintiffs and the Class Members would rely on Defendants'
27  misrepresentations.

28  176.   Defendants Pop Warner and DOES 1 through 100, made

Case No. 2:16-cv-6603
THIRD AMENDED CLASS ACTION COMPLAINT

1   misrepresentations and actively concealed information with the intention that Plaintiffs

2   and the Class Members would rely on the misrepresentations or omissions in selecting

3   their course of action.

4        177.   Plaintiffs and the Class Members, among others, were damaged by these

5   misrepresentations.

6        178.   As   a   direct   and   proximate   result   of   Defendants   negligent

7   misrepresentations, Plaintiffs and the Class Members have suffered economic losses,

8   including, but not limited to, loss of income, brain injury, damage and disease,

9   emotional distress, medical monitoring, and death.

10        179.   As a result of the negligent acts and omission of Defendants, Plaintiffs and

11   the Class Members are entitled to damages, as alleged herein or allowed by law, from

12   Defendants in an amount reasonably anticipated to exceed the jurisdictional minimum.

13                                    **IX.**

14                          <u>**FIFTH CAUSE OF ACTION**</u>

15                            **WRONGFUL DEATH**

16                   **(As Against All Defendants and Does)**

17        180.   Wrongful Death Plaintiffs and the Class Members hereby incorporate by

18   reference each and every allegation contained in the foregoing paragraphs, as though

19   each was fully set forth at length herein.

20        181.   As a direct and proximate result of Defendants' wrongful and deceptive

21   conduct, as described herein, and the nature of Decedents' injuries, Wrongful Death

22   Plaintiffs and the Class Members did not and could not have discovered that

23   Defendants Pop Warner and Does 1 through 100, were the cause of each Decedent's

24   death, within two years of the filing of this complaint, and within the parameters set

25   forth in Code of Civil Procedure § 340.8. Wrongful Death Plaintiff, Jo Cornell, as

26   survivor and mother of Tyler Cornell, did not, and could not, discover that Tyler

27   suffered from CTE until January 16, 2015 when a posthumous test revealed his

28   diagnosis.  Plaintiff Jo Cornell could not have discovered Decedent Tyler Cornell's

CTE diagnosis before January 16, 2015 because Decedent Tyler Cornell's CTE was discovered after a thorough study, by Boston University, of Tyler Cornell's brain after he passed away.  Plaintiff Jo Cornell received the results of the study on January 16, 2015.  Plaintiff Jo Cornell could not have received the diagnosis during Tyler's life because CTE is diagnosed postmortem.

182.   Wrongful Death Plaintiff, Kimberly Archie could not have discovered that her son, Paul Bright Jr. suffered from CTE before April 9, 2015 because Paul's CTE was discovered after a thorough study, by Boston University, of Paul's brain after he passed away. Plaintiff Kimberly Archie received the results of the study on or around April 9, 2015.  Plaintiff Kimberly Archie could not have received the diagnosis during Paul's life because CTE is diagnosed postmortem.

183.   As a further direct and proximate result of the Decedents' death, the Wrongful Death Plaintiffs and the Class Members have been permanently deprived of the Decedents' love, care, companionship, comfort, services, society, solace, contributions, financial support, physical assistance, affection and moral support, all to their damage in an amount in excess of the minimum subject matter jurisdiction of this court, and according to proof.

184.   By reason of the conduct of the Defendants, and each of them, the Wrongful Death Plaintiffs and the Class Members have incurred funeral and burial expenses in such an amount as will be proven at the time of trial. The Wrongful Death Plaintiffs and the Class Members have lost the use of interest on money owed from the date of this incident until judgment as follows: on funeral and burial expenses; on loss of support; on the pecuniary value of the loss of love, care, companionship, comfort, services, society, solace and moral support.

/ / /

/ / /

/ / /

/ / /

# X.

## SIXTH CAUSE OF ACTION

### INDIVIDUALLY AND ON BEHALF OF THE CLASS MEMBERS:

### VIOLATION OF BUSINESS & PROFESSIONS CODE § 17200 et seq.;

### DECEPTIVE BUSINESS PRACTICES

#### (As Against All Defendants and Does)

185.   Plaintiffs and the Class Members re-allege and incorporate by reference each of the preceding allegations in this complaint as though fully set forth at length herein.

186.   California Business and Professions Code 17200 includes any "unlawful, unfair, or fraudulent business act or practice." A business act is "unfair" when it offends an established public policy or when the practice is immoral, unethical, oppressive unscrupulous or substantially injurious to consumers." *Community Assisting Recovery, Inc. v. Aegis, Security Ins. Co.* 92 Cal App 4th 886, 894, (2001)

187.   The conduct of Defendants Pop Warner and DOES 1 through 100, and each of them, with respect to the systematic marketing and deception of Pop Warner participants, both minor children and their parents and/or guardians, including Plaintiffs and the Class Members, as more particularly described above is an unlawful or deceptive business practice within the meaning of California Business and Professions Code § 17200 et seq.. Defendants' unlawful practices include Defendants misrepresentations through advertising regarding player safety, its concern for player safety, and equipment branding that creates a false sense of security for both minor children and their parents and/or guardians. These statements and misrepresentations regarding the safety of Pop Warner and its equipment were made despite Defendants' knowledge of the inadequacy of the equipment and lack of safety precautions for children increased the risk of harm for minor children.

188.   Plaintiffs and the Adult Class Members were required to incur expenses to enroll their children in Defendant's youth tackle football program. Plaintiffs and the

Adult Class members paid Pop Warner Little Scholars' registration fees and other related fees and expenses in order to enroll their children in the program.  Plaintiffs and the Adult Class Members also paid for travel expenses and accommodations for post season participation, including, but not limited to, Regionals and the Pop Warner Super Bowl.

189.   Plaintiffs and the Adult Class Members were induced to enroll their children in the Pop Warner Little Scholars football program as a result of Defendant Pop Warner's unlawful, unfair and fraudulent business acts or practices.

190.   If not for Defendant's unfair, unlawful and fraudulent business acts or practices, Plaintiffs and the Adult Class Members would not have enrolled their children in Defendant's Pop Warner Little Scholars youth tackle football program and would not have incurred their economic loss.  Plaintiffs, on behalf of themselves, the Class Members, and the general public, seek an order requiring Defendants Pop Warner, and DOES 1 through 100, and each of them, to immediately cease such acts of unlawful, unfair and fraudulent business acts and practices and enjoining Defendants from continuing to violate Business & Professions Code § 17200 et seq.  Plaintiffs and the Class Members additionally request an order requiring Defendants to engage in a corrective advertising campaign.

191.   As a direct and proximate result of Defendants' unlawful, unfair and fraudulent business acts and practices, Plaintiffs and the Adult Class Members have suffered pecuniary losses, including but not limited to, losses for registration fees and related expenses incurred to enroll their minor children in Defendant's Pop Warner youth tackle football program as well as travel expenses and accommodations for post season participation, including, but not limited to, Regionals and the Pop Warner Super Bowl.

192.   Plaintiffs request an order requiring Defendants to make restitution to Plaintiffs and to the Adult Class Members of all monies wrongfully acquired by Defendants by means of their violations of Business & Professions Code § 17200 et

seq. In addition, Plaintiffs and the Adult Class Members seek an order requiring Defendants Pop Warner, and DOES 1 through 100, to immediately cease such acts of unlawful, unfair and fraudulent business acts and practices.  Plaintiffs and the Class Members additionally request an order requiring Defendants to engage in a corrective advertising campaign.

193.   Plaintiffs and the Class Members additionally request an order requiring PWLS to engage in a corrective action as to these unlawful, unfair, or fraudulent business acts or practices.  Plaintiffs also request an order requiring PWLS to make restitution to Plaintiffs and to the Class Members of all monies wrongfully acquired by PWLS by means of their violations of Business & Professions Code §17200 et seq. "The court may impose liability and civil penalties without individualized proof of reliance, deception and injury if it is convinced that such a remedy is necessary to deter this unfair practice". *People v Toomey* 157 Cal. App. 3d 1, 16, 23 (1984)

## XI.

### SEVENTH CAUSE OF ACTION

### INDIVIDUALLY AND ON BEHALF OF THE CLASS MEMBERS:

### VIOLATION OF BUSINESS & PROFESSIONS CODE

### SECTION 17500 et seq.

### (As Against All Defendants and Does)

194.   Plaintiffs and the Class Members re-allege and incorporate by reference each of the preceding allegations in this complaint as though fully set forth at length herein.

195.   Business & Professions Code § 17500 prohibits unfair, deceptive, untrue and misleading advertising.

196.   Defendant Pop Warner's and DOES 1 through 100, and each of them, use of various forms of media to advertise, call attention to, or give validity to the sale of services, which are not as represented in their advertising constitutes unfair, deceptive, untrue and/or misleading advertising within the meaning of Business & Professions

Code § 17500 et seq. Defendants' advertising conduct, including their misrepresentations and concealment of the true facts alleged above is likely to have deceived and continue to deceive Plaintiffs and the Class Members and the public at large. Defendants reasonably should know and should have known that such advertisements were unfair, deceptive, untrue and/or misleading. The misrepresentations and non-disclosures by Defendants of material facts detailed above constitute unfair, deceptive, untrue and misleading advertising and constitute a violation of Business & Professions Code § 17500, et seq.

197. Plaintiffs and the Adult Class Members were required to incur expenses to enroll their children in Defendant's youth tackle football program. Plaintiffs and the Adult Class members paid Pop Warner Little Scholars' registration fees and other related fees and expenses in order to enroll their children in the program. Plaintiffs and the Adult Class Members also paid for travel expenses and accommodations for post season participation, including, but not limited to, Regionals and the Pop Warner Super Bowl.

198. Plaintiffs and the Adult Class Members were induced to enroll their children in the Pop Warner Little Scholars football program as a result of Defendant Pop Warner's unfair, deceptive, untrue and misleading advertisements. If not for Defendant's unfair, deceptive, untrue and misleading advertisements, Plaintiffs and the Adult Class Members would not have enrolled their children in Defendant's Pop Warner Little Scholars youth tackle football program.

199. In enrolling their children in the Pop Warner Little Scholars football programs, Plaintiffs and the Adult class relied on Defendant Pop Warner's unfair, deceptive, untrue, and misleading advertising. The unfair, deceptive, untrue, and misleading advertising included Defendant Pop Warner's representations of its concern for player safety, and the safety of the equipment provided by Defendant Pop Warner to the youth participants.

200. Defendant Pop Warner knew the disseminated statements about its football

1  program were untrue and were likely to mislead Plaintiffs, the Adult class, and the

2  public.

3      201.   As a direct and proximate result of Defendants' unfair, deceptive, untrue

4  and misleading advertisements, Plaintiffs and the Adult Class Members have suffered

5  pecuniary losses, including, but not limited to, losses for registration fees and related

6  expenses incurred to enroll their minor children in Defendant's Pop Warner youth

7  tackle football program as well as travel expenses and accommodations for post season

8  participation, including, but not limited to, Regionals and the Pop Warner Super Bowl.

9      202.   Plaintiffs and the Adult Class Members request an order requiring

10  Defendants to make restitution to Plaintiffs and the Class Members of all monies

11  wrongfully acquired by Defendants by means of their violations of Business &

12  Professions Code § 17500 et seq., as provided under § 17535 et seq. .  Pursuant to

13  Business & Professions Code § 17535 et seq. Plaintiffs, on behalf of themselves, the

14  Class Members, and the general public, also seek an order requiring Defendants to

15  immediately cease such acts of deceptive and misleading advertising, including that

16  youth tackle football is safe for minor children, all coaches are adequately trained to

17  offer the best and safest programs for youth participants and that equipment meets

18  NOCSAE regulatory standards, and enjoining Defendants from continuing to violate

19  Business & Professions Code § 17500 et seq.

20                                    **XII.**

21                          **PRAYER FOR RELIEF**

22      WHEREFORE, Plaintiffs, individually and on behalf of the Class Members

23  respectfully request that the Court enter judgment in their favor and against Defendants,

24  as follows:

25      A.    Certification of the proposed Classes; including appointment of Plaintiff's

26  as Class Counsel;

27      B.    An order temporarily and permanently enjoining Defendants from

28  continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in

1  this Complaint;

2       C.      For future medical monitoring costs, according to proof;

3       D.      An order requiring Defendant Pop Warner to provide warning labels on all

4  helmets including disclosure of the increased risk of exposure to brain injury, damage

5  and disease, including  CTE and other neurological damage and disease;

6       E.      Costs, restitution, damages, including punitive damages, and disgorgement

7  in an amount to be determined at trial;

8       F.      An order requiring Defendants to pay both pre- and post-judgment interest

9  on any amounts awarded;

10      G.      An award of costs and attorneys' fees; and;

11      H.      Any other relief the Court may deem appropriate.

12

13  DATED:  November 20, 2017         GIRARDI | KEESE

14

15

16                                    By:      /s/ Robert W. Finnerty

17                                          ROBERT W. FINNERTY
                                          Attorneys for Plaintiffs

18

19

20

21

22

23

24

25

26

27

28