1  **LEWIS BRISBOIS BISGAARD & SMITH LLP**
   DANA ALDEN FOX, SB# 119761
2      E-Mail: Dana.Fox@lewisbrisbois.com
   HELLAR-ANN HANCOCK, SB# 117075
3      E-Mail: Hellar-Ann.Hancock@lewisbrisbois.com
   LAURA A. FREE, SB# 311453
4      E-Mail: Laura.Free@lewisbrisbois.com
   633 West 5th Street, Suite 4000
5  Los Angeles, California 90071
   Telephone: 213.250.1800
6  Facsimile: 213.250.7900

7  Attorneys for Defendant, POP WARNER
   LITTLE SCHOLARS, INC., a nonprofit
8  corporation

9

10                  UNITED STATES DISTRICT COURT

11       CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

12

13  KIMBERLY ARCHIE, as survivor of          CASE NO. 2:16-CV-06603-PSG-PLA
    decedent Paul Bright Jr., JO
14  CORNELL, as survivor of decedent         **DEFENDANT POP WARNER**
    Tyler Cornell, on behalf of themselves   **LITTLE SCHOLARS, INC.'S**
15  and all others similarly situated,       **MOTION IN LIMNE NO. 3 TO**
                                             **EXCLUDE TESTIMONY BY**
16            Plaintiffs,                     **PLAINTIFFS TO FACTS**
                                             **SUPPORTING THEIR**
17       vs.                                  **ALLEGATIONS BECAUSE SUCH**
                                             **FACTS WERE WITHHELD BASED**
18  POP WARNER LITTLE SCHOLARS,              **ON ATTORNEY-CLIENT**
    INC., a nonprofit corporation;           **PRIVILEGE AND/OR ATTORNEY**
19  NATIONAL OPERATING                       **WORK-PRODUCT PRIVILEGE;**
    COMMITTEE ON STANDARDS                    **DECLARATION OF HELLAR-ANN**
20  ATHLETIC EQUIPMENT, a nonprofit          **HANCOCK**
    organization; USA FOOTBALL, a
21  foreign nonprofit corporation, and       *[Filed concurrently with [Proposed]*
    DOES 1-100,                              *Order]*
22
              Defendants.                    The Hon. Judge Philip S. Gutierrez
23
                                             Pretrial Conf.: January 6, 2020
24                                           Trial Date:     January 14. 2020

25  ///

26  ///

27  ///
    4814-7226-7949.1
28  ────────────────────────────────────────────────────────

1    TO THIS HONORABLE COURT, ALL PARTIES HEREIN AND THEIR

2  COUNSEL OF RECORD:

3    PLEASE TAKE NOTICE that on January 14, 2020, at 9:00 a.m., in

4  Courtroom 6A located at 350 West 1st Street, Los Angeles, California 90012,

5  Defendant POP WARNER LITTLE SCHOLARS ("Defendant") will move the

6  Court, *in limine*, for an order excluding any testimony by Jo Cornell or Kimberly

7  Archie ("Plaintiffs") setting forth facts supporting certain of their allegations in their

8  Third Amended Complaint on the grounds they refused to testify to same during

9  discovery on the grounds of attorney-client and/or work product privilege.

10    During Plaintiffs' depositions, their counsel consistently instructed them not

11  to answer any questions about fact supporting certain allegations in their Third

12  Amended Complaint on grounds of privilege.  Therefore, it would be manifestly

13  unfair to allow Plaintiffs to testify to any of those facts at the time of trial.

14    This motion *in limine* is based upon this Notice, the Memorandum of Points

15  and Authorities, and Declaration of Hellar-Ann Hancock filed concurrently

16  herewith, and such further argument as the Court may permit to be introduced at the

17  hearing on said motion.

18

19  DATED: November ㌷, 2019       LEWIS BRISBOIS BISGAARD & SMITH LLP

20

21

22                               By:    */s/ Hellar-Ann Hancock*
                                        Hellar-Ann Hancock
23                                      Attorneys for Defendant, POP WARNER
                                        LITTLE SCHOLARS, INC., a nonprofit
24                                      corporation
25

26

27  4814-7226-7949.1                              2

28  DEFENDANT POP WARNER LITTLE SCHOLARS, INC.'S MOTION IN LIMNE NO. 3 TO EXCLUDE
    TESTIMONY BY PLAINTIFFS TO FACTS SUPPORTING THEIR ALLEGATIONS BECAUSE SUCH FACTS
    WERE WITHHELD BASED ON ATTORNEY-CLIENT PRIVILEGE AND/OR ATTORNEY WORK-PRODUCT
                                       PRIVILEGE

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..........................................................................1

    A.   The Deposition of Plaintiff Jo Cornell, March 22, 2019........................1

    B.   The Deposition of Kimberly Archie, June 21, 2019 ........................... 12

II.   LEGAL ARGUMENT...................................................................... 13

    A.   Motion in *Limine* Authority .................................................. 13

    B.   Evidence Should Be Excluded Where It Was Withheld Based On Attorney-Client Privilege During Discovery ........................................ 14

III.  CONCLUSION................................................................................ 15

DEFENDANT POP WARNER LITTLE SCHOLARS, INC.'S MOTION IN LIMNE NO. 3 TO EXCLUDE TESTIMONY BY PLAINTIFFS TO FACTS SUPPORTING THEIR ALLEGATIONS BECAUSE SUCH FACTS WERE WITHHELD BASED ON ATTORNEY-CLIENT PRIVILEGE AND/OR ATTORNEY WORK-PRODUCT PRIVILEGE

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

## Federal Court Cases

*Bladeroom Grp., Ltd. v. Emerson Elec. Co.*
(N.D.Cal. Apr. 26, 2018, No. 5:15-cv-01370-EJD) 2018
U.S.Dist.LEXIS 71306 ............................................................... 14

*Kaiser Found. Health Plan, Inc. v. Abbott Labs., Inc.*
(9th Cir. 2009) 552 F.3d 1033 .................................................... 15

## State Court Cases

*Chronicle Pub. Co. v. Super. Ct.*
(1960) 54 Cal. 2d 548 ............................................................... 14

*Deyo v. Kilbourne*
(1978) 84 Cal. App. 3d 771 ...................................................... 14

*Dwyer v. Crocker National Bank*
(1987) 194 Cal. App. 3d 1418 .................................................. 15

*Greyhound Corp. v. Super. Ct.*
(1961) 56 Cal. 2d 355 ............................................................... 14

*In re Marriage of Hoffmeister*
(1984) 161 Cal. App. 3d 1163 .................................................. 14

*Kelly v. New West Federal Savings*
(1996) 49 Cal. App. 4th 659 ................................................ 13, 14

*People v. Waidla*
(2000) 22 Cal. 4th 690 .............................................................. 15

## State Statutory Authorities

Code Civ. Proc., § 2023.030(c).................................................. 14

Code Civ. Proc., § 2030.010(d)-(h) .......................................... 14

DEFENDANT POP WARNER LITTLE SCHOLARS, INC.'S MOTION IN LIMNE NO. 3 TO EXCLUDE
TESTIMONY BY PLAINTIFFS TO FACTS SUPPORTING THEIR ALLEGATIONS BECAUSE SUCH FACTS
WERE WITHHELD BASED ON ATTORNEY-CLIENT PRIVILEGE AND/OR ATTORNEY WORK-PRODUCT
PRIVILEGE

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

This action arises as a result of the death of the sons of Plaintiffs, KIMBERLY ARCHIE and JO CORNELL in 2014 as a result of a fatal motorcycle accident and a suicide by gunshot to the head. Plaintiffs claim this reckless and erratic behavior of their sons, which ultimately lead to their deaths, was a product of their Chronic Traumatic Encephalopathy ("CTE") contracted during the time they participated in Pop Warner Little Scholars Football from 1997 to 2004.

Plaintiffs filed their initial Complaint on September 1, 2016 against Pop Warner Little Scholars. On November 20, 2017, plaintiffs filed a Third Amended Complaint on behalf of themselves and an as yet uncertified Class. On July 26, 2019, plaintiffs moved to certify a class, which the Court denied on September 11, 2019.

The Third Amended Complaint, which is the operative Complaint, contains a host of conclusory allegations against Pop Warner including that Pop Warner failed to put safety first and used insufficient and substandard equipment.

At the deposition of both plaintiffs, they were asked about the factual basis for these conclusory allegations and were either instructed not to answer based on privilege or chose not to answer based on privilege.

### A.  The Deposition of Plaintiff Jo Cornell, March 22, 2019

The deposition of Plaintiff, Jo Cornell, went forward on March 22, 2019 at which time Ms. Cornell testified as follows:

Q: When is the next time your son was hospitalized?

A: I don't know.

Q: Do you recall the circumstances?

A: No. ..

A: Tyler would exhibit behavior that needed attention and that needed

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1 | medical care.

2 | Q: What kind of behavior?

3 | A: Irrational, unorganized thinking, depression, anxiety. Just overall sadness
4 | and despair.

5 | Q: And did you ever learn what he had sadness and despair about?

6 | MR. MORY: Object to form. Lacks foundation.

7 | A: I would come to understand—I mean I don't know specifically, to answer
8 | that question.

9 | Q:" But you have an understanding or a belief. What do you believe his
10 | depression and anxiety was associated with?

11 | MR. MORY: Object to form. Calls for expert testimony.

12 | A: I'm not an expert. I can't say.

13 | MR. CORLETTO:

14 | Q: He's your son. You raised him. You lived with him for a substantial
15 | period of time You cared for him. What do you believe his depression and aixiety
16 | was caused by?....

17 | A:" I have come to believe, based on the University of Boston's report, that
18 | Tyler suffered and obtained chronic traumatic encephalopathy as a result of playing
19 | tackle football in Pop Warner Little Scholars program.

20 | Q: And you think that's responsible for all of the behaviors that you told us
21 | about today?

22 | MR. MORY: Same objections. You can answer

23 | A: I believe that it impacted Tyler's behavior. ...

24 | Q     The question is you believe -- do you believe that what you just
25 | described, that you learned from Boston University, is responsible for Tyler's
26 | depression and anxiety?

27 | A     Yes.

4814-7226-7949.1

28 |

2

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    MR. MORY: Object to form.

2    BY MR. CORLETO:

3    Q    And do you believe that what you learned from Boston University is

4  what caused Tyler to shoot himself?

5    MR. MORY: Object to form.

6    You can answer.

7    THE WITNESS: Yes.

8    BY MR. CORLETO:

9    Q    When did you come to that belief?

10    A    January 15, 2016.

11    Q    And is that why you brought this lawsuit?

12    MR. MORY: Object to form.

13    Don't reveal privileged communication with your attorneys.

14    MR. CORLETO: I'm not asking her to do that.

15    MR. MORY: I'm just advising her. Don't reveal privileged communications

16  with your attorneys.

17    THE WITNESS: It's privileged.

18    Q    The question is the belief you just described to us, is that why you

19  brought this lawsuit?

20    MR. MORY: Again, don't reveal privileged communications as to why you

21  brought this lawsuit or any communications you had with your attorneys, if that's

22  what it's based on. That's why I'm advising you not to.

23    THE WITNESS: Right.

24    MR. CORLETO: Counsel, your objection is improper. I'm using -- the

25  question is based on her testimony and calls for a yes or a no. It's that simple.

26    MR. MORY: All I said was don't reveal privileged communications. That's

27  my objection.

4814-7226-7949.1

28

3

DEFENDANT POP WARNER LITTLE SCHOLARS, INC.'S MOTION IN LIMNE NO. 3 TO EXCLUDE
TESTIMONY BY PLAINTIFFS TO FACTS SUPPORTING THEIR ALLEGATIONS BECAUSE SUCH FACTS
WERE WITHHELD BASED ON ATTORNEY-CLIENT PRIVILEGE AND/OR ATTORNEY WORK-PRODUCT
PRIVILEGE

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1     MR. CORLETO: That's fine. And just for clarity, would you read the question

2 back to the witness. You'll have to go back a few, at this point.

3     THE WITNESS: Based on privilege.

4     BY MR. CORLETO:

5     Q    So you can't say why you brought this lawsuit?

6     A    Under discussions with my attorney.

7     Q    What do you hope to get out of bringing this lawsuit?

8     MR. MORY: Don't reveal privileged communications.

9     THE WITNESS: It's privileged.

10     BY MR. CORLETO:

11     Q    So you can't say what you hope to get out of bringing this lawsuit?

12     MR. MORY: Because it's privileged, you can just say that.

13     THE WITNESS: Privileged.

14     BY MR. CORLETO:

15     Q    Well, you sued Pop Warner. You need to tell Pop Warner what you

16 want out of this lawsuit.

17     MR. MORY: No, you don't. Their attorneys will be talking about that. So if it

18 came from your attorneys, don't reveal it. It is privileged.

19     BY MR. CORLETO:

20     Q    I'm not asking for what your attorneys told you. I'm asking what you

21 expect to get out of that lawsuit.

22     MR. MORY: If that information came to you from your attorneys and no

23 other source, don't reveal it. It is privileged.

24     THE WITNESS: It is privileged.

25     Q    Is it your claim that Pop Warner failed to provide for your son's safety

26 and health?

27     MR. MORY: Object to form. Calls for a legal conclusion. Calls for expert

4814-7226-7949.1

4

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

DEFENDANT POP WARNER LITTLE SCHOLARS, INC.'S MOTION IN LIMNE NO. 3 TO EXCLUDE
TESTIMONY BY PLAINTIFFS TO FACTS SUPPORTING THEIR ALLEGATIONS BECAUSE SUCH FACTS
WERE WITHHELD BASED ON ATTORNEY-CLIENT PRIVILEGE AND/OR ATTORNEY WORK-PRODUCT
PRIVILEGE

1 testimony.

2      THE WITNESS: I don't know.

3      BY MR. CORLETO:

4      Q      You don't know? It states that in your complaint. Do you understand

5 that? If you want to see a copy, we can mark it and give it to you.

6      MR. MORY: So what is the pending question?

7      MR. CORLETO: Would you read the question back.

8      MR. CORLETO: Back up.

9      MR. MORY: No. She already answered that one. The pending one.

10      THE REPORTER: There was the object to form. There was, I don't know. He

11 said, you don't know?

12      MR. MORY: Okay. Answer it again.

13      THE WITNESS: I don't know.

14      BY MR. CORLETO:

15      Q      Are you aware that your complaint states that?

16      MR. MORY: Don't reveal privileged communications.

17      THE WITNESS: Privileged.

18      Q      Ms. Cornell, we've placed before you a document that's been marked as

19 Exhibit D. I'll represent to you that it's the third amended complaint that your

20 attorneys have filed in this action. You'll see that it bears the court's stamp at the top.

21 You're free to take a look at that at any point in time. I'm going to ask you a few

22 questions that relate to this, so you may want to do that.

23      A      Okay.

24      Q      Turning your attention to paragraph number 6, which appears on page

25 4. Do you see what it says in paragraph 6?

26      A      Uh-huh. Yes.

27      Q      Is it your belief that Pop Warner Little Scholars failed to provide for the

4814-7226-7949.1

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   safety and health of minor children, participants of Pop Warner tackle football?

2   MR. MORY: Can I have the question read, please. Thank you.

3   MR. MORY: I didn't hear the first few words.   That's why -- THE

4   REPORTER: Is it your belief.

5   MR. MORY: Is it your belief. Okay. Thank you.  Object to form. Calls for

6   legal conclusion. You can answer.

7   THE WITNESS: It's from my attorneys --

8   MR. MORY: Don't reveal communications with your attorneys.

9   THE WITNESS: -- and I'm going to just rely on them and no one else.

10   BY MR. CORLETO:

11   Q      So the question is, is that your belief?

12   MR. MORY: Same objection.

13   THE WITNESS: Just, this was from my attorneys, and I'm going to rely on

14   them and no one else.

15   BY MR. CORLETO:

16   Q      So you have no answer one way or the other as to whether that's your

17   belief?

18   MR. MORY: She just answered.  Can we have the answer read, please. Thank

19   you very much.

20   MR. CORLETO: I heard her, what she said.

21   MR. MORY: I need to --

22   MR. CORLETO: I'm entitled to inquire.

23   MR. MORY: And I'm entitled to hear the answer back.

24   MR. CORLETO: You heard it very well.

25   MR. MORY: No. I need it back.

26   MR. CORLETO: You heard it very well.

27   MR. MORY: And I will have it. She's obligated to read it.  Can I have it read.

4814-7226-7949.1                                                    6

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  Thank you.

2      BY MR. CORLETO:

3      Q      So the question is, you have no answer one way or the other as to

4  whether you believe that Pop Warner Little Scholars failed to provide for the safety

5  and health of minor children?

6      MR. MORY: Calls for a legal conclusion. Asked and answered.

7      You can answer it again.

8      THE WITNESS: I'm relying on my attorneys and no one else.

9      BY MR. CORLETO:

10     Q      Turning your attention to paragraph 10, is it your belief that Pop

11  Warner misrepresented material facts about the safety of Pop Warner tackle

12  football?

13     MR. MORY: Object to form. Vague and ambiguous. Calls for a legal

14  conclusion.

15     MR. CORLETO: Well, it's your pleading.

16     MR. MORY: I know it is.

17     MR. CORLETO: And it's vague and ambiguous.

18     MR. MORY: When it comes to a layperson, it surely is. Because how could

19  they possibly know what material facts are?

20     MR. CORLETO: They should.

21     MR. MORY: Well, that you are even here saying they should is kind of

22  ridiculous, but it's okay.  It calls for a legal conclusion and is vague and ambiguous.

23     MR. CORLETO: Now that you're done coaching your witness, may I have an

24  answer?

25     THE WITNESS: I'm going to rely on my attorneys and no one else.

26     BY MR. CORLETO:

27     Q      So you have no belief one way or another as to whether Pop Warner

4814-7226-7949.1                                    7

28



DEFENDANT POP WARNER LITTLE SCHOLARS, INC.'S MOTION IN LIMNE NO. 3 TO EXCLUDE
TESTIMONY BY PLAINTIFFS TO FACTS SUPPORTING THEIR ALLEGATIONS BECAUSE SUCH FACTS
WERE WITHHELD BASED ON ATTORNEY-CLIENT PRIVILEGE AND/OR ATTORNEY WORK-PRODUCT
PRIVILEGE

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    misrepresented material facts about the safety of Pop Warner's tackle football?

2       MR. MORY: What is a material fact is a legal -- calls for a legal conclusion

3    from a lay witness. Asked and answered.

4       MR. CORLETO: I want to know what she believes.

5       MR. MORY: You can answer it again.

6       THE WITNESS: I'm going to rely on my attorneys and no one else.

7       BY MR. CORLETO:

8       Q     Do you have any reason to think that there was anything unsafe about

9    Pop Warner tackle football when your son participated?

10       MR. MORY: Calls for expert testimony.

11       MR. CORLETO: I want to know what she believes.

12       MR. MORY: Calls for expert testimony.

13       MR. CORLETO: You can have an objection as to form. That's the extent of it.

14       MR. MORY: Calls for expert testimony is my objection.

15       You can answer.

16       THE WITNESS: I'm going to rely on my attorneys and no one else.

17       BY MR. CORLETO:

18       Q     So you have no reason to say one or the other whether Pop Warner

19    tackle football was safe or unsafe when your son participated?

20       MR. MORY: Argumentative. Asked and answered.

21       You can answer it again.

22       THE WITNESS: I'm going to rely on my attorneys and no one else.

23       BY MR. CORLETO:

24       Q     Do you have a belief that there was a safer form of youth football, other

25    than Pop Warner, available when your son played football?

26       MR. MORY: Object to form. Calls for expert testimony.

27       THE WITNESS: I'm going to rely on my attorneys and no one else.

4814-7226-7949.1

8

28    DEFENDANT POP WARNER LITTLE SCHOLARS, INC.'S MOTION IN LIMNE NO. 3 TO EXCLUDE TESTIMONY BY PLAINTIFFS TO FACTS SUPPORTING THEIR ALLEGATIONS BECAUSE SUCH FACTS WERE WITHHELD BASED ON ATTORNEY-CLIENT PRIVILEGE AND/OR ATTORNEY WORK-PRODUCT PRIVILEGE

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

BY MR. CORLETO:

Q    I'm asking for what you know and what you believe.

MR. MORY: There's no --

BY MR. CORLETO:

Q    Do you have any reason to believe there was a safer form of youth football when your son played youth football?

MR. MORY: Objection to form. Asked and answered.

THE WITNESS: I'm going to rely on my attorneys and no one else.

BY MR. CORLETO:

Q    So you don't have an answer.

MR. MORY: Asked and answered. The answer was given.  You can answer it again.

THE WITNESS: I'm going to rely on my attorneys and no one else.

Q    But it's your claim that Pop Warner football caused your son to kill himself; is that correct?

MR. MORY: Asked and answered.

You can answer again.

THE WITNESS: I will rely on my attorneys and no one else.

BY MR. CORLETO:

Q    And how do you make that conclusion rather than pointing to high school football?

MR. MORY: Don't reveal privileged communications.

THE WITNESS: Privileged.

BY MR. CORLETO:

Q    So in other words, you can't tell one way or the other about whether one form of football or another had anything to do with what happened to your son?

MR. MORY: Object to form. Calls for expert testimony.

4814-7226-7949.1

9



1      THE WITNESS: I'm going to rely on my attorneys and no one else.

2      Q     You don't know, correct?

3      MR. MORY: Asked and answered.

4      You can answer it again.

5      THE WITNESS: I'm going to rely on my attorneys and no one else.

6      BY MR. CORLETO:

7      Q     You've got no basis to make these claims, correct?

8      MR. MORY: Object to form. These claims?  Object to form. Vague and

9 ambiguous. Overbroad.

10      You can answer again.

11      THE WITNESS: I'm going to rely on my attorneys and no one else.

12      Q Paragraph 45. You claim that Pop Warner --

13      MR. MORY: Page 10.

14      BY MR. CORLETO:

15      Q -- misled plaintiffs and class members and public at large regarding the

16 safety of Pop Warner football, including the dramatic inadequacies of the

17 equipment it provides.  Do you see that?

18      MR. MORY: 45.

19      THE WITNESS: 45.  Yes.

20      BY MR. CORLETO:

21      Q     What are the dramatic inadequacies of the equipment Pop Warner

22 provides?

23      MR. MORY: Object to form. Don't reveal privileged communications.

24      BY MR. CORLETO:

25      Q     I want to know what you know about that.

26      A     Privilege.

27      MR. MORY: If what you know came from your attorneys --

28      DEFENDANT POP WARNER LITTLE SCHOLARS, INC.'S MOTION IN LIMNE NO. 3 TO EXCLUDE TESTIMONY BY PLAINTIFFS TO FACTS SUPPORTING THEIR ALLEGATIONS BECAUSE SUCH FACTS WERE WITHHELD BASED ON ATTORNEY-CLIENT PRIVILEGE AND/OR ATTORNEY WORK-PRODUCT PRIVILEGE

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    MR. CORLETO: No. That's not true.

2    MR. MORY: -- and no one else, don't reveal it. It's privilege. Because we

3  can't have you talk about what you learned from your attorneys.

4    BY MR. CORLETO:

5    Q    I'm not looking for the communication. I want to know what you know.

6    A    I will rely upon my attorneys and no one else.

7    Q    Are you aware of more adequate equipment than what Pop Warner

8  provided?

9    MR. MORY: Object to form.

10    You can answer.

11    THE WITNESS: I don't know.

12    BY MR. CORLETO:

13    Q    In this paragraph you also complain about the dramatic inadequacies of

14  the techniques taught.  Do you see that?

15    A    Yes.

16    Q    And what do you believe are the dramatic inadequacies about the

17  techniques taught by Pop Warner football?

18    MR. MORY: Object to form. Calls for expert testimony. Calls for a legal

19  conclusion.

20    MR. CORLETO: I'm asking for what she knows.

21    MR. MORY: Don't reveal privileged communications.

22    THE WITNESS: Privileged, and I'm going to rely on my attorneys and no one

23  else.

24    (See Exhibit "A", Excerpts of the Deposition of Jo Cornell 98:9 – 183:19) to

25  Declaration of Hancock ¶2.)

26    As set forth above, Jo Cornell, was either instructed not to answer based on

27  privilege about the factual underpinnings of her Third Amended Complaint or chose

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  not to answer based on "privilege". Therefore Ms. Cornell should be prohibited at

2  the time of trial from testifying for the first time about the factual basis for her

3  conclusory allegations.

4      **B.**    **The Deposition of Kimberly Archie, June 21, 2019**

5      A similar scenario was played out at the deposition of Kimberly Archie on

6  June 21, 2019:

7      Q    Do you claim to have suffered any financial loss as a result of your

8  son's death?

9      A    Any financial losses?

10      Q    Yes.

11      MR. FINNERTY: Well, that would invade the attorney-client relationship.

12  Certainly she's discussed that with us, so --

13      MR. CORLETO: I'm not asking her for her discussions with you. I'm asking

14  her if she's claimed any financial loss as related to the death of her son.

15      MR. FINNERTY: She is.

16      MR. CORLETO: I'm not asking for your testimony, Counsel. I'm asking for

17  Ms. Archie's testimony.

18      THE WITNESS: Well, I paid for a funeral. MR. FINNERTY: Excuse me a

19  second. You're asking a question that's invasive of the attorney-client relationship.

20      MR. CORLETO: No, it's not. I'm asking her to explain.

21      MR. FINNERTY: I understand your opinion. But I do get to speak on

22  occasion, so --

23      MR. CORLETO: You have objections as to form.

24      MR. FINNERTY: Yes.

25      MR. CORLETO: You have objections based on privilege. I'm not asking for

26  privileged information.

27      MR. FINNERTY: You just did.

4814-7226-7949.1

28  <center>12</center>

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  MR. CORLETO: No, I did not.

2  Mark it for a ruling.

3  Q   How come you only sued Pop Warner?

4  MR. FINNERTY: Objection. Privilege.

5  THE WITNESS: I relied on the attorneys to decide anything like that.

6  BY MR. CORLETO:

7  Q   How do you know it was Pop Warner that caused whatever problem

8  Paul had, that you believe he had?

9  MR. FINNERTY: Objection. Privilege.

10  BY MR. CORLETO:

11  Q   This is the factual basis for your lawsuit.

12  Do you believe Pop Warner caused your son injury? How do you know it was

13  Pop Warner and not any of his other activities?

14  MR. FINNERTY: Objection as to form and privilege.

15  THE WITNESS: Am I supposed to answer?

16  MR. FINNERTY: No.

17  (See Exhibit "B", Excerpts of the Deposition of Kimberly Archie 161:7 –

18  162:10; 188:4-20) to Declaration of Hancock ¶3.)

19  Based on the instruction of privilege, Defendants request that neither Plaintiff

20  be permitted to testify at trial as to facts supporting their conclusory allegations for

21  which they were either instructed not to answer or chose not to answer.

22  **II.   LEGAL ARGUMENT**

23  **A.   Motion in *Limine* Authority**

24  Motion *in limine* "are generally brought at the beginning of trial, although

25  they may also be brought during trial when evidentiary issues are anticipated by the

26  parties." *Kelly v. New West Federal Savings* (1996) 49 Cal. App. 4th 659, 669.

27  "The usual purpose of motions *in limine* is to preclude the presentation of evidence

4814-7226-7949.1

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  deemed inadmissible and prejudicial by the moving party." *Id.* A typical order *in*
2  *limine* excludes the challenged evidence and directs counsel, parties, and witnesses
3  not to refer to the excluded matters during trial." *Id.*

4  **B.**   **Evidence Should Be Excluded Where It Was Withheld Based On**
5  **Attorney-Client Privilege During Discovery**

6  "Issues concerning the attorney-client privilege in a diversity case like this
7  one are governed by state law." *Bladeroom Grp., Ltd. v. Emerson Elec. Co.*
8  (N.D.Cal. Apr. 26, 2018, No. 5:15-cv-01370-EJD) 2018 U.S.Dist.LEXIS 71306, at
9  *5.   Therefore, here, the substantive law governing attorney-client privilege is
10  California law.

11  Pretrial discovery is a critical component of the litigation process. "[O]ne of
12  the principal purposes of civil discovery is to do away with 'the sporting theory of
13  litigation,' namely, surprise at the trial." *Chronicle Pub. Co. v. Super. Ct.* (1960) 54
14  Cal. 2d 548, 561. The purpose is accomplished by giving "greater assistance to the
15  parties in ascertaining the truth and in checking and preventing perjury," and by
16  providing "an effective means of detecting and exposing false, fraudulent, and sham
17  claims and defenses." *Greyhound Corp. v. Super. Ct.* (1961) 56 Cal. 2d 355, 376.

18  "[T]he Court [has] the power to preclude at trial the use of evidence withheld
19  by a party at deposition on the basis of [the attorney-client privilege]." *In re*
20  *Marriage of Hoffmeister* (1984) 161 Cal. App. 3d 1163, 1171. This is because any
21  attempt by Plaintiff to introduce testimony that was previously withheld on the basis
22  of privilege would constitute an abuse of the discovery process. *See* Code Civ.
23  Proc. § 2030.010(d)-(h). When discovery is misused, it is within this Court's
24  inherent power to issue an order prohibiting the offending party from "introducing
25  designated matters into evidence." *See* Code Civ. Proc. § 2023.030(c). The purpose
26  of precluding a party from introducing matters into evidence after it has abused
27  discovery is to deter further misuse, to prevent the party from gaining benefits by

4814-7226-7949.1

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   improper tactics, and to prevent a party from wasting judicial resources. *Deyo v.*
2   *Kilbourne* (1978) 84 Cal. App. 3d 771, 794.

3       Plaintiffs should not be permitted to offer testimony that they withheld on the
4   basis of attorney-client privilege.   Plaintiffs' Counsel's objections prevented
5   Defendants from adequately testing the evidence and discovering testimony related
6   to facts supporting the conclusory allegations in their Third Amended Complaint
7   which are critical to this lawsuit.   Therefore, permitting Plaintiffs to introduce
8   testimony on the factual underpinnings now, after repeated objections, would
9   unfairly disadvantage Defendant by permitting Plaintiff to use the privilege as both a
10  "shield and a sword". *Dwyer v. Crocker National Bank* (1987) 194 Cal. App. 3d
11  1418, 1432.

12      Federal law is in accord with California law on this issue. "The privilege
13  which protects attorney-client communications may not be used both as a sword and
14  a shield." *Kaiser Found. Health Plan, Inc. v. Abbott Labs., Inc.* (9th Cir. 2009) 552
15  F.3d 1033, 1042.

16      Moreover, this evidence should be excluded under *Federal Rule of Evidence*
17  § 403 because it is substantially more prejudicial than probative.  Due to Plaintiffs'
18  objections, Defendant was unable to discover this evidence and develop its case in
19  preparation for trial.  Introduction of this evidence will thus pose an intolerable risk
20  to the fairness of the proceedings because testimony previously withheld will
21  unfairly surprise—and prejudice—Defendant at trial.  *People v. Waidla* (2000) 22
22  Cal. 4th 690, 724.  This prejudice substantially outweighs the probative value of any
23  testimony.

24  **III.   CONCLUSION**

25      Should this Court permit any latitude on this testimony, Defendant requests it
26  be provided the opportunity to depose Plaintiffs on any and all of these issues, so
27  that it may discover the information previously withheld.  But for purposes of

28

4814-7226-7949.1

15

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  judicial economy, Defendant respectfully requests the Court issue an *in limine* order

2  prohibiting Plaintiffs from offering testimony on any of the topics they were either

3  instructed not to answer or chose not to answer based on privilege.

4

5  DATED: November ___, 2019          LEWIS BRISBOIS BISGAARD & SMITH LLP

6

7

8                                     By:  _____*/s/ Hellar-Ann Hancock*_____

9                                          Hellar-Ann Hancock
                                           Attorneys for Defendant, POP WARNER
10                                         LITTLE SCHOLARS, INC., a nonprofit
                                           corporation
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4814-7226-7949.1

DEFENDANT POP WARNER LITTLE SCHOLARS, INC.'S MOTION IN LIMNE NO. 3 TO EXCLUDE TESTIMONY BY PLAINTIFFS TO FACTS SUPPORTING THEIR ALLEGATIONS BECAUSE SUCH FACTS WERE WITHHELD BASED ON ATTORNEY-CLIENT PRIVILEGE AND/OR ATTORNEY WORK-PRODUCT PRIVILEGE

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

# DECLARATION OF HELLAR-ANN HANCOCK

I, Hellar-Ann Hancock, declare as follows:

1.      I am an attorney duly admitted to practice in all of the courts of the State of California and I am a partner with Lewis Brisbois Bisgaard & Smith LLP, attorneys of record for Defendant POP WARNER LITTLE SCHOLARS, INC., herein.  The facts set forth herein are of my own personal knowledge, and if sworn I could and would competently testify thereto.

2.      Attached hereto as Exhibit A is a true and correct copy of excerpts from the deposition of Plaintiff Jo Cornell taken March 22, 2019.

3.      Attached hereto as Exhibit B is a true and correct copy of excerpts of the deposition of Kimberly Archie taken June 21, 2019.

4.      This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on November 12, 2019.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on November __, 2019, at Los Angeles, California.

*/s/ Hellar-Ann Hancock*

Hellar-Ann Hancock

4814-7226-7949.1

17

DEFENDANT POP WARNER LITTLE SCHOLARS, INC.'S MOTION IN LIMNE NO. 3 TO EXCLUDE TESTIMONY BY PLAINTIFFS TO FACTS SUPPORTING THEIR ALLEGATIONS BECAUSE SUCH FACTS WERE WITHHELD BASED ON ATTORNEY-CLIENT PRIVILEGE AND/OR ATTORNEY WORK-PRODUCT PRIVILEGE

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

**EXHIBIT A**

Page 1

1                    UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

3

4      KIMBERLY ARCHIE, et al.,              )
                                             )
5                        Plaintiffs,         )
                                             )
6                   vs.                      )   No.  2:16-cv-06603-
                                             )        PSG-PLA
7      POP WARNER LITTLE SCHOLARS,           )
       INC., et al.,                         )
8                                            )
                         Defendants.         )
9      _____)

10

11

12

13

14            VIDEOTAPED DEPOSITION OF JO CORNELL, taken on

15     behalf of the Defendants, at 555 South Flower Street,

16     Suite 2900, Los Angeles, California, commencing at

17     10:07 a.m., Friday, March 22, 2019, before ZINA TALLANT,

18     Certified Shorthand Reporter No. 13341.

19

20

21

22

23

24

25     Job No. CS3261751

Page 98

1           MR. MORY:  Vague.

2           You can answer.

3           THE WITNESS:  Doctor's authorization to be

4    released.

5    BY MR. CORLETO:

6        Q    And where did he go to live after he was

7    released from Sharp Mesa Vista?

8        A    12858 Abra Drive, San Diego.

9        Q    When is the next time your son was

10   hospitalized?

11       A    I don't know.

12       Q    Do you recall the circumstances?

13       A    No.

14       Q    Of the six approximate other times that your

15   son was hospitalized, can you recall any particular

16   circumstances associated with any of those events?

17       A    No.

18       Q    So you don't recall what it was that prompted

19   your son to be hospitalized on any of the other six

20   occasions?

21       A    No.

22           MR. MORY:  Can I have that question read.

23   Thank you.

24                  (Question read back.)

25           MR. MORY:  Thank you.

Page 99

1    BY MR. CORLETO:

2        Q    And just to be clear, that's no, you don't

3    recall?

4        A    Well, Tyler would exhibit behavior that needed

5    attention and that needed medical care.

6        Q    What kind of behavior?

7        A    Irrational, unorganized thinking, depression,

8    anxiety.  Just overall sadness and despair.

9        Q    And did you ever learn what he had sadness and

10   despair about?

11           MR. MORY:  Object to form.  Lacks foundation.

12           THE WITNESS:  I would come to understand -- I

13   mean, I don't know specifically, to answer that

14   question.

15   BY MR. CORLETO:

16       Q    But you have an understanding or a belief.

17           What do you believe his depression and anxiety

18   was associated with?

19           MR. MORY:  Object to form.  Calls for expert

20   testimony.

21           THE WITNESS:  I'm not an expert.  I can't say.

22   BY MR. CORLETO:

23       Q    He's your son.  You raised him.  You lived

24   with him for a substantial period of time.  You cared

25   for him.

Page 100

1          What do you believe his depression and anxiety

2     was caused by?

3          MR. MORY:  Asked and answered.

4          THE WITNESS:  I'm not a medical expert.  I --

5     BY MR. CORLETO:

6     Q     As you sit here today, you have no clue what

7     caused your son's depression and anxiety; is that what

8     you're telling us?

9          MR. MORY:  Can I have the question read.

10    Thank you.

11              (Question read back.)

12         MR. MORY:  Thank you.

13         THE WITNESS:  I have come to believe, based on

14    the University of Boston's report, that Tyler suffered

15    and obtained chronic traumatic encephalopathy as a

16    result of playing tackle football in Pop Warner Little

17    Scholars program.

18    BY MR. CORLETO:

19    Q     And you think that's responsible for all of

20    the behaviors that you told us about today?

21         MR. MORY:  Same objections.

22         You can answer.

23         THE WITNESS:  I believe that it impacted

24    Tyler's behavior.

25    ///

Page 101

1    BY MR. CORLETO:

2        Q    The question is you believe -- do you believe

3    that what you just described, that you learned from

4    Boston University, is responsible for Tyler's depression

5    and anxiety?

6        A    Yes.

7             MR. MORY:  Object to form.

8    BY MR. CORLETO:

9        Q    And do you believe that what you learned from

10   Boston University is what caused Tyler to shoot himself?

11            MR. MORY:  Object to form.

12            You can answer.

13            THE WITNESS:  Yes.

14   BY MR. CORLETO:

15       Q    When did you come to that belief?

16       A    January 15, 2016.

17       Q    And is that why you brought this lawsuit?

18            MR. MORY:  Object to form.

19            Don't reveal privileged communication with

20   your attorneys.

21            MR. CORLETO:  I'm not asking her to do that.

22            MR. MORY:  I'm just advising her.  Don't

23   reveal privileged communications with your attorneys.

24            THE WITNESS:  It's privileged.

25   ///

セ

 1    BY MR. CORLETO:

 2        Q    The question is the belief you just described

 3    to us, is that why you brought this lawsuit?

 4             MR. MORY:  Again, don't reveal privileged

 5    communications as to why you brought this lawsuit or any

 6    communications you had with your attorneys, if that's

 7    what it's based on.  That's why I'm advising you not to.

 8             THE WITNESS:  Right.

 9             MR. CORLETO:  Counsel, your objection is

10    improper.  I'm using -- the question is based on her

11    testimony and calls for a yes or a no.  It's that

12    simple.

13             MR. MORY:  All I said was don't reveal

14    privileged communications.  That's my objection.

15             MR. CORLETO:  That's fine.  And just for

16    clarity, would you read the question back to the

17    witness.  You'll have to go back a few, at this point.

18                     (Question read back)

19             THE WITNESS:  Based on privilege.

20    BY MR. CORLETO:

21        Q    So you can't say why you brought this lawsuit?

22        A    Under discussions with my attorney.

23        Q    What do you hope to get out of bringing this

24    lawsuit?

25             MR. MORY:  Don't reveal privileged

Page 103

```
 1    communications.
 2            THE WITNESS:  It's privileged.
 3    BY MR. CORLETO:
 4       Q    So you can't say what you hope to get out of
 5    bringing this lawsuit?
 6            MR. MORY:  Because it's privileged, you can
 7    just say that.
 8            THE WITNESS:  Privileged.
 9    BY MR. CORLETO:
10       Q    Well, you sued Pop Warner.  You need to tell
11    Pop Warner what you want out of this lawsuit.
12            MR. MORY:  No, you don't.  Their attorneys
13    will be talking about that.
14            So if it came from your attorneys, don't
15    reveal it.  It is privileged.
16    BY MR. CORLETO:
17       Q    I'm not asking for what your attorneys told
18    you.  I'm asking what you expect to get out of that
19    lawsuit.
20            MR. MORY:  If that information came to you
21    from your attorneys and no other source, don't reveal
22    it.  It is privileged.
23            THE WITNESS:  It is privileged.
24    BY MR. CORLETO:
25       Q    Do you recall an event when your son was about
```

Page 171

1          Q    Was your son ever injured during an admission

2     to a hospital?

3          A    No.

4          Q    Now, you told us before about an event where

5     your son lit a T-shirt at a gas station.

6               Do you recall that testimony?

7          A    Yes.

8          Q    Was there also an event where he lit his

9     briefs on fire?

10         A    I don't know.

11         Q    Do you recall an event where your son got in

12    an altercation while he was admitted to Sharp Mesa

13    Vista?

14         A    I don't remember.

15         Q    Is it your claim that Pop Warner failed to

16    provide for your son's safety and health?

17              MR. MORY:  Object to form.  Calls for a legal

18    conclusion.  Calls for expert testimony.

19              THE WITNESS:  I don't know.

20    BY MR. CORLETO:

21         Q    You don't know?  It states that in your

22    complaint.  Do you understand that?  If you want to see

23    a copy, we can mark it and give it to you.

24              MR. MORY:  So what is the pending question?

25              MR. CORLETO:  Would you read the question

Page 172

1    back.

2                    (Question read back.)

3             MR. CORLETO:  Back up.

4                    (Question read back.)

5             MR. MORY:  No.  She already answered that one.

6    The pending one.

7             THE REPORTER:  There was the object to form.

8    There was, I don't know.  He said, you don't know?

9             MR. MORY:  Okay.  Answer it again.

10            THE WITNESS:  I don't know.

11   BY MR. CORLETO:

12       Q    Are you aware that your complaint states that?

13            MR. MORY:  Don't reveal privileged

14   communications.

15            THE WITNESS:  Privileged.

16            MR. CORLETO:  Let's take a break.

17            THE VIDEOGRAPHER:  Going off the record.

18            MR. MORY:  Sure.

19            THE VIDEOGRAPHER:  The time is 3:41 p.m.

20                 (Break in the proceedings.)

21            THE VIDEOGRAPHER:  We are back on the record.

22   The time is 3:53 p.m.

23                 (Defendants' Exhibit D was marked for

24                 identification by the Reporter and is

25                 attached hereto.)

```
 1    BY MR. CORLETO:

 2         Q    Ms. Cornell, we've placed before you a

 3    document that's been marked as Exhibit D.  I'll

 4    represent to you that it's the third amended complaint

 5    that your attorneys have filed in this action.  You'll

 6    see that it bears the court's stamp at the top.

 7              You're free to take a look at that at any

 8    point in time.  I'm going to ask you a few questions

 9    that relate to this, so you may want to do that.

10         A    Okay.

11         Q    Turning your attention to paragraph number 6,

12    which appears on page 4.

13              Do you see what it says in paragraph 6?

14         A    Uh-huh.  Yes.

15         Q    Is it your belief that Pop Warner Little

16    Scholars failed to provide for the safety and health of

17    minor children, participants of Pop Warner tackle

18    football?

19              MR. MORY:  Can I have the question read,

20    please.  Thank you.

21                    (Question read back.)

22              MR. MORY:  I didn't hear the first few words.

23    That's why --

24              THE REPORTER:  Is it your belief.

25              MR. MORY:  Is it your belief.  Okay.  Thank
```

Page 174

1    you.

2            Object to form.  Calls for legal conclusion.

3            You can answer.

4            THE WITNESS:  It's from my attorneys --

5            MR. MORY:  Don't reveal communications with

6    your attorneys.

7            THE WITNESS:  -- and I'm going to just rely on

8    them and no one else.

9    BY MR. CORLETO:

10       Q    So the question is, is that your belief?

11           MR. MORY:  Same objection.

12           THE WITNESS:  Just, this was from my

13   attorneys, and I'm going to rely on them and no one

14   else.

15   BY MR. CORLETO:

16       Q    So you have no answer one way or the other as

17   to whether that's your belief?

18           MR. MORY:  She just answered.

19           Can we have the answer read, please.  Thank

20   you very much.

21           MR. CORLETO:  I heard her, what she said.

22           MR. MORY:  I need to --

23           MR. CORLETO:  I'm entitled to inquire.

24           MR. MORY:  And I'm entitled to hear the answer

25   back.

Page 175

1          MR. CORLETO:  You heard it very well.

2          MR. MORY:  No.  I need it back.

3          MR. CORLETO:  You heard it very well.

4          MR. MORY:  And I will have it.  She's

5    obligated to read it.

6          Can I have it read.  Thank you.

7                (Answer read back.)

8    BY MR. CORLETO:

9      Q    So the question is, you have no answer one way

10   or the other as to whether you believe that Pop Warner

11   Little Scholars failed to provide for the safety and

12   health of minor children?

13         MR. MORY:  Calls for a legal conclusion.

14   Asked and answered.

15         You can answer it again.

16         THE WITNESS:  I'm relying on my attorneys and

17   no one else.

18   BY MR. CORLETO:

19     Q    Turning your attention to paragraph 10, is it

20   your belief that Pop Warner misrepresented material

21   facts about the safety of Pop Warner tackle football?

22         MR. MORY:  Object to form.  Vague and

23   ambiguous.  Calls for a legal conclusion.

24         MR. CORLETO:  Well, it's your pleading.

25         MR. MORY:  I know it is.

Page 176

1           MR. CORLETO:  And it's vague and ambiguous.

2           MR. MORY:  When it comes to a layperson, it

3    surely is.  Because how could they possibly know what

4    material facts are?

5           MR. CORLETO:  They should.

6           MR. MORY:  Well, that you are even here saying

7    they should is kind of ridiculous, but it's okay.

8           It calls for a legal conclusion and is vague

9    and ambiguous.

10          MR. CORLETO:  Now that you're done coaching

11   your witness, may I have an answer?

12          THE WITNESS:  I'm going to rely on my

13   attorneys and no one else.

14   BY MR. CORLETO:

15     Q    So you have no belief one way or another as to

16   whether Pop Warner misrepresented material facts about

17   the safety of Pop Warner's tackle football?

18          MR. MORY:  What is a material fact is a

19   legal -- calls for a legal conclusion from a lay

20   witness.  Asked and answered.

21          MR. CORLETO:  I want to know what she

22   believes.

23          MR. MORY:  You can answer it again.

24          THE WITNESS:  I'm going to rely on my

25   attorneys and no one else.

Page 177

1    BY MR. CORLETO:

2        Q    Do you have any reason to think that there was

3    anything unsafe about Pop Warner tackle football when

4    your son participated?

5            MR. MORY:  Calls for expert testimony.

6            MR. CORLETO:  I want to know what she

7    believes.

8            MR. MORY:  Calls for expert testimony.

9            MR. CORLETO:  You can have an objection as to

10   form.  That's the extent of it.

11           MR. MORY:  Calls for expert testimony is my

12   objection.

13           You can answer.

14           THE WITNESS:  I'm going to rely on my

15   attorneys and no one else.

16   BY MR. CORLETO:

17       Q    So you have no reason to say one or the other

18   whether Pop Warner tackle football was safe or unsafe

19   when your son participated?

20           MR. MORY:  Argumentative.  Asked and answered.

21           You can answer it again.

22           THE WITNESS:  I'm going to rely on my

23   attorneys and no one else.

24   BY MR. CORLETO:

25       Q    Do you have a belief that there was a safer

Page 178

1   form of youth football, other than Pop Warner, available

2   when your son played football?

3          MR. MORY:  Object to form.  Calls for expert

4   testimony.

5          THE WITNESS:  I'm going to rely on my

6   attorneys and no one else.

7   BY MR. CORLETO:

8      Q    I'm asking for what you know and what you

9   believe.

10         MR. MORY:  There's no --

11  BY MR. CORLETO:

12     Q    Do you have any reason to believe there was a

13  safer form of youth football when your son played youth

14  football?

15         MR. MORY:  Objection to form.  Asked and

16  answered.

17         THE WITNESS:  I'm going to rely on my

18  attorneys and no one else.

19  BY MR. CORLETO:

20     Q    So you don't have an answer.

21         MR. MORY:  Asked and answered.  The answer was

22  given.

23         You can answer it again.

24         THE WITNESS:  I'm going to rely on my

25  attorneys and no one else.

Page 180

1    BY MR. CORLETO:

2        Q    Do you have plans to sue the high school

3    football program?

4        A    No.

5        Q    But it's your claim that Pop Warner football

6    caused your son to kill himself; is that correct?

7              MR. MORY:  Asked and answered.

8              You can answer again.

9              THE WITNESS:  I will rely on my attorneys and

10   no one else.

11   BY MR. CORLETO:

12       Q    And how do you make that conclusion rather

13   than pointing to high school football?

14             MR. MORY:  Don't reveal privileged

15   communications.

16             THE WITNESS:  Privileged.

17   BY MR. CORLETO:

18       Q    So in other words, you can't tell one way or

19   the other about whether one form of football or another

20   had anything to do with what happened to your son?

21             MR. MORY:  Object to form.  Calls for expert

22   testimony.

23             THE WITNESS:  I'm going to rely on my

24   attorneys and no one else.

25   ///

Page 181

1  BY MR. CORLETO:

2       Q    You don't know, correct?

3            MR. MORY:  Asked and answered.

4            You can answer it again.

5            THE WITNESS:  I'm going to rely on my

6  attorneys and no one else.

7  BY MR. CORLETO:

8       Q    You've got no basis to make these claims,

9  correct?

10           MR. MORY:  Object to form.  These claims?

11  Object to form.  Vague and ambiguous.  Overbroad.

12           You can answer again.

13           THE WITNESS:  I'm going to rely on my

14  attorneys and no one else.

15  BY MR. CORLETO:

16      Q    Do you know if the helmet your son wore during

17  high school football was NOCSAE certified?

18      A    No.

19      Q    Do you know if it had any certification?

20      A    No.

21      Q    Paragraph 45.  You claim that Pop Warner --

22           MR. MORY:  Page 10.

23  BY MR. CORLETO:

24      Q    -- misled plaintiffs and class members and

25  public at large regarding the safety of Pop Warner

Page 182

```
 1    football, including the dramatic inadequacies of the

 2    equipment it provides.

 3              Do you see that?

 4              MR. MORY:   45.

 5              THE WITNESS:   45.

 6              Yes.

 7    BY MR. CORLETO:

 8        Q    What are the dramatic inadequacies of the

 9    equipment Pop Warner provides?

10              MR. MORY:   Object to form.  Don't reveal

11    privileged communications.

12    BY MR. CORLETO:

13        Q    I want to know what you know about that.

14        A    Privilege.

15              MR. MORY:   If what you know came from your

16    attorneys --

17              MR. CORLETO:   No.  That's not true.

18              MR. MORY:   -- and no one else, don't reveal

19    it.  It's privilege.  Because we can't have you talk

20    about what you learned from your attorneys.

21    BY MR. CORLETO:

22        Q    I'm not looking for the communication.  I want

23    to know what you know.

24        A    I will rely upon my attorneys and no one else.

25        Q    Are you aware of more adequate equipment than
```

Page 183

1    what Pop Warner provided?

2         MR. MORY:  Object to form.

3         You can answer.

4         THE WITNESS:  I don't know.

5    BY MR. CORLETO:

6         Q    In this paragraph you also complain about the

7    dramatic inadequacies of the techniques taught.

8         Do you see that?

9         A    Yes.

10        Q    And what do you believe are the dramatic

11   inadequacies about the techniques taught by Pop Warner

12   football?

13        MR. MORY:  Object to form.  Calls for expert

14   testimony.  Calls for a legal conclusion.

15        MR. CORLETO:  I'm asking for what she knows.

16        MR. MORY:  Don't reveal privileged

17   communications.

18        THE WITNESS:  Privileged, and I'm going to

19   rely on my attorneys and no one else.

20        MR. CORLETO:  You're putting a lot on their

21   shoulders.

22        MR. MORY:  That's what we're here for.

23   BY MR. CORLETO:

24        Q    Are you aware of better techniques that should

25   have been used?

Page 196

1    of the testimony given by the witness.  (Fed. R. Civ. P.

2    30(f)(1)).

3            Before completion of the deposition, review of

4    the transcript [X] was [  ] was not requested.  If

5    requested, any changes made by the deponent (and

6    provided to the reporter) during the period allowed, are

7    appended hereto.  (Fed. R. Civ. P. 30(e)).

8

9    Dated: April 5, 2019

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**EXHIBIT B**

Page 1

1              UNITED STATES DISTRICT COURT

2      CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

3

4   KIMBERLY ARCHIE, et al.,          )
                                      )
5                  Plaintiffs,        )
                                      )
6             vs.                     )   No. 2:16-cv-06603-
                                      )        PSG-PLA
7   POP WARNER LITTLE SCHOLARS,       )
    INC., et al.,                     )
8                                     )
                   Defendants.        )
9   _____   )

10

11

12

13

14          VIDEOTAPED DEPOSITION OF KIMBERLY ARCHIE,

15   taken on behalf of the Defendants, at 555 South Flower

16   Street, Suite 2900, Los Angeles, California, commencing

17   at 9:58 a.m., Friday, June 21, 2019, before

18   ZINA TALLANT, Certified Shorthand Reporter No. 13341.

19

20

21

22

23

24

     Job No. CS3426970

25

Page 161

1    Q    Which expert?

2    A    Merikangas.

3    Q    Have you spoken to Dr. Merikangas?

4    A    No, I have not.

5    Q    Have you read his report?

6    A    No.  I haven't seen his report.

7    Q    Do you claim to have suffered any financial

8    loss as a result of your son's death?

9    A    Any financial losses?

10   Q    Yes.

11        MR. FINNERTY:  Well, that would invade the

12   attorney-client relationship.  Certainly she's discussed

13   that with us, so --

14        MR. CORLETO:  I'm not asking her for her

15   discussions with you.  I'm asking her if she's claimed

16   any financial loss as related to the death of her son.

17        MR. FINNERTY:  She is.

18        MR. CORLETO:  I'm not asking for your

19   testimony, Counsel.  I'm asking for Ms. Archie's

20   testimony.

21        THE WITNESS:  Well, I paid for a funeral.

22        MR. FINNERTY:  Excuse me a second.

23        You're asking a question that's invasive of

24   the attorney-client relationship.

25        MR. CORLETO:  No, it's not.  I'm asking her to

Page 162

1    explain.

2               MR. FINNERTY:  I understand your opinion.  But

3    I do get to speak on occasion, so --

4               MR. CORLETO:  You have objections as to form.

5               MR. FINNERTY:  Yes.

6               MR. CORLETO:  You have objections based on

7    privilege.  I'm not asking for privileged information.

8               MR. FINNERTY:  You just did.

9               MR. CORLETO:  No, I did not.

10              Mark it for a ruling.

11              MR. FINNERTY:  At least you sped up.  You're

12   very good at interrupting.  Do you realize that?  We've

13   all sat here very patiently today.  Maybe you could

14   extend the same courtesy.

15              MR. CORLETO:  I'm trying to.

16              MR. FINNERTY:  Have some more candies while

17   you're at it.  Maybe that helps.

18              You know, you might find this irritating, but

19   we're talking about somebody who lost their child.

20              MR. CORLETO:  Mark this, please.

21              (Defendant's Exhibit E was marked for

22              identification by the Reporter and is

23              attached hereto.)

24              MR. FINNERTY:  I don't see any reason why you

25   would throw a document at me.

Page 188

1    but he didn't play so he was ashamed.  He didn't want us

2    to come back all the way to Reno.  He didn't get to

3    play.

4         Q    How come you only sued Pop Warner?

5              MR. FINNERTY:  Objection.  Privilege.

6              THE WITNESS:  I relied on the attorneys to

7    decide anything like that.

8    BY MR. CORLETO:

9         Q    How do you know it was Pop Warner that caused

10   whatever problem Paul had, that you believe he had?

11             MR. FINNERTY:  Objection.  Privilege.

12   BY MR. CORLETO:

13        Q    This is the factual basis for your lawsuit.

14             Do you believe Pop Warner caused your son

15   injury?  How do you know it was Pop Warner and not any

16   of his other activities?

17             MR. FINNERTY:  Objection as to form and

18   privilege.

19             THE WITNESS:  Am I supposed to answer?

20             MR. FINNERTY:  No.

21             MR. CORLETO:  Your instruction is improper,

22   Counsel.

23             MR. FINNERTY:  Thank you.  I think your

24   question was improper, so --

25        ///

Page 199

1              DEPOSITION OFFICER'S CERTIFICATE

2

3    STATE OF CALIFORNIA          )
                                  )    ss.
4    COUNTY OF _____)

5

6            I, Zina Tallant, hereby certify:

7            I am a duly qualified Certified Shorthand

8    Reporter in the State of California, holder of

9    Certificate Number CSR 13341 issued by the Court

10   Reporters Board of California and which is in full force

11   and effect.  (Fed. R. Civ. P. 28(a)).

12           I am authorized to administer oaths or

13   affirmations pursuant to California Code of Civil

14   Procedure, Section 2093(b), and prior to being examined,

15   the witness was first duly sworn by me.  (Fed. R. Civ.

16   P. 28(a), 30(f)(1)).

17           I am not a relative or employee or attorney or

18   counsel of any of the parties, nor am I a relative or

19   employee of such attorney or counsel, nor am I

20   financially interested in this action.  (Fed. R. Civ. P.

21   28).

22           I am the deposition officer that

23   stenographically recorded the testimony in the foregoing

24   deposition and the foregoing transcript is a true record

25                        ///

Page 200

1    of the testimony given by the witness.   (Fed. R. Civ. P.

2    30(f)(1)).

3           Before completion of the deposition, review of

4    the transcript [ ] was [X] was not requested.   If

5    requested, any changes made by the deponent (and

6    provided to the reporter) during the period allowed, are

7    appended hereto.   (Fed. R. Civ. P. 30(e)).

8

9    Dated:

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## FEDERAL COURT PROOF OF SERVICE

Kimberly Archie v. Pop Warner Little Scholars, Inc. - Case No. 2:16-cv-06603-PSG-PLA

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

At the time of service, I was over 18 years of age and not a party to the action. My business address is 633 West 5th Street, Suite 4000, Los Angeles, CA 90071. I am employed in the office of a member of the bar of this Court at whose direction the service was made.

On November 22, 2019, I served the following document(s): DEFENDANT POP WARNER LITTLE SCHOLARS, INC.'S MOTION IN LIMNE NO. 3 TO EXCLUDE TESTIMONY BY PLAINTIFFS TO FACTS SUPPORTING THEIR ALLEGATIONS BECAUSE SUCH FACTS WERE WITHHELD BASED ON ATTORNEY-CLIENT PRIVILEGE AND/OR ATTORNEY WORK-PRODUCT PRIVILEGE; DECLARATION OF HELLAR-ANN HANCOCK

I served the documents on the following persons at the following addresses (including fax numbers and e-mail addresses, if applicable):

### SEE ATTACHED SERVICE LIST

The documents were served by the following means:

☒ (BY U.S. MAIL) I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses listed above and I deposited the sealed envelope or package with the U.S. Postal Service, with the postage fully prepaid.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on November 22, 2019, at Los Angeles, California.

/s/ *Tania Moore*
Tania Moore

4814-7226-7949.1

18

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

SERVICE LIST
**Kimberly Archie v. Pop Warner Little Scholars, Inc.**
**2:16-cv-06603-PSG-PLA**

Robert W. Finnerty, Esq.                  *Attorneys for Plaintiff*
Law Offices of Robert Finnerty           Jo Cornell
16001 Ventura Blvd.
Telephone: (747) 214-4812
rfinnerty@girardikeese.com

Christopher E. Brumfiel, Esq.             *Attorneys for Defendant*
Robert B. Lueck, Esq.                     Pop Warner Little Scholars, Inc.
BOORNAZIAN, JENSEN & GARTHE
A Professional Corporation
555 12th Street, Suite 1800
Oakland, CA 94607
Telephone: (510) 834-4350
Fax: (510) 839-1897
cbrumfiel@bjg.com
rlueck@bjg.com
(Via Mail Service)

Ian A. Stewart, Esq.                      *Attorneys for Defendant*
Patrick M. Kelly, Esq.                    Pop Warner Little Scholars, Inc.
WILSON ELSER MOSKOWITZ
EDELMAN & DICKER, LLP
555 South Flower Street, Suite 2900
Los Angeles, CA 90071-2407
Telephone: (213) 443-5100
Fax: (213) 443-5101
ian.stewart@wilsonelser.com
Patrick.kelly@wilsonelser.com

Anthony B. Corleto, Esq.                  *Attorneys for Defendant*
WILSON ELSER MOSKOWITZ                    Pop Warner Little Scholars, Inc.
EDELMAN & DICKER, LLP
1010 Washington Boulevard
Stamford, Connecticut 06901
Telephone: (203) 288-2404
Fax: (203) 388-9101
anthony.corleto@wilsonelser.com
(Admitted Pro Hac Vice)

4814-7226-7949.1

19

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW