1  **LEWIS BRISBOIS BISGAARD & SMITH LLP**
   DANA ALDEN FOX, SB# 119761
2     E-Mail: Dana.Fox@lewisbrisbois.com
   DAWN M. FLORES-OSTER, SB# 155722
3     E-Mail: Dawn.Flores-Oster@lewisbrisbois.com
   HELLAR-ANN HANCOCK, SB# 117075
4     E-Mail: Hellar-Ann.Hancock@lewisbrisbois.com
   LAURA A. FREE, SB# 311453
5     E-Mail: Laura.Free@lewisbrisbois.com
   633 West 5th Street, Suite 4000
6  Los Angeles, California 90071
   Telephone: 213.250.1800
7  Facsimile: 213.250.7900

8  Attorneys for Defendant, POP WARNER
   LITTLE SCHOLARS, INC., a nonprofit
9  corporation

10

11                    UNITED STATES DISTRICT COURT

12          CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

13

14  KIMBERLY ARCHIE, as survivor of          CASE NO. 2:16-CV-06603-PSG-PLA
    decedent Paul Bright Jr., JO
15  CORNELL, as survivor of decedent          **DEFENDANT POP WARNER**
    Tyler Cornell, on behalf of themselves    **LITTLE SCHOLARS, INC.'S**
16  and all others similarly situated,        **MOTION IN LIMINE NO. 4 TO**
                                              **EXCLUDE SPECULATIVE**
17          Plaintiffs,                       **TESTIMONY BY PLAINTIFFS**
                                              **REGARDING THE CAUSE OF**
18      vs.                                   **THEIR SONS' DEATHS;**
                                              **DECLARATION OF HELLAR-ANN**
19  POP WARNER LITTLE SCHOLARS,               **HANCOCK**
    INC., a nonprofit corporation;
20  NATIONAL OPERATING                        *[Filed concurrently with [Proposed]*
    COMMITTEE ON STANDARDS                    *Order]*
21  ATHLETIC EQUIPMENT, a nonprofit
    organization; USA FOOTBALL, a             The Hon. Judge Philip S. Gutierrez
22  foreign nonprofit corporation, and
    DOES 1-100,                               Pretrial Conf.: January 6, 2020
23                                            Trial Date:     January 14, 2020
            Defendants.
24

25  ///

26  ///

27  ///

28  ///

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

TO THIS HONORABLE COURT AND TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:

**PLEASE TAKE NOTICE** that on **January 14, 2020** at 9:00 a.m., or as soon thereafter as counsel may be heard in Courtroom 6A of the above entitled court, located at 350 West 1st Street, 6th Floor, Los Angeles, California 90012-4565, Defendant POP WARNER LITTLE SCHOLARS ("Defendant") will and hereby does move this Court for an Order *in Limine* to exclude any argument decedents' deaths would have been avoided if they never participated in Pop Warner Little Scholar's football.

This Motion is supported by this Notice, the Memorandum of Points and Authorities attached, the Declaration of Hellar-Ann Hancock and supporting exhibits, the Court's files, and such further evidence and argument as the Court may require at the hearing.

DATED: November 2019    LEWIS BRISBOIS BISGAARD & SMITH LLP

By:    */s/ Hellar-Ann Hancock*
       Hellar-Ann Hancock
       Attorneys for Defendant POP WARNER
       LITTLE SCHOLARS



# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................1

I.   INTRODUCTION ....................................................................................1

II.  AUTHORITY FOR MOTION *IN LIMINE*.............................................1

III. PLAINTIFFS CANNOT OFFER SPECULATIVE TESTIMONY TO PROVE THEIR ALLEGATIONS THAT THEIR SONS' PARTICIPATION IN POP WARNER FOOTBALL CAUSED THEIR DEATHS........................................................................................................2

    A.   Deposition Testimony of Jo Cornell Taken March 22, 2019.................2

    B.   Deposition Testimony of Kimberly Archie taken June 21, 2019: ..........7

IV.  THE EVIDENCE IS UNDULY PREJUDICIAL.........................................9

V.   CONCLUSION....................................................................................... 10

DECLARATION OF HELLAR-ANN HANCOCK ..................................................i

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4832-6452-2924.1                    i                    8:16-cv-00591-SVW-PLA
DEFENDANT POP WARNER LITTLE SCHOLARS, INC.'S MOTION IN LIMINE NO. 4 TO EXCLUDE
SPECULATIVE TESTIMONY BY PLAINTIFFS REGARDING THE CAUSE OF THEIR SONS' DEATH

# TABLE OF AUTHORITIES

## Cases

*Carroll v. Xerox Corp.*,
   294 F.3d 231 (1st Cir. 2002)................................................................. 6

City of San Jose v. Superior Court
   (1974) 12 Cal. 3d 447, 455 [115 Cal. Rptr. 797, 525 P.2d 701,
   76 A.L.R.3d 1223] .......................................................................... 1

*Goldman v. First Nat'l Bank of Boston*,
   985 F.2d 1113 (1st Cir. 1993)............................................................. 6

Luce v. United States,
   (1984) 469 U.S. 38, 41....................................................................... 1

*O.S.C. Corp. v. Apple Computer, Inc.*,
   792 F.2d 1464 (9th Cir. 1986) ............................................................ 2

Ohler v. United States
   (2000) 529 U.S. 753, 758................................................................... 2

*Puerto Rico, Inc. v. Certain Underwriters at Lloyd's of London*,
   637 F.3d 53 (1st Cir. 2011)................................................................. 6

*Quezada v. Lindsey*,
   2016 U.S. Dist. LEXIS 14520 (E.D. Cal. Feb. 5, 2016) ..................... 6

*Rogan v. City of Boston*,
   267 F.3d 24 (1st Cir. 2001)................................................................. 6

*Sutliffe v. Epping Sch. Dist.*,
   584 F.3d 314 (1st Cir. 2009)............................................................... 6

*Trevino v. Gates*,
   99 F.3d 911 (9th Cir. 1996) ................................................................ 2

United States v. Bailleaux
   (9th Cir. 1982) 685 F.2d 1105, 1111n.2 ............................................. 9

United States v. Cook
   (9th Cir. 1979) 608 F.2d 1175, 1186 .................................................. 2

United States v. Galin
   (9th Cir. 2000) 222 F.3d 1123, 1126-1127 ......................................... 1

*United States v. Gillespie*,
   (9th Cir. 1988) 852 F.2d 475, 479 ...................................................... 9

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

*United States v. Knigge,*
  832 F.2d 1100 (9th Cir. 1987) ............................................................... 2

*United States v. Robinson,*
  341 Fed. Appx. 546 (11th Cir. 2009)...................................................... 2

*United States v. Wiggan,*
  700 F.3d 1204 (9th Cir. 2012) ............................................................... 6

State Court Cases

*Capitol City Foods, Inc. v. Superior Court,*
  5 Cal. App. 4th 1042 (Cal. App. 3d Dist. Apr. 27, 1992)...................... 7

*Chandler v. Vaccaro,*
  167 Cal. App. 2d 786 (Cal. App. 2d Dist. 1959)................................... 8

*Dixon v. City of Livermore,*
  127 Cal. App. 4th 32 (Cal. App. 1st Dist. Feb. 10, 2005) ................... 6

*Doe v. Capital Cities,*
  50 Cal. App. 4th 1038 (Cal. App. 2d Dist. Nov. 8, 1996)..................... 7

*Phillips v. Desert Hospital Dist.,*
  49 Cal. 3d 699 (Cal. Oct. 16, 1989)...................................................... 1

Federal Rules and Regulations

Fed. R. Evid. 103(c).................................................................................... 1

Fed. R. Evid. 403 ......................................................................................... 9

State Rules and Regulations

Evid. R. 403.................................................................................................. 9

DEFENDANT POP WARNER LITTLE SCHOLARS, INC.'S MOTION IN LIMINE NO. 4 TO EXCLUDE
SPECULATIVE TESTIMONY BY PLAINTIFFS REGARDING THE CAUSE OF THEIR SONS' DEATH

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Defendant anticipates plaintiffs will attempt to argue to the trier of fact that had the decedents not participated in Pop Warner Little Scholars football, they would not have contracted Chronic Traumatic Encephalopathy ("CTE") and thus would not have died. Plainly stated, the evidence is both irrelevant due, in large part, to its speculative nature, and is unduly prejudicial.[1] Indeed, there are a vast number of variables, possibilities and permutations which may have occurred, none of which have any evidentiary value and none of which properly inform the question of causation and thus liability.

## II.    AUTHORITY FOR MOTION *IN LIMINE*

Although the *Federal Rules of Evidence* do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials. *Federal Rules of Evidence* 103(c); *Luce v. United States*, (1984) 469 U.S. 38, 41. Rule 103(c) requires the trial court to conduct its proceedings in such a manner as to minimize the potential that the jury will hear inadmissible evidence. It suggests that arguments as to the admissibility of evidence be conducted out of the jury's presence, or at lease under circumstances such that the jury will not hear the argument. *United States v. Galin* (9th Cir. 2000) 222 F.3d 1123, 1126-1127. Accordingly, it is within the inherent power of this Court to hear and properly grant defendant's Motion *in Limine*. Such a determination is in accordance with well established law and would further principles of interest, justice

---

[1] Claims for Damages serve nothing more than to advise a municipality it should *investigate* a particular event in greater detail- it does not mean municipal business ceases. "It is well settled that the purpose of the claims statutes 'is to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation. [Citations.]' (*City of San Jose v. Superior Court* (1974) 12 Cal. 3d 447, 455 [115 Cal. Rptr. 797, 525 P.2d 701, 76 A.L.R.3d 1223].)" *Phillips v. Desert Hospital Dist.*, 49 Cal. 3d 699, 705 (Cal. Oct. 16, 1989).

DEFENDANT POP WARNER LITTLE SCHOLARS, INC.'S MOTION IN LIMINE NO. 4 TO EXCLUDE
SPECULATIVE TESTIMONY BY PLAINTIFFS REGARDING THE CAUSE OF THEIR SONS' DEATH

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  and fairness.  *Ohler v. United States* (2000) 529 U.S. 753, 758; *United States v.*
2  *Cook* (9th Cir. 1979) 608 F.2d 1175, 1186 (Matter should be left to trial court's
3  discretion "with a reminder that advance planning helps both parties and the court.")

4  **III.   PLAINTIFFS CANNOT OFFER SPECULATIVE TESTIMONY TO**
5  **PROVE      THEIR      ALLEGATIONS      THAT      THEIR      SONS'**
6  **PARTICIPATION IN POP WARNER FOOTBALL CAUSED THEIR**
7  **DEATHS**

8  Evidence must be concrete and cannot rely on "mere speculation, conjecture,
9  or fantasy." *O.S.C. Corp. v. Apple Computer, Inc.*, 792 F.2d 1464, 1467 (9th Cir.
10  1986). See also, *Trevino v. Gates*, 99 F.3d 911, 920 (9th Cir. 1996) (a party may not
11  "resort to inference, conjecture and speculation to explain events...")    Indeed,
12  speculative evidence has no probative force. *United States v. Knigge*, 832 F.2d
13  1100, 1109 (9th Cir. 1987). Permitting the jury to consider speculative evidence that
14  it was decedents' participation in Pop Warner football that caused them to develop
15  CTE which ultimately lead to their deaths would be unduly prejudicial and without
16  any probative value. "Unproven allegations have 'the obvious potential to cause
17  serious and unfair prejudice...'" *United States v. Robinson*, 341 Fed. Appx. 546,
18  548 (11th Cir. 2009).

19  **A.   Deposition Testimony of Jo Cornell Taken March 22, 2019**

20  Q: As you sit here today, you have no clue what caused your son's depression
21  and anxiety; is that what you're telling us?

22  A: I have come to believe, based on the University of Boston's report, that
23  Tyler suffered and obtained chronic traumatic encephalopathy as a result of playing
24  tackle football in Pop Warner Little Scholars' program.

25  Q: And you think that's responsible for all of the behaviors that you told us
26  about today?

27  (Objections)

28  A: I believe that it impacted Tyler's behavior.

**LEWIS**
**BRISBOIS**
**BISGAARD**
**& SMITH LLP**
ATTORNEYS AT LAW

4832-6452-2924.1                                             2                                   8:16-cv-00591-SVW-PLA

1    Q: The question is you believe—do you believe that what you just described,
2  that you learned from Boston University, is responsible for Tyler's depression and
3  anxiety?

4    A: Yes

5    (Objection)

6    Q: And do you believe that what you learned from Boston University is what
7  caused Tyler to shoot himself?

8    (Objection) You can answer.

9    A: Yes.

10    Q: When did you come to that belief?

11    A: January 15, 2016.

12    Q: Is that why you brought this lawsuit?

13    (Objection) Don't reveal privileged communication with your attorneys.

14    Q: I'm not asking her to do that.

15    (Objection) I'm just advising her.  Don't reveal privileged communications
16  with your attorneys.

17    A: It's privileged.

18    (Deposition of Jo Cornell 100:6 – 101:24 attached to Decl. of Hancock as
19  Exhibit A)

20    Q: So just going back over some of the questions and answers from before we
21  broke, you stated a belief to the effect that you came to the understanding in January
22  2016 that Tyler's participation in Pop Warner football led to his irrational behavior,
23  correct?  Did I understand you correctly?

24    A: Yes

25    Q: What caused you to believe that?  What caused you to reach that
26  conclusion?

27    A: The report from University of Boston detailing Tyler's CTE.

28    Q: Anything else specific?

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4832-6452-2924.1                                             3                              8:16-cv-00591-SVW-PLA
DEFENDANT POP WARNER LITTLE SCHOLARS, INC.'S MOTION IN LIMINE NO. 4 TO EXCLUDE
SPECULATIVE TESTIMONY BY PLAINTIFFS REGARDING THE CAUSE OF THEIR SONS' DEATH

1    A: No.

2    Q: Just that the record from University of Boston identified CTE?

3    A: Yes.

4    (Deposition of Jo Cornell 111:24 – 112:14 attached to Declaration of

5    Hancock as Exhibit A)

6    As support for this completely speculative and prejudicial testimony, Mrs.

7    Cornell was asked questions regarding the content of the Boston University Report

8    which further elucidated the speculative nature of her testimony:

9    Q: Do you have an understanding about suicidality in the context of your son?

10    (Objection) You can answer.

11    A: I know my son took his life by suicide.

12    Q: Dr. Mez[2]  said, (as read), he had six psychiatric hospitalizations for a

13    combination of reasons including suicidality.  Do you know whether your son

14    attempted to take his life before he committed suicide?

15    (Objection: "Asked and answered.  You can answer again.")

16    A: I don't know.

17    Q: Do you see the last sentence of the paragraph? It begins with, (as read) a

18    panel of clinicians.  Do you see that?

19    A: Yes

20    Q: He states, (as read), a panel of clinicians thought that the primary diagnosis

21    was bipolar disease and that chronic traumatic encephalopathy post-traumatic

22    stress disorder were contributing diagnoses. Do you see that?

23    A: Yes

24    Q: Do you understand what it means when Dr. Mez says the primary

25    diagnosis was bipolar disease?

26

27    [2] Dr. Jesse Mez authored portions of the Boston University Report which Ms.
Cornell relies upon for her conclusions as to the cause of her sons suicide.

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4832-6452-2924.1                                    4                          8:16-cv-00591-SVW-PLA
DEFENDANT POP WARNER LITTLE SCHOLARS, INC.'S MOTION IN LIMINE NO. 4 TO EXCLUDE
SPECULATIVE TESTIMONY BY PLAINTIFFS REGARDING THE CAUSE OF THEIR SONS' DEATH

1    (Objection)

2    Q: Do you understand?

3    A:  I don't know.

4    Q: You don't know what that means?

5    (Objection. You can answer)

6    A: I don't know.

7    Q: Do you have an understanding that what this is their summary of what they

8    believe led to our son's suicide?

9    (Objection)

10   A: I don't know.

11   Q: Do they mention Pop Warner football here anywhere?

12   (Objection)

13   A: It says that Tyler played ten years of football six of which were Pop

14   Warner.

15   Q: Does this conclusion say that Pop Warner football caused any of his

16   conditions?

17   (Objection)

18   A: It's the exposure.

19   Q: It doesn't say that in this conclusion, does it?

20   A: I don't know.

21   Q: Do you know how your son died?

22   A: Yes

23   Q: How did he die?

24   A: Gunshot wound.

25   Q: Who shot him?

26   (Objection)

27   A: Tyler shot himself.

28   Q: Where did he shoot himself?

DEFENDANT POP WARNER LITTLE SCHOLARS, INC.'S MOTION IN LIMINE NO. 4 TO EXCLUDE
SPECULATIVE TESTIMONY BY PLAINTIFFS REGARDING THE CAUSE OF THEIR SONS' DEATH

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    (Objection)

2    A: Oh, Tyler – in the head.

3    (Deposition of Jo Cornell 125:7 – 128:14 attached to Declaration of Hellkar-

4    Ann Hancock as Exhibit A)

5    Case law is clear. "The Court 'afford[s] no evidentiary weight to 'conclusory

6    allegations, empty rhetoric, unsupported speculation, or evidence which, in the

7    aggregate, is less than significantly probative.' *Tropigas de Puerto Rico, Inc. v.*

8    *Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011) (quoting

9    *Rogan v. City of Boston*, 267 F.3d 24, 27 (1st Cir. 2001)); accord *Sutliffe v. Epping*

10   *Sch. Dist.*, 584 F.3d 314, 325 (1st Cir. 2009); *Carroll v. Xerox Corp.*, 294 F.3d 231,

11   236-37 (1st Cir. 2002). Rather, the non-moving party must 'present 'enough

12   competent evidence' to enable a factfinder to decide in its favor on the disputed

13   claims.' *Carroll*, 294 F.3d at 237 (quoting *Goldman v. First Nat'l Bank of Boston*,

14   985 F.2d 1113, 1116 (1st Cir. 1993)). That clear standard cannot be met in the case

15   at bar. Accordingly, the Court should exclude plaintiffs' unsupported assertion that

16   their son's death was caused by his participation in Pop Warner football. See *United*

17   *States v. Wiggan*, 700 F.3d 1204, 1213 (9th Cir. 2012) (holding that evidence with

18   slight (if any) probative value must be excluded if there is even a modest likelihood

19   of unfair prejudice or a small risk of misleading the jury).

20   Case law is in support. See, for example, *Quezada v. Lindsey*, 2016 U.S. Dist.

21   LEXIS 14520, 16-17 (E.D. Cal. Feb. 5, 2016): "The fact that Plaintiff was instructed

22   to break up the ice formation in the freezers and to be 'careful' is circumstantial

23   evidence of knowledge on the part of Defendants that an unsafe condition existed in

24   the meat freezer at KVSP where Plaintiff was employed. Defendants' argument that

25   had Plaintiff followed their directions to break up the ice and put salt on the floor,

26   the accident would not have occurred is pure speculation, and Defendants cannot

27   shift blame to Plaintiff to cure an unsafe condition over which he had no control."

28   See, also, *Dixon v. City of Livermore*, 127 Cal. App. 4th 32, 47 (Cal. App. 1st Dist.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4832-6452-2924.1                6                8:16-cv-00591-SVW-PLA
DEFENDANT POP WARNER LITTLE SCHOLARS, INC.'S MOTION IN LIMINE NO. 4 TO EXCLUDE
SPECULATIVE TESTIMONY BY PLAINTIFFS REGARDING THE CAUSE OF THEIR SONS' DEATH

1  Feb. 10, 2005): "We agree with plaintiffs' expert Lehman that it is speculative to
2  conclude that the accident would not have occurred if Wings had acted differently in
3  managing the air show. Neither the trial court nor we may engage in such
4  speculation. (See *Saelzler, supra*, 25 Cal.4th at p. 781.)"; see, also, *Doe v. Capital*
5  *Cities*, 50 Cal. App. 4th 1038, 1052 (Cal. App. 2d Dist. Nov. 8, 1996), where
6  plaintiff's argument she would not have been raped had the assailant not been in a
7  supervisory position was characterized as "speculative" by the California Court of
8  Appeal, quoting *Capitol City Foods, Inc. v. Superior Court*, 5 Cal. App. 4th 1042,
9  1049-1050 (Cal. App. 3d Dist. Apr. 27, 1992).

10  **B.**   **Deposition Testimony of Kimberly Archie taken June 21, 2019:**

11  Although Ms. Archie's speculative assertion that Pop Warner caused her
12  son's death is not as overt, her conclusions are the same:

13  Q: So you told us about all the sports activities that Paul Jr was involved in --
14  Pop Warner, high school football, wrestling and there were several others.

15  (Objection)

16  A: Gymnastics and karate. He did karate for a year. Did you say basketball?

17  Q: You said basketball too.

18  A: Baseball?

19  Q: You said baseball too.

20  A: He played the guitar for a while.

21  Q: Let's talk about his sports for a minute. Does karate involve taking blows?

22  A: He was just a white belt so  no. They were just doing—they weren't
23  hitting each other yet.

24  Q: Does wrestling involve taking blows?

25  A: I imagine that there is some amount of force in wrestling on the ground.

26  Q: How about basketball? Is there contact in basketball?

27  A: There can be.

28  Q: And he played football in high school as well correct?

DEFENDANT POP WARNER LITTLE SCHOLARS, INC.'S MOTION IN LIMINE NO. 4 TO EXCLUDE
SPECULATIVE TESTIMONY BY PLAINTIFFS REGARDING THE CAUSE OF THEIR SONS' DEATH

1   A: Yeah. He played on the freshman team.  He played like three plays in a

2   game once.

3   Q: Did you watch?

4   A: I did go to his very first high school game but he didn't play so he was

5   ashamed.  He didn't want us to come back all the way to Reno.  He didn't get

6   to play.

7   Q: How come you only sued Pop Warner?

8   (Objection. Privilege)

9   Q: How do you know it was Pop Warner that caused whatever problem Paul

10   had, that you believe he had?

11   (Objection. Privilege)

12   Q: This is the factual basis for your lawsuit.  Do you believe Pop Warner

13   caused your son injury?  How do you know it was Pop Warner and not any of

14   his other activities?

15   (Objection)

16   A:  Am I supposed to answer?

17   (No)

18   (Deposition of Kimberly Archie 186:24 – 188:20 attached to Declaration of

19   Hancock as Exhibit B)

20   In short, there must be something more than a indiscriminate speculative

21   supposition to support the proposition plaintiff seeks to prove in the case at bar,

22   namely, that if her son had not participated in Pop Warner football, he would not

23   have committed suicide. As noted by one Court, "Dogs, like humans, are

24   unpredictable." *Chandler v. Vaccaro*, 167 Cal. App. 2d 786 (Cal. App. 2d Dist.

25   1959).

26   There are a great number of explanations as to why any given event may have

27   occurred, but plaintiff should be restricted to admissible evidence and facts when

28   crafting such arguments.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

## IV. THE EVIDENCE IS UNDULY PREJUDICIAL

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. Rules Evid. R. 403.

"'Unfair prejudice" generally connotes an undue tendency to suggest a trier's decision on an improper basis. Fed. R. Evid. 403, advisory committee's note.) In *United States v. Bailleaux* (9th Cir. 1982) 685 F.2d 1105, 1111 n.2, the Court observed: "'[U]nfair prejudice' means that the evidence not only has a significant impact on the defendant's case . . . but that its admission results in some unfairness to the defendant because of its non-probative aspect." Accordingly, trial courts should exclude marginally relevant but extremely prejudicial evidence. *United States v. Gillespie* (9th Cir. 1988) 852 F.2d 475, 479.

Even if plaintiffs' position that their sons' participation in Pop Warner football caused their deaths had nominal probative value, it would be highly prejudicial to the Defendant to allow the trier to consider it as a *possibility*; indeed, it is nothing more than that. First, the jury would conclude the alleged inadequacies described by plaintiffs in the Pop Warner program actually existed without adequately considering the entire universe of evidence, and, consequently, it would tend to redound adversely to the Defendant. Second, it would be difficult for Defendant to meaningfully respond to such speculative allegations in a cogent fashion without engaging in a mini-trial describing why this unfounded and plainly conjectural assertion did not pass muster, an unnecessary endeavor given the extremely limited probative value the "evidence" possesses, and the limited time the parties have been allotted to try the case.

///

///

///

DEFENDANT POP WARNER LITTLE SCHOLARS, INC.'S MOTION IN LIMINE NO. 4 TO EXCLUDE SPECULATIVE TESTIMONY BY PLAINTIFFS REGARDING THE CAUSE OF THEIR SONS' DEATH

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  **V.**  **CONCLUSION**

2      For the foregoing reasons, Defendant respectfully requests the Court to grant

3  this Motion in its entirety.

4

5  DATED: November 2̲5̲2019      LEWIS BRISBOIS BISGAARD & SMITH LLP

6

7

8                                      By:      */s/ Hellar-Ann Hancock*

9                                             Dana A. Fox

10                                             Hellar-Ann Hancock

                                           Laura Free

11                                             Attorneys for Defendant POP WARNER LITTLE SCHOLARS

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT POP WARNER LITTLE SCHOLARS, INC.'S MOTION IN LIMINE NO. 4 TO EXCLUDE SPECULATIVE TESTIMONY BY PLAINTIFFS REGARDING THE CAUSE OF THEIR SONS' DEATH

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

## DECLARATION OF HELLAR-ANN HANCOCK

I, Hellar-Ann Hancock, declare as follows:

1.      I am an attorney duly admitted to practice in all of the courts of the State of California and I am a partner with Lewis Brisbois Bisgaard & Smith LLP, attorneys of record for Defendant, POP WARNER LITTLE SCHOLARS ("Defendant"). The facts set forth herein are of my own personal knowledge, and if sworn I could and would competently testify thereto.

2.      Defendant maintains that the evidence at issue has no relevance given its purely speculative nature, and should be excluded on that ground alone. Further, if the evidence were to be considered by the trier, it would result in undue prejudice. The jury would be asked to treat speculative evidence as fact, and the defense, in an effort to counter it, would be compelled to engage in a number of mini-trials, which would have no real benefit to the trier of fact's deliberations on the question of liability. Further, the "evidence" is likely to provoke an emotional response from the jury, and would prevent them from considering the actions were they are being asked to consider in the case at bar.

3. True and correct excerpts of the Deposition of Jo Cornell are attached hereto as Exhibit A.

4. True and correct excerpts of the Deposition of Kimberly Archie are attached hereto as Exhibit B.

5. This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on November 12, 2019.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this Declaration was executed on November 2019, at Los Angeles, California.

_/s/ Hellar-Ann Hancock_
HELLAR-ANN HANCOCK

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4832-6452-2924.1                                          2                              8:16-cv-00591-SVW-PLA
DEFENDANT POP WARNER LITTLE SCHOLARS, INC.'S MOTION IN LIMINE NO. 4 TO EXCLUDE
SPECULATIVE TESTIMONY BY PLAINTIFFS REGARDING THE CAUSE OF THEIR SONS' DEATH

**EXHIBIT A**

Page 1

1              UNITED STATES DISTRICT COURT

2        CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

3

4    KIMBERLY ARCHIE, et al.,            )

                                         )

5                    Plaintiffs,         )

                                         )

6               vs.                      )   No. 2:16-cv-06603-

                                         )       PSG-PLA

7    POP WARNER LITTLE SCHOLARS,         )

     INC., et al.,                       )

8                                        )

                     Defendants.         )

9    _____)

10

11

12

13

14            VIDEOTAPED DEPOSITION OF JO CORNELL, taken on

15   behalf of the Defendants, at 555 South Flower Street,

16   Suite 2900, Los Angeles, California, commencing at

17   10:07 a.m., Friday, March 22, 2019, before ZINA TALLANT,

18   Certified Shorthand Reporter No. 13341.

19

20

21

22

23

24

25   Job No. CS3261751

Page 100

1          What do you believe his depression and anxiety

2     was caused by?

3          MR. MORY:  Asked and answered.

4          THE WITNESS:  I'm not a medical expert.  I --

5     BY MR. CORLETO:

6     Q     As you sit here today, you have no clue what

7     caused your son's depression and anxiety; is that what

8     you're telling us?

9          MR. MORY:  Can I have the question read.

10    Thank you.

11              (Question read back.)

12         MR. MORY:  Thank you.

13         THE WITNESS:  I have come to believe, based on

14    the University of Boston's report, that Tyler suffered

15    and obtained chronic traumatic encephalopathy as a

16    result of playing tackle football in Pop Warner Little

17    Scholars program.

18    BY MR. CORLETO:

19    Q     And you think that's responsible for all of

20    the behaviors that you told us about today?

21         MR. MORY:  Same objections.

22         You can answer.

23         THE WITNESS:  I believe that it impacted

24    Tyler's behavior.

25    ///

Page 101

1   BY MR. CORLETO:

2       Q    The question is you believe -- do you believe

3   that what you just described, that you learned from

4   Boston University, is responsible for Tyler's depression

5   and anxiety?

6       A    Yes.

7            MR. MORY:  Object to form.

8   BY MR. CORLETO:

9       Q    And do you believe that what you learned from

10  Boston University is what caused Tyler to shoot himself?

11           MR. MORY:  Object to form.

12           You can answer.

13           THE WITNESS:  Yes.

14  BY MR. CORLETO:

15      Q    When did you come to that belief?

16      A    January 15, 2016.

17      Q    And is that why you brought this lawsuit?

18           MR. MORY:  Object to form.

19           Don't reveal privileged communication with

20  your attorneys.

21           MR. CORLETO:  I'm not asking her to do that.

22           MR. MORY:  I'm just advising her.  Don't

23  reveal privileged communications with your attorneys.

24           THE WITNESS:  It's privileged.

25  ///

Page 111

1    team would have.

2         Q    What was your involvement with Pop Warner

3    football between 1997 and 2001?

4         A    I recall being phone tree mom.

5         Q    Explain that.

6         A    That is to call parents by telephone for

7    communications, should anything need to be relayed

8    to families.

9         Q    Scheduling events and things like that?

10        A    Yes.

11             MR. MORY:  Object to form.

12             Let's go off the record for a moment.

13             MR. CORLETO:  Let's do.  Do you want to take a

14   lunch break?

15             MR. MORY:  I don't know.  Let's see.

16             THE REPORTER:  We're not off the record yet.

17             THE VIDEOGRAPHER:  Standby, please.

18             We're going off the record.  The time is

19   12:50 p.m.

20                        (Lunch recess.)

21             THE VIDEOGRAPHER:  We are going back on the

22   record.  The time is 1:47 p.m.

23   BY MR. CORLETO:

24        Q    So just going back over some of the questions

25   and answers from before we broke, you stated a belief to

Page 112

1    the effect that you came to the understanding in January

2    of 2016 that Tyler's participation in Pop Warner

3    football led to his irrational behavior, correct?  Did I

4    understand you correctly?

5         A    Yes.

6         Q    What caused you to believe that?  What caused

7    you to reach that conclusion?

8         A    The report from University of Boston detailing

9    Tyler's CTE.

10        Q    Anything else specific?

11        A    No.

12        Q    Just that the record from University of Boston

13   identified CTE?

14        A    Yes.

15        Q    Who diagnosed Tyler with depression in 2007?

16             MR. MORY:  Asked and answered.

17             THE WITNESS:  I believe it was Dr. Elmashat.

18   BY MR. CORLETO:

19        Q    In 2007?

20        A    Yes.

21        Q    Okay.  Did he seek treatment for mental health

22   issues before 2007?

23             MR. MORY:  Object to form.  Foundation.  You

24   can answer.

25             THE WITNESS:  No.

Page 125

```
1    BY MR. CORLETO:
2        Q    You have no understanding about suicidality?
3        A    Not in the context of a medical report.
4        Q    What about in the context of your son?
5             MR. MORY:  What about it?
6    BY MR. CORLETO:
7        Q    Do you have an understanding about suicidality
8    in the context of your son?
9             MR. MORY:  Object to form.  Vague.
10            You can answer.
11            THE WITNESS:  I know my son took his life by
12   suicide.
13   BY MR. CORLETO:
14       Q    Dr. Mez said, (as read), he had six
15   psychiatric hospitalizations for a combination of
16   reasons including suicidality.
17            Do you know whether your son attempted to take
18   his life before he committed suicide?
19            MR. MORY:  Asked and answered.
20            You can answer again.
21            THE WITNESS:  I don't know.
22   BY MR. CORLETO:
23       Q    Do you see the last sentence of the paragraph?
24   It begins with, (as read), a panel of clinicians.
25            Do you see that?
```

Page 126

1      A      Yes.

2      Q      He states, (as read), a panel of clinicians

3   thought that the primary diagnosis was bipolar disease

4   and that chronic traumatic encephalopathy post-traumatic

5   stress disorder were contributing diagnoses.

6           Do you see that?

7      A      Yes.

8      Q      Have you read that sentence before?

9      A      I don't remember.  I don't recall.

10     Q      Have you seen this page before today?

11          MR. MORY:  Asked and answered.  She said --

12          THE WITNESS:  I don't recall.

13  BY MR. CORLETO:

14     Q      Do you understand what it means when Dr. Mez

15  says the primary diagnosis was bipolar disease?

16          MR. MORY:  Object to form.  Calls for expert

17  testimony.

18  BY MR. CORLETO:

19     Q      Do you understand?

20     A      I don't know.

21     Q      You don't know what that means?

22          MR. MORY:  Asked and answered.

23          You can answer.

24          THE WITNESS:  I don't know.

25  ///

Page 127

1    BY MR. CORLETO:

2        Q    Do you have an understanding that what this is

3    is their summary of what they believe led to your son's

4    suicide?

5            MR. MORY:  Object to form.  Lacks foundation.

6            THE WITNESS:  I don't know.

7    BY MR. CORLETO:

8        Q    Do they mention Pop Warner football here

9    anywhere?

10           MR. MORY:  You can read it.

11           THE WITNESS:  It says that Tyler played ten

12   years of football, six of which were Pop Warner.

13   BY MR. CORLETO:

14       Q    Does this conclusion say that Pop Warner

15   football caused any of his conditions?

16           MR. MORY:  Object to form.  Lacks foundation.

17           You can answer.

18           THE WITNESS:  It's the exposure.

19   BY MR. CORLETO:

20       Q    It doesn't say that in this conclusion, does

21   it?

22           MR. MORY:  Object to form.

23           THE WITNESS:  I don't know.

24   BY MR. CORLETO:

25       Q    Do you know how your son died?

Page 128

1    A    Yes.

2    Q    How did he die?

3    A    Gunshot wound.

4    Q    Who shot him?

5         MR. MORY:  Object to form.  Argumentative.

6         You can answer.

7         THE WITNESS:  Tyler shot himself.

8    BY MR. CORLETO:

9    Q    Where did he shoot himself?

10        MR. MORY:  Object to form.

11        You can answer.

12        THE WITNESS:  Tyler --

13        MR. MORY:  The question is where.

14        THE WITNESS:  Oh.  Tyler -- in the head.

15   BY MR. CORLETO:

16   Q    And where did this occur?

17   A    West Covina, California.

18   Q    Specifically where in West Covina, California?

19   A    1228 Montezuma Way, West Covina, California.

20   Q    What's significant about that address?

21        MR. MORY:  Object to form.  Lacks foundation.

22   Vague.

23        THE WITNESS:  It was grandparents' home.

24   BY MR. CORLETO:

25   Q    Your parents?

Page 195

1             DEPOSITION OFFICER'S CERTIFICATE

2

3    STATE OF CALIFORNIA            )
                                    )   ss.
4    COUNTY OF _____)

5

6             I, Zina Tallant, hereby certify:

7             I am a duly qualified Certified Shorthand

8    Reporter in the State of California, holder of

9    Certificate Number CSR 13341 issued by the Court

10   Reporters Board of California and which is in full force

11   and effect.  (Fed. R. Civ. P. 28(a)).

12            I am authorized to administer oaths or

13   affirmations pursuant to California Code of Civil

14   Procedure, Section 2093(b), and prior to being examined,

15   the witness was first duly sworn by me.  (Fed. R. Civ.

16   P. 28(a), 30(f)(1)).

17            I am not a relative or employee or attorney or

18   counsel of any of the parties, nor am I a relative or

19   employee of such attorney or counsel, nor am I

20   financially interested in this action.  (Fed. R. Civ. P.

21   28).

22            I am the deposition officer that

23   stenographically recorded the testimony in the foregoing

24   deposition and the foregoing transcript is a true record

25

Page 196

1    of the testimony given by the witness.  (Fed. R. Civ. P.

2    30(f)(1)).

3              Before completion of the deposition, review of

4    the transcript [X] was [  ] was not requested.  If

5    requested, any changes made by the deponent (and

6    provided to the reporter) during the period allowed, are

7    appended hereto.  (Fed. R. Civ. P. 30(e)).

8

9    Dated: April 5, 2019

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**EXHIBIT B**

Page 1

1              UNITED STATES DISTRICT COURT

2      CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

3

4    KIMBERLY ARCHIE, et al.,            )
                                          )
5                   Plaintiffs,          )
                                          )
6              vs.                        )   No. 2:16-cv-06603-
                                          )        PSG-PLA
7    POP WARNER LITTLE SCHOLARS,         )
     INC., et al.,                        )
                                          )
8                                         )
                    Defendants.          )
9    _____)

10

11

12

13

14         VIDEOTAPED DEPOSITION OF KIMBERLY ARCHIE,

15   taken on behalf of the Defendants, at 555 South Flower

16   Street, Suite 2900, Los Angeles, California, commencing

17   at 9:58 a.m., Friday, June 21, 2019, before

18   ZINA TALLANT, Certified Shorthand Reporter No. 13341.

19

20

21

22

23

24

     Job No. CS3426970

25

Page 186

1    Sons are a little bit kinder with their moms, you know.

2         Q     When we were looking at the clinical report

3    from BU before, you said that you had not read that, but

4    you had read the other part, the pathology.

5         A     Yeah.  That's what they sent us.

6         Q     Do you recall whether you agreed or disagreed

7    with any parts of that report?

8         A     The pathology report?

9         Q     Correct.

10        A     I mean, I just read it for face value what it

11   is.  I mean, I'm not a neuropathologist.

12        Q     Were you satisfied with what they did from a

13   neuropathology report perspective?

14        A     It was good to have some answers.  It's always

15   good to improve science.  Do better.

16        Q     Did Paul have a chiropractor?

17        A     He did.

18        Q     Who was the chiropractor?

19        A     I don't remember the name off the top of my

20   head, but I believe we provided that.  It was right by

21   the deli.

22        Q     That he worked at?

23        A     Yeah.  The chiropractor was near the deli.

24        Q     So you told us about all the sports activities

25   that Paul Jr. was involved in -- Pop Warner, high school

Page 187

1    football, wrestling, and there were several others.

2         MR. FINNERTY:  Objection as to form.

3         THE WITNESS:  Gymnastics and karate.  He did

4    karate for a year.  Did you say basketball?

5    BY MR. CORLETO:

6         Q    You said basketball too.

7         A    Baseball?

8         Q    You said baseball too.

9         A    He played the guitar for a while.

10        Q    Let's talk about his sports for a minute.

11             Does karate involve taking blows?

12        A    He was just a white belt, so no.  They were

13   just doing -- they weren't hitting each other yet.

14        Q    Does wrestling involve taking blows?

15        A    I imagine that there is some amount of force

16   in wrestling on the ground.

17        Q    How about basketball?  Is there contact in

18   basketball?

19        A    There can be.

20        Q    And he played football in high school as well,

21   correct?

22        A    Yeah.  He played on the freshman team.  He

23   played like three plays in a game once.

24        Q    Did you watch?

25        A    I did go to his very first high school game,

Page 188

1   but he didn't play so he was ashamed.  He didn't want us

2   to come back all the way to Reno.  He didn't get to

3   play.

4        Q    How come you only sued Pop Warner?

5             MR. FINNERTY:  Objection.  Privilege.

6             THE WITNESS:  I relied on the attorneys to

7   decide anything like that.

8   BY MR. CORLETO:

9        Q    How do you know it was Pop Warner that caused

10  whatever problem Paul had, that you believe he had?

11            MR. FINNERTY:  Objection.  Privilege.

12  BY MR. CORLETO:

13       Q    This is the factual basis for your lawsuit.

14            Do you believe Pop Warner caused your son

15  injury?  How do you know it was Pop Warner and not any

16  of his other activities?

17            MR. FINNERTY:  Objection as to form and

18  privilege.

19            THE WITNESS:  Am I supposed to answer?

20            MR. FINNERTY:  No.

21            MR. CORLETO:  Your instruction is improper,

22  Counsel.

23            MR. FINNERTY:  Thank you.  I think your

24  question was improper, so --

25  ///

Page 199

1               DEPOSITION OFFICER'S CERTIFICATE

2

3   STATE OF CALIFORNIA          )
                                 )  ss.
4   COUNTY OF _____)

5

6           I, Zina Tallant, hereby certify:

7           I am a duly qualified Certified Shorthand

8   Reporter in the State of California, holder of

9   Certificate Number CSR 13341 issued by the Court

10  Reporters Board of California and which is in full force

11  and effect.  (Fed. R. Civ. P. 28(a)).

12          I am authorized to administer oaths or

13  affirmations pursuant to California Code of Civil

14  Procedure, Section 2093(b), and prior to being examined,

15  the witness was first duly sworn by me.  (Fed. R. Civ.

16  P. 28(a), 30(f)(1)).

17          I am not a relative or employee or attorney or

18  counsel of any of the parties, nor am I a relative or

19  employee of such attorney or counsel, nor am I

20  financially interested in this action.  (Fed. R. Civ. P.

21  28).

22          I am the deposition officer that

23  stenographically recorded the testimony in the foregoing

24  deposition and the foregoing transcript is a true record

25                          ///

1   of the testimony given by the witness.   (Fed. R. Civ. P.

2   30(f)(1)).

3          Before completion of the deposition, review of

4   the transcript [ ] was [X] was not requested.   If

5   requested, any changes made by the deponent (and

6   provided to the reporter) during the period allowed, are

7   appended hereto.   (Fed. R. Civ. P. 30(e)).

8

9   Dated:

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1   Kimberly Archie v. Pop Warner Little Scholars, Inc. - Case No. 2:16-cv-06603-PSG-PLA

2   STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3        At the time of service, I was over 18 years of age and not a party to the action. My business address is 633 West 5th Street, Suite 4000, Los Angeles, CA 90071. I am employed in the office of a member of the bar of this Court at whose direction the service was made.

6        On November 22, 2019, I served the following document(s):  DEFENDANT POP WARNER LITTLE SCHOLARS, INC.'S MOTION IN LIMINE NO. 4 TO EXCLUDE SPECULATIVE TESTIMONY BY PLAINTIFFS REGARDING THE CAUSE OF THEIR SONS' DEATHS; DECLARATION OF HELLAR-ANN HANCOCK

9        I served the documents on the following persons at the following addresses (including fax numbers and e-mail addresses, if applicable):

**SEE ATTACHED SERVICE LIST**

The documents were served by the following means:

☒   (BY U.S. MAIL)  I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses listed above and I deposited the sealed envelope or package with the U.S. Postal Service, with the postage fully prepaid.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on November 22, 2019, at Los Angeles, California.

/s/ Tania Moore
Tania Moore

**SERVICE LIST**
**Kimberly Archie v. Pop Warner Little Scholars, Inc.**
**2:16-cv-06603-PSG-PLA**

| | |
|---|---|
| Robert W. Finnerty, Esq.<br>Law Offices of Robert W. Finnerty<br>16001 Ventura Blvd.<br>Encino, CA 91436<br>Telephone: (747) 214-4182<br>rfinnerty@girardikeese.com | *Attorneys for Plaintiff*<br>Jo Cornell |
| Christopher E. Brumfiel, Esq.<br>Robert B. Lueck, Esq.<br>BOORNAZIAN, JENSEN & GARTHE<br>A Professional Corporation<br>555 12th Street, Suite 1800<br>Oakland, CA 94607<br>Telephone: (510) 834-4350<br>Fax: (510) 839-1897<br>cbrumfiel@bjg.com<br>rlueck@bjg.com<br>**(Via Mail)** | *Attorneys for Defendant*<br>Pop Warner Little Scholars, Inc. |
| Ian A. Stewart, Esq.<br>Patrick M. Kelly, Esq.<br>WILSON ELSER MOSKOWITZ<br>EDELMAN & DICKER, LLP<br>555 South Flower Street, Suite 2900<br>Los Angeles, CA 90071-2407<br>Telephone: (213) 443-5100<br>Fax: (213) 443-5101<br>ian.stewart@wilsonelser.com<br>Patrick.kelly@wilsonelser.com | *Attorneys for Defendant*<br>Pop Warner Little Scholars, Inc. |
| Anthony B. Corleto, Esq.<br>WILSON ELSER MOSKOWITZ<br>EDELMAN & DICKER, LLP<br>1010 Washington Boulevard<br>Stamford, Connecticut 06901<br>Telephone: (203) 288-2404<br>Fax: (203) 388-9101<br>anthony.corleto@wilsonelser.com<br>(Admitted Pro Hac Vice) | *Attorneys for Defendant*<br>Pop Warner Little Scholars, Inc. |

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

DEFENDANT POP WARNER LITTLE SCHOLARS, INC.'S MOTION IN LIMINE NO. 4 TO EXCLUDE
SPECULATIVE TESTIMONY BY PLAINTIFFS REGARDING THE CAUSE OF THEIR SONS' DEATH