**LEWIS BRISBOIS BISGAARD & SMITH LLP**
DANA ALDEN FOX, SB# 119761
  E-Mail: Dana.Fox@lewisbrisbois.com
HELLAR-ANN HANCOCK, SB# 117075
  E-Mail: Hellar-Ann.Hancock@lewisbrisbois.com
LAURA A. FREE, SB# 311453
  E-Mail: Laura.Free@lewisbrisbois.com
633 West 5th Street, Suite 4000
Los Angeles, California 90071
Telephone: 213.250.1800
Facsimile: 213.250.7900

Attorneys for Defendant, POP WARNER
LITTLE SCHOLARS, INC., a nonprofit
corporation

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| KIMBERLY ARCHIE, as survivor of decedent Paul Bright Jr., JO CORNELL, as survivor of decedent Tyler Cornell, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>POP WARNER LITTLE SCHOLARS, INC., a nonprofit corporation; NATIONAL OPERATING COMMITTEE ON STANDARDS ATHLETIC EQUIPMENT, a nonprofit organization; USA FOOTBALL, a foreign nonprofit corporation, and DOES 1-100,<br><br>Defendants. | CASE NO. 2:16-CV-06603-PSG-PLA<br><br>**DEFENDANT POP WARNER LITTLE SCHOLARS, INC.'S MOTION IN LIMINE NO. 5 TO EXCLUDE REFERENCE TO KIMBERLY ARCHIE'S ALLEGED TRAUMATIC BRAIN INJURY AND TIFFANY BRIGHT'S ALLEGED UNDIAGNOSED TRAUMATIC BRAIN INJURY; DECLARATION OF HELLAR-ANN HANCOCK**<br><br>*[Filed concurrently with [Proposed] Order]*<br><br>The Hon. Judge Philip S. Gutierrez<br><br>Pretrial Conf.: January 6, 2020<br>Trial Date:    January 14, 2020 |

///

///

///

///

4842-2812-6123.1

LEWIS BRISBOIS BISGAARD & SMITH LLP
ATTORNEYS AT LAW

1      TO THIS HONORABLE COURT AND TO PLAINTIFFS AND THEIR
2 COUNSEL OF RECORD:

3      **PLEASE TAKE NOTICE** that on **January 14, 2020** at 9:00 a.m., or as soon
4 thereafter as counsel may be heard in Courtroom 6A of the above entitled court,
5 located at 350 West 1st Street, 6th Floor, Los Angeles, California 90012-4565,
6 Defendant POP WARNER LITTLE SCHOLARS ("Defendant") will and hereby
7 does move the Court for an Order *in limine* to exclude any reference to Kimberly
8 Archie's alleged traumatic brain injury ("TBI") and to Tiffany Bright's alleged,
9 undiagnosed concussion/traumatic brain injury, as irrelevant, speculative and more
10 prejudicial than probative.

11      This Motion is supported by this Notice, the Memorandum of Points and
12 Authorities attached, the Declaration of Hellar-Ann Hancock and supporting
13 exhibits, the Court's files, and such further evidence and argument as the Court may
14 require at the hearing.

15

16 DATED: November ⸺, 2019     LEWIS BRISBOIS BISGAARD & SMITH LLP

17

18                   By:     */s/ Hellar-Ann Hancock*
19                       Hellar-Ann Hancock
                      Attorneys for Defendant, POP WARNER
20                       LITTLE SCHOLARS

21

22

23

24

25

26

27

28


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES ...............................................1

I. INTRODUCTION ...........................................................................................1

II. FACTUAL BACKGROUND ...........................................................................2

III. THE EVIDENCE IS IRRELEVANT ..............................................................5

IV. THE EVIDENCE WOULD UNFAIRLY PREJUDICE
    DEFENDANTS, WASTE TIME, AND CONFUSE THE ISSUES ...............8

    A. The Evidence Would Waste Time...........................................................9

V. CONCLUSION................................................................................................9

DECLARATION OF HELLAR-ANN HANCOCK ............................................ 10

# TABLE OF AUTHORITIES

## Federal Court Cases

*Ash v. Deschutes Cty.,*
No. 6:12-cv-02109-TC, 2014 U.S. Dist. LEXIS 110653 (D. Or. May 29, 2014) ............................................................................................... 5

*Ballou v. Henri Studios,*
656 F.2d 1147 (5th Cir. 1981) ................................................................... 8

*Liew v. Official Receiver and Liquidator,*
685 F. 2d 1192 (9th Cir. 1982) ................................................................. 8

*Old Chief v. United States,*
519 U.S. 172 (1997) .................................................................................. 8

*U.S. v. Lyons,*
472 F.3d 1055 (9th Cir. 2006) .................................................................. 8

*United States v. LeMay,*
260 F.3d 1018 (9th Cir. 2001) .................................................................. 8

*United States v. Schaff,*
948 F.2d 501 (9th Cir. 1991) .................................................................... 5

## Federal Rules and Regulations

Fed. R. Evid. 401 ............................................................................................. 5

Fed. R. Evid. 402 ............................................................................................. 5

Fed. R. Evid. 403 .......................................................................................... 8, 9

4842-2812-6123.1

ii

DEFENDANT POP WARNER LITTLE SCHOLARS, INC.'S MOTION IN LIMINE NO. 5 TO EXCLUDE REFERENCE TO KIMBERLY ARCHIE'S ALLEGED TRAUMATIC BRAIN INJURY AND TIFFANY BRIGHT'S ALLEGED UNDIAGNOSED TRAUMATIC BRAIN INJURY

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This action arises out of the death Plaintiff, Kimberly Archie's son, Paul Bright Jr., and Jo Cornell's son, Tyler Cornell, which Plaintiffs claim was due to their participation in Pop Warner football from 1997 through 2004.[1]   Plaintiffs allege both decedents suffered sub-concussive blows during their participation in Pop Warner football and ultimately developed Chronic Traumatic Encephalopathy ("CTE")[2] which lead to their reckless and erratic behavior and ultimately their deaths via motorcycle accident and suicide.

At the time of Plaintiff Archie's deposition, she testified she too had suffered traumatic brain injury on two separate occasions and has suffered from brain dysfunction ever since.   Ms. Archie also testified her daughter, Tiffany Bright suffered a concussion which was never diagnosed during the course of her cheerleading activities. This testimony is completely irrelevant to a jury's ultimate determination of whether decedent's participation in Pop Warner football lead to their untimely deaths in 2014 and is more prejudicial than probative.

Consequently plaintiffs must be precluded from introducing any evidence that Kimberly Archie suffered traumatic brain injury on two separate occasions.   This evidence should also be excluded because it is completely speculative on the part of Archie as she has not been diagnosed with traumatic brain injury by any physician and/or sought any medical treatment for this undocumented condition.   Thus this evidence is wholly irrelevant to the issues.

---

[1] Neither Archie's ex-husband, Paul Bright, Sr., nor Jo Cornell's husband, Craig Cornell, are Plaintiffs in this lawsuit.

[2] CTE is allegedly caused by blows to the head and/or repetitive sub-concussive blows which allegedly can lead to traumatic brain injury

DEFENDANT POP WARNER LITTLE SCHOLARS, INC.'S MOTION IN LIMINE NO. 5 TO EXCLUDE REFERENCE TO KIMBERLY ARCHIE'S ALLEGED TRAUMATIC BRAIN INJURY AND TIFFANY BRIGHT'S ALLEGED UNDIAGNOSED TRAUMATIC BRAIN INJURY

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

## II. FACTUAL BACKGROUND

Plaintiffs filed a class action lawsuit initially on September 1, 2016 against Pop Warner Little Scholars, National Operating Committee on Standards and USA Football. Both the National Operating Committee and USA Football have been dismissed.

On November 20, 2017, Plaintiffs filed their Third Amended Complaint ("TAC") against Pop Warner only. The TAC was filed by Plaintiffs in their individual capacities as well as on behalf of a class of persons who participated in the Pop Warner youth tackle football program from 1997 to present and sustained injuries as a result of their participation in the Pop Warner tackle football program.

Plaintiffs moved for class certification on July 26, 2019. On September 11, 2019 the District Court denied Plaintiff's Motion. Therefore the remaining allegations in the seven Causes of Action are on behalf of the two individual plaintiffs.

The TAC alleges Pop Warner has a duty to ensure its tackle football programs are reasonably safe for youths who play the sport (allegedly as young as five years old). Plaintiffs allege over 400,000 children play in Pop Warner football leagues each year across 42 states.

Plaintiffs allege Pop Warner has purportedly misrepresented and concealed facts regarding the safety of tackle football for its youth players and the safety of the NOCSAE certified helmet Pop Warner mandates its players wear. Pop Warner mandates its players wear helmets bearing the seal of approval of the National Operating Committee on Standards for Athletic Equipment ("NOCSAE") and that each helmet bears a sticker certifying it complies with NOCSAE standards.

The TAC alleges two problems with regard to the NOCSAE certification[3].

---

[3] The helmet manufacturer has not been named as a Defendant.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1 First, the TAC alleges NOCSAE standards are not specific to children whose brains
2 are still developing and are more susceptible to injury than adults.[4] The second
3 allegation is there are insufficient NOCSAE tests to determine the effect an impact
4 to a helmet will have on its wearer. Through mathematical calculations and physical
5 tests, the helmet is assigned a score on a Severity Index of 1 to 1200. The higher the
6 severity score, the more likely the wearer will experience a concussion or other head
7 injuries.

8 Plaintiffs claim Pop Warner has known (since November 2000) a blow to the
9 head measuring as low as 559 on the Severity Index results in a 95% chance of a
10 concussion. Plaintiffs claim Pop Warner failed to inform its players or their parents
11 that a helmet bearing the NOCSAE certification may not protect the wearer from a
12 concussion and/or sub-concussive blows. Plaintiffs also allege Pop Warner failed to
13 warn parents and players that although players are wearing helmets, there remains
14 the possibility of brain injury and concussions.

15 Plaintiffs allege the NOCSAE certification and Pop Warner's representation
16 as a "safety-first" organization creates a false sense of security for youth football
17 players and their parents, who equate the NOCSAE seal of approval and Pop
18 Warner's "safety first" motto with safety.

19 Plaintiffs further allege although Pop Warner represents its coaches are
20 properly trained in safe tackling procedures, Pop Warner does not verify whether
21 coaches have in fact received such training. In addition, Plaintiffs allege Pop
22 Warner does not employ any personnel with a medical background, athletic training
23 background, or physical education background.

24 Finally, Plaintiffs allege they paid funds to purchase equipment and travel to

25

26
---
[4] NOCSAE has never had a specific standard for youth helmets and has stopped all
27 efforts to develop one because in their view the science does not permit.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1 games in reliance on Pop Warner's public statements and advertisements touting
2 youth tackle football as safe due to the coach's training and proper equipment.
3 Plaintiffs allege they would not have enrolled their children in Pop Warner, but for
4 these statements and advertisements.

5 Paul Bright, Jr.

6 Paul Bright, Jr. ("Bright") played for Sparks Pop Warner Steelers in Sparks,
7 Nevada from 1997 though 2004. According to the TAC, Bright's erratic and
8 reckless behavior started in 2008, a few years after he ceased playing Pop Warner
9 football. Bright's father, Paul Bright, Sr. ("Bright Sr.") coached Bright in Pop
10 Warner football and contradicted this allegation.

11 Bright died in a motorcycle accident on September 1, 2014 in Reseda,
12 California. The police report and several percipient witnesses concluded Bright was
13 traveling at a high rate of speed over and above the speed limit when he struck a
14 turning vehicle which caused him to eject from his motorcycle and suffer traumatic
15 injuries which resulted in his nearly immediate death.

16 Bright Jr.'s divorced parents, Kimberly Archie and Bright Sr., jointly agreed
17 to donate Bright's brain to Boston University ("B.U."), which concluded Bright
18 suffered from Stage I CTE.[5]

19 Tyler Cornell

20 Tyler Cornell played football for Wescon Region, Palamar Pop Warner
21 conference, Rancho Bernardo Association in San Diego, California from 1997
22 through 2002. According to the TAC, Tyler Cornell began experiencing behavior

23 ───────────────

24 [5] Stage I CTE is the earliest of the four stages of CTE. Stage I is generally
characterized by evidence of mild brain tissue degeneration and deposits of four and
25 other proteins at certain locations in the rain. CTE can only be diagnosed post-
mortar on an autopsy of the brain mild enlargement of the lateral ventricles or third
26 ventricle and/or mild septal abnormalities in the brain. Corsellis J. Bruton, *Current
Understanding of Chronic Traumatic Encephalopathy*, (2014),
27 https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4255271/

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1 | issues and was diagnosed with depression years after playing for Pop Warner
2 | football. According to medical records, Tyler Cornell began suffering from
3 | psychotic disorders in early 2009 and was later diagnosed with bipolar disorder.

4 | On April 3, 2014 Cornell committed suicide at his grandmother's house in
5 | West Covina with his cousin's gun.

6 | Jo and Craig Cornell jointly agreed to donate Tyler's brain to Boston
7 | University. The B.U. Report concluded the findings of "scattered foci of tau-
8 | positive neurofibrillary tangles present within the frontal cortex at the sulcal depths
9 | and involving the superficial layers of cortex" were consistent with early
10 | pathological changes of Stage I CTE.

11 | Plaintiffs allege the decedents contracted CTE as the result of repetitive
12 | traumatic impacts to the brain which lead to degeneration of brain tissue which lead
13 | to behavior changes. Plaintiffs allege these changes had occurred in the brains of
14 | Bright and Cornell and lead to the impulsive and dangerous behavior which resulted
15 | in their deaths.

16 | Archie's own alleged traumatic brain injuries and Tiffany Bright's alleged
17 | undiagnosed concussion, have absolutely nothing to do with the merits of this
18 | lawsuit and should thus be excluded.

19 | **III.** **THE EVIDENCE IS IRRELEVANT**

20 | Fed. R. Evid. 402 provides that evidence which is not relevant is not
21 | admissible. *United States v. Schaff*, 948 F.2d 501 (9th Cir. 1991). Evidence is
22 | relevant if it has any tendency to make the existence of any fact that is of
23 | consequence to the determination of the action more probable or less probable than
24 | it would be without the evidence. Fed. R. Evid. 401. "A subjective belief is not
25 | admissible evidence." *Ash v. Deschutes Cty.*, No. 6:12-cv-02109-TC, 2014 U.S.
26 | Dist. LEXIS 110653, at *7 (D. Or. May 29, 2014).

27 | Whether Archie subjectively believes she suffered undocumented traumatic

28 | 4842-2812-6123.1

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1 brain injuries on two separate occasions is irrelevant because it does not support
2 any claim against Pop Warner.

3      Kimberly Archie testified at her June 21, 2019 deposition as follows:

4      A: I suffered a TBI twice

5      Q: When was the first one?

6      A: In April of 1979 when I was nine years old.

7      Q: And when was the second one?

8      A: In March 1999. Both car wrecks.

9      Q: Tell me about the circumstances of your April 1979 accident.

10      A: My family was in a camper. You know, this was the '70's. So there's
11 three people in the front of the truck, seven in the camper. A drunk driver hit water
12 and spun out and hit us, and I flew through the window of the camper and landed in
13 an embankment and was in a coma for about six or seven hours..

14      Q: In what way did it change your life?

15      A: I was never the same person that I was before....

16      Q: And how is it that you were never the same person again after that
17 accident?

18      A: Well, I had a brain injury, so I had brain dysfunction.

19      As such the evidence would not have any tendency to make the existence of
20 any fact that is of consequence to the determination of the action more probable or
21 less probable than it would be without the evidence.

22      Similarly, Ms. Archie testified her daughter, Tiffany Bright, suffered a
23 concussion during the course of her cheerleading activities in 2005 which was never
24 diagnosed:

25      Q: Did your daughter Tiffany ever suffer a concussion?

26      A: Tiffany was never diagnosed with a concussion. Though obviously
27 looking back, she took an elbow to the face at cheer camp in 2005. She had a huge,

28 4842-2812-6123.1

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1 like, knot like, the size of a golf ball. But I was at the R with another kid getting
2 surgery on her hand from the same kid who elbowed my daughter in the face. So I
3 didn't get back until like, 12 hours later, and the swelling had already gone down,
4 and we just didn't understand it the way that we do now. If I knew then what I
5 know now, then I would have turned around and went back to the ER to get yelled at
6 by the same ER doctor who yelled at me for brining the third kid to the ER.

7     Q: How was it that your daughter took an elbow to the face?

8     A: Their flyer was doing a double down, which is a fairly complex dismount
9 in competitive cheer ...

10     Q: Okay. And Tiffany was about seven at the time?

11     A: Seven, no. Tiffany was a junior in high school, so that would have been
12 her varsity junior year...

13     Q: Has she recovered from that?

14     A: Well yeah. I mean we didn't know at the time that it was a brain injury. It
15 was only looking back, you now, realizing you take an elbow like that, you know—
16 that's why I said it wasn't diagnosed...

17     Q: Is it your belief that today she suffers from circumstances related to that?

18     A: I'm not a doctor, so I can't answer that. That's something a doctor would
19 have to give an opinion on.

20     Q: And no doctor has given that opinion?

21     A: No. It just was my observation about looking back that would—if I had
22 known what I know now, I would have taken her to have a doctor look at it at the
23 time. (Exhibit A, Archie Deposition pages 33 – 34, 37 – 39, attached to Declaration
24 of Hancock).

25     In addition to the traumatic brain injury not having been diagnosed, it was the
26 deposition testimony of her ex-husband Paul Bright, Sr. that Archie never suffered
27 from any type of brain injury. (Exhibit B, Bright Sr. Deposition page 29-31,

28 4842-2812-6123.1

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  attached to Declaration of Hancock).

## IV.  THE EVIDENCE WOULD UNFAIRLY PREJUDICE DEFENDANTS, WASTE TIME, AND CONFUSE THE ISSUES

Fed. R. Evid. 403 authorizes the exclusion of relevant evidence when its "probative value is substantially outweighed by the danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). "The probative value of evidence is determined by considering the strength of and the need for that relevant evidence." *United States v. LeMay*, 260 F.3d 1018, 1033 (9th Cir. 2001).

Here, Kimberly Archie's unsubstantiated opinion that both she and her daughter suffered "brain injury" would undoubtedly create sympathy with a jury and would be more prejudicial. Consequently evidence on this question has absolutely no probative value.

In *Liew v. Official Receiver and Liquidator*, 685 F. 2d 1192, 1195 (9th Cir. 1982), the Ninth Circuit held district courts have "very broad discretion in applying Rule 403 and absent abuse, the exercise of its discretion will not be disturbed on appeal." Under Rule 403, unfair prejudice is "an undue tendency to suggest decision on an improper basis." *U.S. v. Lyons*, 472 F.3d 1055, 1066 (9th Cir. 2006). Citing to *Ballou v. Henri Studios*, 656 F.2d 1147 (5th Cir. 1981), the Advisory Committee note to Rule 403 indicates that "[u]nfair prejudice is that which could lead the jury to make an emotional or irrational decision, or to use the evidence in a manner not permitted by the rules of evidence.... '[U]nfair prejudice as used in Rule 403 is not to be equated with testimony simply adverse to the opposing party. Virtually all evidence is prejudicial or it isn't material.... Unfair prejudice within the context of Rule 403 means an undue tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one.'" Admission of the subjective

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

DEFENDANT POP WARNER LITTLE SCHOLARS, INC.'S MOTION IN LIMINE NO. 5 TO EXCLUDE
REFERENCE TO KIMBERLY ARCHIE'S ALLEGED TRAUMATIC BRAIN INJURY AND TIFFANY BRIGHT'S
ALLEGED UNDIAGNOSED TRAUMATIC BRAIN INJURY

1  belief that either Ms. Archie or her daughter suffered undiagnosed "brain injury"
2  would likely lead jurors to wonder whether all persons who are inadvertently struck
3  in the head suffer "brain injury" and question whether such sports as football should
4  be allowed at all. These questions are not questions the jury will need to answer.
5  The jurors could then make their own determination on this inquiry and they could
6  incorrectly take their conclusion into account when rendering their verdict on the
7  questions actually presented to them.

8      **A.    The Evidence Would Waste Time**

9      Because evidence of either Archie's or Tiffany's Bright's undiagnosed brain
10  injury would prejudice defendant, confuse the issues, and mislead the jury,
11  admission of such evidence would also cause an undue consumption of time while
12  providing absolutely no probative value. This is precisely what Fed. R. Evid. 403
13  was intended to prevent.

14      For the reasons set forth above, any evidence or testimony that either
15  Kimberly Archie, or her daughter, Tiffany Bright, suffered any type of brain injury
16  would result in unfair prejudice to defendant. The Court is therefore respectfully
17  requested to grant the instant Motion in Limine and preclude plaintiff from
18  introducing or referencing these issues at trial.

19  **V.    CONCLUSION**

20      For the foregoing reasons, defendant respectfully requests the Court grant this
21  Motion *in Limine* in its entirety.

22  DATED: November 2̲3̲ 2019          LEWIS BRISBOIS BISGAARD & SMITH LLP

23                                     By:    _/s/ Hellar-Ann Hancock_
24                                            Hellar-Ann Hancock
25                                            Attorneys for Defendant, POP WARNER
                                              LITTLE SCHOLARS
26
27
28



4842-2812-6123.1                                       9

DEFENDANT POP WARNER LITTLE SCHOLARS, INC.'S MOTION IN LIMINE NO. 5 TO EXCLUDE
REFERENCE TO KIMBERLY ARCHIE'S ALLEGED TRAUMATIC BRAIN INJURY AND TIFFANY BRIGHT'S
ALLEGED UNDIAGNOSED TRAUMATIC BRAIN INJURY

## DECLARATION OF HELLAR-ANN HANCOCK

I, Hellar-Ann Hancock, declare as follows:

1.    I am an attorney duly admitted to practice in all of the courts of the State of California and I am a partner with Lewis Brisbois Bisgaard & Smith LLP, attorneys of record for Defendant, Pop Warner Little Scholars. The facts set forth herein are of my own personal knowledge, and if sworn I could and would competently testify thereto.

2.    The evidence and argument at issue in this Motion is unduly prejudicial. If the jury were to consider this evidence, it is likely to provoke an emotional response from the jury, and would prevent them from considering the actions were they are being asked to consider in the case at bar.

3.    Attached hereto as Exhibit "A" is a true and correct copy of relevant excerpts of the Deposition of Kimberly Archie.

4.    Attached hereto as Exhibit "B" is a true and correct copy of relevant excerpts of the Deposition of Paul Bright Sr.

5.    This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on November 12, 2019.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this Declaration was executed on November ___, 2019, at Los Angeles, California.

*/s/ Hellar-Ann Hancock*
HELLAR-ANN HANCOCK

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1              UNITED STATES DISTRICT COURT

2        CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

3

4    KIMBERLY ARCHIE, et al.,          )
                                       )
5                   Plaintiffs,        )
                                       )
6              vs.                     )   No. 2:16-cv-06603-
                                       )           PSG-PLA
7    POP WARNER LITTLE SCHOLARS,       )
     INC., et al.,                     )
8                                      )
                    Defendants.        )
9    _____  )

10

11

12

13

14            VIDEOTAPED DEPOSITION OF KIMBERLY ARCHIE,

15   taken on behalf of the Defendants, at 555 South Flower

16   Street, Suite 2900, Los Angeles, California, commencing

17   at 9:58 a.m., Friday, June 21, 2019, before

18   ZINA TALLANT, Certified Shorthand Reporter No. 13341.

19

20

21

22

23

24

     Job No. CS3426970

25

1    A    I suffered a TBI twice.

2    Q    When was the first one?

3    A    In April of 1979 when I was nine years old.

4    Q    And when was the second one?

5    A    In March 1999.  Both car wrecks.

6    Q    Tell me about the circumstances of your

7  April 1979 accident.

8    A    My family was in a camper.  You know, this was

9  the '70s.  So there's three people in the front of the

10  truck, seven in the camper.  A drunk driver hit water

11  and spun out and hit us, and I flew through the window

12  of the camper and landed in an embankment and was in a

13  coma for about six or seven hours.  My mom and my

14  stepdad and cousin were airlifted to local hospitals.

15  The hospital nearby was too small to handle those types

16  of injuries.  Everybody lived.

17    Q    Where did this happen?

18    A    In Chester, California, between Red Bluff and

19  Reno, on Highway 36.

20        Do you want a picture of the truck?

21    Q    Do you have a picture of the truck?

22    A    I do.

23    Q    Do you carry that with you at all times?

24    A    Yeah.  It kind of changed my life a little

25  bit, so yeah.

1     Q    In what way did it change your life?

2     A    I was never the same person that I was before.

3     Q    Did you sue or bring a claim as a result of

4 that accident?

5     A    No.  We did not.  We split a $40,000 insurance

6 policy with all ten people in the vehicle, and I got

7 $892 on my 18th birthday, and that included the

8 interest.

9     Q    And how is it that you were never the same

10 person again after that accident?

11    A    Well, I had a brain injury, so I had brain

12 dysfunction.  So sensitive to light, sound.  Headaches,

13 migraines.  And it was the '70s, so nobody really knew

14 or -- it's not like it is today.  So you just did the

15 best you could.

16    Q    And do those conditions still affect you?

17    A    Yes.

18    Q    Have you ever gotten treatment for them?

19    A    Oh, I tried lots of things.  Yes.

20    Q    What have you tried?

21    A    God.  Craniosacral, hyperbaric chamber,

22 acupuncture, chiropractic, physical therapy --

23         THE REPORTER:  Can you slow down.

24         THE WITNESS:  Neural Organization Technique.

25 Going to pain management doctors.

1    lifetime member of the California Scholastic Federation.

2    I graduated at the top of my class.

3        Q    So the brain injury in 1979 didn't interfere

4    with you achieving that level of academic success?

5        A    Yeah.  I was very dedicated to school.  I

6    didn't have the best home life as a kid because my mom

7    had 33 surgeries from the car accident.  So school was

8    my escape from my brain injury and the car accident.

9        Q    Did your daughter Tiffany ever suffer a

10   concussion?

11       A    Tiffany was never diagnosed with a concussion.

12   Though obviously looking back, she took an elbow to the

13   face at cheer camp in 2005.  She had a huge, like, knot,

14   like, the size of a golf ball.  But I was at the ER with

15   another kid getting surgery on her hand from the same

16   kid who elbowed my daughter in the face.

17            So I didn't get back until, like, 12 hours

18   later, and the swelling had already gone down, and we

19   just didn't understand it the way that we do now.  If I

20   knew then what I know now, then I would have turned

21   around and went back to the ER to get yelled at by the

22   same ER doctor who yelled at me for bringing the third

23   kid to the ER.

24       Q    How was it that your daughter took an elbow to

25   the face?

1      A      Their flyer was doing a double down, which is

2  a fairly complex dismount in competitive cheer where the

3  flyer is pushed up in the air by the bases and rotates

4  twice, and then the bases catch her.  And so if they

5  don't tuck their elbows or the timing is wrong, you can

6  get hit in the face with an elbow, a knee, a hip, you

7  name it.  And they're falling and twisting, so the

8  physics is tremendous and very dangerous.

9      Q      And was somebody else hurt in the same event?

10     A      Right.

11          The -- previously, one of the other bases --

12  and I can't remember if it was a main base or a side

13  base.  Her name was Amanda -- she got either kicked or

14  elbowed in the hand, and her -- I took her to the ER to

15  get her hand casted and then later surgery on it.  So

16  that was the same day.

17     Q      Was it during the same stunt routine?

18     A      Yeah.  They were trying to practice and learn

19  the same stunt, the double down.

20     Q      Okay.  And Tiffany was about seven at the

21  time?

22     A      Seven, no.

23          Tiffany was a junior in high school, so that

24  would have been her varsity junior year.

25     Q      So she was on the high school team at the

1  time?

2      A      Yeah.  She was captain of the varsity

3  cheerleading team at the time.

4      Q      Did she miss school as a result of that?

5      A      When she took the elbow to the face?

6      Q      Yes.

7      A      No.  She didn't miss any school for that.  It

8  was summertime.  It was a summer camp.

9      Q      Has she recovered from that?

10     A      Well, yeah.  I mean, we didn't know at the

11  time that it was a brain injury.  It was only looking

12  back, you know, realizing you take an elbow like that,

13  you know, so -- that's why I said it wasn't diagnosed, I

14  mean --

15     Q      Is it your belief that today she suffers from

16  circumstances related to that?

17     A      I'm not a doctor, so I can't -- I can't answer

18  that.  That's something a doctor would have to give an

19  opinion on.

20     Q      And no doctor has given that opinion?

21     A      No.

22              It just was my observation about looking back

23  that I would -- if I had known then what I know now, I

24  would have taken her to have a doctor look at it at the

25  time.

1              DEPOSITION OFFICER'S CERTIFICATE

2

3     STATE OF CALIFORNIA        )

                                )    ss.

4     COUNTY OF _____ )

5

6              I, Zina Tallant, hereby certify:

7              I am a duly qualified Certified Shorthand

8     Reporter in the State of California, holder of

9     Certificate Number CSR 13341 issued by the Court

10    Reporters Board of California and which is in full force

11    and effect.  (Fed. R. Civ. P. 28(a)).

12             I am authorized to administer oaths or

13    affirmations pursuant to California Code of Civil

14    Procedure, Section 2093(b), and prior to being examined,

15    the witness was first duly sworn by me.  (Fed. R. Civ.

16    P. 28(a), 30(f)(1)).

17             I am not a relative or employee or attorney or

18    counsel of any of the parties, nor am I a relative or

19    employee of such attorney or counsel, nor am I

20    financially interested in this action.  (Fed. R. Civ. P.

21    28).

22             I am the deposition officer that

23    stenographically recorded the testimony in the foregoing

24    deposition and the foregoing transcript is a true record

25                            ///

1  of the testimony given by the witness.  (Fed. R. Civ. P.

2  30(f)(1)).

3       Before completion of the deposition, review of

4  the transcript [ ] was [X] was not requested.  If

5  requested, any changes made by the deponent (and

6  provided to the reporter) during the period allowed, are

7  appended hereto.  (Fed. R. Civ. P. 30(e)).

8

9  Dated:

10

11                    _Tina Taffaut_

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    UNITED STATES DISTRICT COURT

2    CENTRAL DISTRICT OF CALIFORNIA

3    WESTERN DIVISION

4    --oOo--

5

6

7

8    KIMBERLY ARCHIE, as survivor     :
     of decedent Paul Bright Jr.,     )
     et al.,                          :
9                                     ) No. 2:16 CV 06603 PSG
              Plaintiffs,             : PLA
10                                    )
          -vs-                        :
11                                    )
     POP WARNER LITTLE SCHOLARS,      :
12   INC., a nonprofit                )
     corporation; et al.,             :
13                                    )
              Defendants.

14

15

16

17            VIDEOTAPE DEPOSITION

18         OF PAUL WAYNE BRIGHT, SR.

19           Monday, April 8, 2019

20                Reno, Nevada

21

22

23

24   Reported by:    Karen Bryson
                      Certified Court Reporter #120
25

```
 1   Kimberly.

 2        A     Okay.

 3        Q     To your knowledge, did she ever have a brain

 4   injury?

 5        A     No.

 6        Q     Are you aware that she claims to have had a

 7   brain injury?

 8        A     I am now with her book.

 9             MR. MORY:  Object to form.

10   BY MR. CORLETO:

11        Q     During the time that you dated her, during the

12   time that you were married, and up until the book that you

13   mentioned, did she ever tell you she had a brain injury?

14        A     No.

15        Q     During the time that you dated her, that you

16   were married to her, did she ever receive treatment for

17   any form of psychological issue?

18             MR. MORY:  Object to form; calls for

19   speculation.

20             THE WITNESS:  No, not while we were married.

21   Later as we were going through -- I think it was -- I was

22   fighting County of Riverside and Fresno and all the

23   different counties, there was a period -- and I think I

24   had jotted down some notes, and it's probably in here

25   somewhere -- she had claimed that she had a bipolar
```

1    disorder.

2    BY MR. CORLETO:

3         Q      That was after you were divorced?

4         A      That was after, yes.

5         Q      And during the whole time that you knew her

6    from dating and marriage and when you were initially

7    divorced up until this point that you described, she never

8    said to you anything about a bipolar disorder?

9         A      No.

10        Q      Did you have any reason to believe she'd

11   suffered from a bipolar disorder?

12        A      No.

13               MR. MORY:  Object to form; calls for expert

14   testimony.

15               Sorry, Mr. Bright, I need those couple seconds

16   before you answer --

17               THE WITNESS:  Okay.

18               MR. MORY:  -- so I can --

19               THE WITNESS:  Okay.  No.

20   BY MR. CORLETO:

21        Q      Your answer remains the same, I believe; is

22   that correct?

23        A      Yes.

24        Q      So you mentioned something about her book and

25   with respect to a brain injury.

1          What is it that you know about her book and a

2   brain injury?

3       A    As far as the book, I only read the intro, and

4   that was basically her explain -- talking about herself

5   and where she came from and how it all came about.  I did

6   not go through the whole book.

7       Q    Okay.

8       A    So other than that, unsure.  Yeah.

9       Q    Do you recall that the book says she claims to

10  have suffered a brain injury when she was about nine years

11  old?

12      A    Yes.

13          MR. MORY:  Object to form; lacks foundation.

14  BY MR. CORLETO:

15      Q    And you've never heard anything about that

16  before?

17      A    No.

18      Q    Can you tell me about her education?  Do you

19  know, did she graduate from high school?

20      A    She did graduate high school, yes.

21      Q    Do you know --

22      A    As far as I know.

23      Q    As far as you know where did she graduate from?

24      A    Red Bluff --

25      Q    Do you know what year she --

 1   STATE OF NEVADA,           )

 2   COUNTY OF WASHOE          )    ss.

 3

 4        I, Karen Bryson, a Certified Court Reporter and

 5   notary public in and for the County of Washoe, State of

 6   Nevada, do hereby certify:

 7        That on Monday, April 8, 2019, at the offices of

 8   Bonanza Reporting, 1111 Forest Street, Reno, Nevada,

 9   personally appeared PAUL WAYNE BRIGHT, SR., who was duly

10   sworn by me, was thereupon deposed in the matter entitled

11   herein;

12        That the foregoing transcript consisting of page 1

13   through 99, is a full, true, and correct transcript of my

14   stenotype notes of said deposition to the best of my

15   knowledge, skill, and ability.

16        I further certify that I am not an attorney or

17   counsel for any of the parties, nor a relative or employee

18   of any attorney or counsel connected with the action, nor

19   financially interested in the action.

20

21

22                    _____

23                    Karen Bryson, CCR #120

24

25

1

# FEDERAL COURT PROOF OF SERVICE

2

Kimberly Archie v. Pop Warner Little Scholars, Inc. - Case No. 2:16-cv-06603-PSG-PLA

3

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

4

5

At the time of service, I was over 18 years of age and not a party to the action. My business address is 633 West 5th Street, Suite 4000, Los Angeles, CA 90071. I am employed in the office of a member of the bar of this Court at whose direction the service was made.

6

7

On November 22, 2019, I served the following document(s): DEFENDANT POP WARNER LITTLE SCHOLARS, INC.'S MOTION IN LIMINE NO. 5 TO EXCLUDE REFERENCE TO KIMBERLY ARCHIE'S ALLEGED TRAUMATIC BRAIN INJURY AND TIFFANY BRIGHT'S ALLEGED UNDIAGNOSED TRAUMATIC BRAIN INJURY; DECLARATION OF HELLAR-ANN HANCOCK

8

9

10

I served the documents on the following persons at the following addresses (including fax numbers and e-mail addresses, if applicable):

11

12

## SEE ATTACHED SERVICE LIST

13

The documents were served by the following means:

14

☒ (BY U.S. MAIL) I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses listed above and I deposited the sealed envelope or package with the U.S. Postal Service, with the postage fully prepaid.

15

16

17

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

18

Executed on November 22, 2019, at Los Angeles, California.

19

20

/s/ *Tania Moore*
Tania Moore

21

22

23

24

25

26

27

28

4842-2812-6123.1



**SERVICE LIST**
**Kimberly Archie v. Pop Warner Little Scholars, Inc.**
**2:16-cv-06603-PSG-PLA**

| | |
|---|---|
| 1 | |
| 2 | |
| 3 | Robert Finnerty, Esq. |
| | Law Offices of Robert Finnerty |
| 4 | 16001 Ventura Blvd. |
| | Encino, CA 91436 |
| 5 | Telephone: (747) 2214-4812 |
| | robert@girardikeese.com |
| 6 | |

Robert Finnerty, Esq.
Law Offices of Robert Finnerty
16001 Ventura Blvd.
Encino, CA 91436
Telephone: (747) 2214-4812
robert@girardikeese.com

*Attorneys for Plaintiff*
Jo Cornell

Christopher E. Brumfiel, Esq.
Robert B. Lueck, Esq.
BOORNAZIAN, JENSEN & GARTHE
A Professional Corporation
555 12th Street, Suite 1800
Oakland, CA 94607
Telephone: (510) 834-4350
Fax: (510) 839-1897
cbrumfiel@bjg.com
rlueck@bjg.com
**(Via Mail)**

*Attorneys for Defendant*
Pop Warner Little Scholars, Inc.

Ian A. Stewart, Esq.
Patrick M. Kelly, Esq.
WILSON ELSER MOSKOWITZ
EDELMAN & DICKER, LLP
555 South Flower Street, Suite 2900
Los Angeles, CA 90071-2407
Telephone: (213) 443-5100
Fax: (213) 443-5101
ian.stewart@wilsonelser.com
Patrick.kelly@wilsonelser.com

*Attorneys for Defendant*
Pop Warner Little Scholars, Inc.

Anthony B. Corleto, Esq.
WILSON ELSER MOSKOWITZ
EDELMAN & DICKER, LLP
1010 Washington Boulevard
Stamford, Connecticut 06901
Telephone: (203) 288-2404
Fax: (203) 388-9101
anthony.corleto@wilsonelser.com
(Admitted Pro Hac Vice)

*Attorneys for Defendant*
Pop Warner Little Scholars, Inc.

4842-2812-6123.1



LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

DEFENDANT POP WARNER LITTLE SCHOLARS, INC.'S MOTION IN LIMINE NO. 5 TO EXCLUDE
REFERENCE TO KIMBERLY ARCHIE'S ALLEGED TRAUMATIC BRAIN INJURY AND TIFFANY BRIGHT'S
ALLEGED UNDIAGNOSED TRAUMATIC BRAIN INJURY