Boris Treyzon, Esq. (SBN 188893)
btreyzon@actslaw.com
Slav Kasreliovich, Esq. (SBN 256807)
skasreliovich@actslaw.com
Joseph Finnerty, Esq. (SBN 298678)
jfinnerty@actslaw.com
Michael Patrick Kelly, Esq. (SBN 311045)
mkelly@actslaw.com
**ABIR COHEN TREYZON SALO, LLP**
16001 Ventura Blvd., Suite 200
Encino, California 91436
Telephone: (424) 288-4367 | Fax: (424) 288-4368

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| KIMBERLY ARCHIE, et al.<br><br>　　　　Plaintiffs,<br>vs.<br><br>POP WARNER LITTLE SCHOLARS, INC., a nonprofit corporation; and DOES 1 through 50, inclusive,<br><br>　　　　Defendants. | Case No.: 2:16-cv-06603-PSG-PLA<br><br>*Assigned to the Honorable Phillip S. Gutierrez*<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OR LIMIT THE OPINONS OF PLAINTIFFS' EXPERT, RICHARD STALNAKER; DECLARATION OF BORIS TREYZON**<br>*Trial Date: January 14, 2020* |

**TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................. 1

II. UNDER DAUBERT, THE DISTRICT COURT ACTS AS A GATE KEEPER, NOT A FACT FINDER AND IS GIVEN BROAD LATITUDE IN DETERMINING THE RELIABILITY OF EXPERT TESTIMONY ........................................................................................ 1

III. DR. STALNAKER' KNOWLEDGE, SKILL, EXPERIENCE, TRAINING AND EDUCATION RENDERS HIM COMPETENT TO TESTIFY AS TO THE RELATION BETWEEN BRAIN INJURIES AND IMPACTS ON CHILDREN AND THE EFFICACY OF NOCSEA CERTIFIED HELMETS ................................................................ 3

IV. THERE IS A WELL-ESTABLISHED RELATIONSHIP BETWEEN REPETITIVE HEAD TRAUMA AND YOUTH FOOTBALL ......... 5

V. DR. STALNAKER'S OPINIONS WILL ASSIST THE TRIER OF FACT ........................................................................................................ 6

VI. DR. STALNAKER'S OPINIONS WERE SUPPORTED BY HIS REASONABLE APPLICATION OF PRINCIPAL AND METHODS TO THE FACTS OF THIS CASE ......................................................... 7

VII. CONCLUSION ..................................................................................... 12

i

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OR LIMIT THE OPINONS OF PLAINTIFFS' EXPERT, RICHARD STALNAKER; DECLARATION OF

# TABLE OF AUTHORITIES

**CASES**

*City of Long Beach v. Standard Oil Co. of Calif.* (9th Cir. 1995) 46 F3d 929, 933, fn. 4. ...................................................................................................10

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*
(1993) 509 U.S. 579, 596..........................................................1, 2, 3, 8, 9

*Hangarter v. Provident Life and Acc. Ins. Co.* (2004) 373 F.3d 998 ..............8

*Jahn v. Equine Services, PSC* (6th Cir. 2000) 233 F. 3d 382, 392 ...................7

*Kumho Tire Co., Ltd v. Carmichael* (1999) 526 U.S. 137, 156..................2, 11

*Mukhtar v. Cal. State Univ., Hayward*
(9th Cir. 2002) 299 F. 3d 1053 at 1169] ...............................................9

*Primiano v. Cook* (2010) 598 F.3d 558, 565-565 ....................................3, 9

*Speicher v. Union Pacific R. R.*, No. C07-05524 RBL, 2009 WL 250026, at *3
(W.D. Wash. Feb. 2, 2009) (Not Reported in F. Supp. 2d) ......................8

*United States v. Morales* (9th Cir. 1997) 108 F.3d 1031, 1038 ......................2

*United States v. 14.38 Acres of Land Situated in Leflore County, Missippi* (5th Cir. 1996) 80 F. 3d 1074,1078 ................................................................3

*Viterbo v. Dow Chem.* (5th Cir. 1987) 826 F.2d 420, 422. .............................2

*Walker v. Soo Line R.R. Co.* (7th Cir. 2000) 208 F.3d 581, 590 ......................7

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OR LIMIT THE OPINONS OF PLAINTIFFS' EXPERT, RICHARD STALNAKER; DECLARATION OF

**Rules**

**Rules**

*Federal Rules of Evidence Rule* 702 ..............................................1, 2, 7, 9

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OR LIMIT THE OPINONS OF PLAINTIFFS' EXPERT, RICHARD STALNAKER; DECLARATION OF

Plaintiffs Kimberly Archie and Jo Cornell ("Plaintiffs") hereby submit the following memorandum of points and authorities and declaration of Boris Treyzon in opposition to Defendant Pop Warner Little Scholars, Inc's ("Pop Warner") motion to exclude or limit the opinion of Plaintiffs' expert Richard Stalnaker:

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Dr. Stalnaker received his Ph.D. in Theoretical and Applied Mechanics from West Virginia University, where he studied the mechanical properties of the brain, skull bone and scalp. Since the 1970's Dr. Stalnaker has studied impact tolerances on the head, neck chest and abdomen. He has written innumerable published articles relating to brain injury and the efficacy of helmets. He was even tasked with developing the design and implementation of a child safety standard for child auto restraints; indeed, he has a patent for a child restraint system. As a result of the depth of his knowledge in the field of biomechanics, he is well qualified to opine as to the mechanical properties of the brain, skull bone and scalp, the head impact response, particularly for children, the efficacy of helmets, including NOCSAE certified helmets, to protect children's head from impact injury. As a consequence, his testimony will facilitate the trier of fact's understanding of the issues raised by this case.

At trial, Pop Warner will be given the opportunity to challenge Dr. Stalnaker's conclusions. The moving papers, however, fail to set forth grounds to exclude his testimony under *Rule* 702.

### II. UNDER *DAUBERT*, THE DISTRICT COURT ACTS AS A GATE KEEPER, NOT A FACT FINDER AND IS GIVEN BROAD LATITUDE IN DETERMINING THE RELIABILITY OF EXPERT TESTIMONY

1

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OR LIMIT THE OPINONS OF PLAINTIFFS' EXPERT, RICHARD STALNAKER; DECLARATION OF BORIS TREYZON

*Federal Rules of Evidence Rule* 702 provides, "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;(b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."

To be admissible, expert testimony must (1) address an issue beyond the common knowledge of the average layman, (2) be presented by a witness having sufficient expertise, and (3) assert a reasonable opinion given the state of the pertinent art or scientific knowledge. *United States v. Morales* (9th Cir. 1997) 108 F.3d 1031, 1038. The district court is accorded broad latitude in determining the reliability of expert testimony. *Kumho Tire Co. v. Carmichael*(1999) *526 U.S. 137, 142*

"As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *Viterbo v. Dow Chem.* (5th Cir. 1987) 826 F.2d 420, 422.

Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence. *Daubert v. Merrell Dow Pharmaceuticals, Inc.* (1993) 509 U.S. 579, 596.

"When considering the applicability of *Daubert* criteria to the particular case before the court, the inquiry must be flexible. Peer reviewed scientific literature may be unavailable because the issue may be too particular, new, or of insufficiently broad interest, to be in the literature. Lack of certainty is not, for a qualified expert, the same thing as guesswork. "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline."[2]"[T]he factors identified in *Daubert* may or may not be

2

pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." Reliable expert testimony need only be relevant, and need not establish every element that the plaintiff must prove, in order to be admissible." *Primiano v. Cook* (2010) 598 F.3d 558,565-565.

*Daubert* did not work a "seachange over federal evidence law," and "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *United States v. 14.38 Acres of Land Situated in Leflore County, Missippi (5th Cir. 1996)* 80 F. 3d 1074,1078.

As set forth herein, Dr. Stalnaker is extremely qualified to render opinions related to the increased risks for brain injury associated with successive impacts on young children. Moreover, he is qualified to testified as to the efficacy of helmets as a means to protect young children from brain trauma. Further, he is qualified to testify as to the physiological differences between adults and children, the need to protect children differently than adults, and whether NOCSAE "certified" helmets actually protected children from impacts received in the course of playing Pop Warner football and whether, based upon the state of science at the relevant time, Pop Warner had a reasonable basis to believe that it did.

### III. DR. STALNAKER' KNOWLEDGE, SKILL, EXPERIENCE, TRAINING AND EDUCATION RENDERS HIM COMPETENT TO TESTIFY AS TO THE RELATION BETWEEN BRAIN INJURIES AND IMPACTS ON CHILDREN AND THE EFFICACY OF NOCSEA CERTIFIED HELMETS

Dr. Stalnaker received his B.S. degree in Aerospace Engineering form West Virginia University and his Ph.D. in Theoretical and Applied Mechanics thereafter. At the Highway Safety Research Institute at the University of Michigan he contributed to standards for child safety under the Federal Motor Vehicle Safety Standard. In 1970, well before Paul and Tyler played Pop Warner football, he undertook studies of impact tolerances on the head, neck chest and abdomen and

3

participated in designs for child auto restraints.[1] He continued these studies from 1977-1978 in Europe and designed a child restraint system.[2]

In 1980 he worked at the Southwest Research Institute focusing on neck injuries. He then became an associate professor teaching Biomechanics at the Ohio State University where he developed a head injury criterion by using the Translational Head Injury Model (THIM) The THIM, "was used with a lump parameter model of a helmet in conjunction with TEC to optimize the performance of helmets."[3] He also contributed to developing a rotational head injury model with strain as the criteria. All these models were omnidirectional and head sized oriented for adults as well as children."[4] By 1994, he was appointed to the Department of Biomedical Engineering at Ohio State University.[5] His patents include the Tip-up Table, Child Restraint System and the "Lateral Impact Thorax"[6]

Dr. Stalnaker's published articles include, "Electric Fields and Calcium Mobility in Bone"; "Mechanical Properties of the Head"; "Dynamic Mechanical Properties of Scalp and Brain"; "Head Injury Tolerance for Linear Impacts by Mechanical Impedance Methods"; "A Mechanical Impedance Model for Head Injury Due to Linear Impacts"; "Driving Point Impedance Characteristics of the Head"; "The Biomechanical Aspects of Crash Helmet Design"; "MSC Tolerance Curve for Human Head Impacts; "Side Impact Tolerance to Blunt Trauma", "A Brain Injury Model for Crash Helmet Design", "Human Impact Response Measurement and Simulation; "Dynamic and Static Load Response of The Head"; "Head Injury Evaluation: Criteria for Assessment of Field, Clinical and Laboratory Data"; "Measurement of Head Impact Response"; "Head Injury Research Program-

---

[1] Exhibit "B" to the Moving Papers; 63
[2] Exhibit "B" to the Moving Papers; 64
[3] Exhibit "B" to the Moving Papers; 64
[4] Exhibit "B" to the Moving Papers; 64
[5] Exhibit "B" to the Moving Papers; 65
[6] Exhibit B to the Moving Papers; 79

4

Human Cadaver Head Impact"; "Safety Helmet-Head Interaction Study Using High-Speed Cineradiography"; "Impact Trauma of the Human Temporal Bone"; "Computer Simulation of a Child During Panic Braking"; "AIS and the Probability of Death"; "Evaluation of the AIS as a Measure of Probability of Death"; "Translational Energy Criteria and its Correlation with Head Injury in the Sub-Human Primate"; "The Unified Head Injury Theory"; "A Practical Application of the Translational Energy Criteria: Evaluation of Baseball and Softball Head Impact Injury Potentials"; "Brain Injury Prediction Using the Translational Energy Criterion: An Experimental Study." These articles were written before 1997.[7]

Dr. Stalnaker testified as an expert in numerous cases, including Acuna v. Riddell (2014). The Acuna case was tried in Los Angeles and involved a claim by a high school football player against Riddell, a helmet manufacturer.[8]

In sum, Dr. Stalnaker's academic and professional qualifications render him uniquely qualified on the issues of the mechanical properties of the brain, skull bone and scalp, the head impact response, particularly for children, the efficacy of helmets, including NOCSAE certified helmets, to protect children's head from impact injury. Further, given his background, he is qualified to opine as to the state of research in these areas from the 1970's to the present. This testimony is directly relevant to the issues raised by this case.

## IV. THERE IS A WELL-ESTABLISHED RELATIONSHIP BETWEEN REPETITIVE HEAD TRAUMA AND YOUTH FOOTBALL

Plaintiffs have designated Omalu Bennet, M.D., as an expert.[9] He is a well-recognized expert in forensic pathologist and neuropathologist who has published findings regarding CTE in American football players. He is the co-founder and

---

[7] Exhibit B to the Moving Papers; 79-89
[8] Exhibit A to Treyzon Declaration; 50:22-54:8
[9] Exhibit "C" to the Treyzon Declaration 5

director of the Brain Injury Research Institute and will opine as to the connection between Cornell and Bright's playing Pop Warner football, the resulting CTE and their early and violent deaths.[10] These opinions are further bolstered by the opinion testimony of Nathan Rose and Madeline Swortwood, P.h.D. [11]

Additionally, this opinion is supported by Pop Warner's own expert Dr. Julian Bailes. Indeed, Dr. Bailes testified that "the only known cause of CTE is repetitive cranial impact."[12] He further testified that "repetitive subconcussive blows are a factor" in developing CTE,[13] and that "CTE changes in the brain can, in fact, be found in younger players." [14] He testified that, football players are "boxers in helmets."[15] He also testified that in every football game a child "suffer[s] blows to the head…"[16] Finally, Dr. Bailes agreed that "a diagnosis of prior concussion or concussive brain injury is not necessary for somebody to be afflicted by CTE." [17] Therefore, no diagnosed concussions are necessary to support a finding that playing youth tackle football was a substantial factor in the development of CTE. All that is required is evidence that the decedent played youth football.

## V.  DR. STALNAKER'S OPINIONS WILL ASSIST THE TRIER OF FACT

Expert opinion testimony is appropriate when the factual issue is one that the trier of fact would not ordinarily be able to resolve without technical or specialized assistance. *Daubert v. Merrell Dow Pharmaceuticals, Inc.* (1993) 509 US 579, 591. An expert's testimony can assist the trier of fact even if it does not resolve an issue

---

[10] Exhibit "C" to the Treyzon Declaration
[11] Exhibit "C" to the Treyzon Declaration
[12] Exhibit "B" to the Treyzon Declaration (Bailes Deposition 68:7-12)
[13] Exhibit "B" to the Treyzon Declaration (Bailes Deposition 71:5-10)
[14] Exhibit "B" to the Treyzon Declaration (Bailes Deposition 71:11-13)
[15] Exhibit "B" to the Treyzon Declaration (Bailes Deposition 19:17-20)
[16] Exhibit "B" to the Treyzon Declaration (Bailes Deposition 43:3-5)
[17] Exhibit "B" to the Treyzon Declaration (Bailes Deposition 51:19-22)

with complete certainty. *Walker v. Soo Line R.R. Co. (7th Cir. 2000) 208 F.3d 581, 590.* [E]xperts are just witnesses, and they need not be purveyors of ultimate truth in order to be allowed on the stand." *Jahn v. Equine Services, PSC* (6th Cir. 2000) 233 F. 3d 382, 392.

The case at bar presents issues related to children's brains, the protections offered for youth football, the consequence of repeated impacts on those brains and the efficacy of "certified" NOSCE helmets. Dr. Stalnaker is expected to testify that a child is physically different than an adult. A child's distribution is also different than an adult. A child typically has bigger heads and weaker necks. Due to the physiological differences, a child needs to be protected differently than an adult. This is why Dr. Stalnaker believes Pop Warner knew that the NOCSEA certification does not properly warn of the dangers repetitive brain trauma.

Dr. Stalnaker's testimony is both relevant to the issues raised by this case and beyond the common experience of the trier of fact.

## VI. DR. STALNAKER'S OPINIONS WERE SUPPORTED BY HIS REASONABLE APPLICATION OF PRINCIPAL AND METHODS TO THE FACTS OF THIS CASE

In formulating his opinions, Dr. Stalnaker relied upon scientific studies, as well as his own extensive work in the area of head injuries and the efficacy of helmet designs, child restraint systems etc. Dr. Stalnaker's opinion testimony is the product of reliable principles and methods as applied to the facts of this case sufficient to satisfy the standards for admissibility under *Federal Rules of Evidence,* Rule 702. Dr. Stalnaker's testimony does not attempt to replicate the circumstances of the injury; rather, based upon his breath of knowledge in the relevant area, he is qualified to assist the trier of fact to understand the impact of successive impacts on a child's brain as well as the efficacy of helmets and NOSCE "certified" helmets in protecting a Pop Warner player from brain injury.

7

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OR LIMIT THE OPINONS OF PLAINTIFFS' EXPERT, RICHARD STALNAKER; DECLARATION OF BORIS TREYZON


In *Speicher v. Union Pacific R. R.*, No. C07-05524 RBL, 2009 WL 250026, at *3 (W.D. Wash. Feb. 2, 2009) Defendant Union Pacific Railroad brought a motion to exclude the testimony of railroad engineer ("Mr. Beall") in an action where plaintiff claimed injuries which occurred when the train he was operating hit a truck stopped on the railroad track. Mr. Beall had run a train line, had been in the forensic railroad business for 20 years, authored publications on railroad operation issues and gave presentations about operations and investigations. His proposed expert testimony related to how easy it was to hit the wrong button on the remote controlled locomotive, the general advantages of a traditional cab setup, issues relating to communications between the plaintiff and his supervisor, plaintiff's position on the train and training.

As here, Defendant challenged Mr. Beall's credentials and methodology. The district court denied the motion to exclude as to both objections. On the issue of methodology, it explained that the *Daubert* factors were not mandatory and unreasonable measures of Mr. Beall's competence in that general views about railroad observations and safety, "cannot be tested, are not appropriate subjects of peer review, and do not have a known potential rate of error. Further, no relevant scientific community exists to accept the views." (*3) The district court further explained that Mr. Beall's experience both as an railroad engineer and as the author of publications was sufficient for the type of testimony offered.

In *Hangarter v. Provident Life and Acc. Ins. Co.* (2004) 373 F.3d 998, a bad faith insurance case, the district court admitted the testimony of plaintiff's proposed expert on the issue of claims adjustment standards ("Caliri") over defendant's objection. Caliri had twenty-years years' experience working for insurance companies and as an independent consultant. On the issue of reliability, the court stated, "….the reliability of non-scientific testimony such as Caliri's, the "*Daubert* factors (peer review, publication, potential error rate, etc.) simply are not

8

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OR LIMIT THE OPINONS OF PLAINTIFFS' EXPERT, RICHARD STALNAKER; DECLARATION OF BORIS TREYZON

applicable to this kind of testimony, whose reliability depends heavily on the *knowledge and experience* of the expert, rather than the methodology or theory behind it." [quoting *Mukhtar v. Cal. State Univ., Hayward* (9th Cir. 2002) 299 F. 3d 1053 at 1169]

    The moving papers argue that Dr. Stalnaker is not qualified to opine as to "whether Cornell or Bright ever sustained any head injury and/or concussions and contracted CTE as a result of same."[18] However, this argument misses the point of the proffered testimony. Dr. Stalnaker explains that big hits are not necessary and that, "…the main thrust of what we're talking about here is that low speed, low energy concussions that are not the big hits, but the ones I have been talking about, that lead up—can lead up to, if done enough, to the injuries that we have been—the CTE came later."[19] Thus, regardless of whether a either Bright or Cornell experienced a big hit, Dr. Stalnaker's opinion that, "low speed impacted to the helmeted head over long periods of time and that this can lead to devastating CTE,"[20] is competent expert testimony which will be helpful to the trier of fact in determining whether, even in the absence of big hits, the CTE is attributable to their playing Pop Warner football at a young age. "When an expert meets the threshold established by Rule 702 as explained in *Daubert,* the expert may testify and the jury decides how much weight to give that testimony." *Primiano v. Cook* (2010) 598 F.3d 558, 565-565. This also holds true with regards to Dr. Stalnaker's proffered testimony regarding the physiological differences between children and adults and need for different protections. Dr. Stalknaker helped developed the child safety restraint system.

    Dr. Stalnaker's conclusions were further based upon a study by Pellman and Viano, published in 2003 which consisted of the reconstruction of NFL Football

---

[18] Moving Papers 6:25-7:2
[19] Exhibit "A" to Treyzon Declaration; 139:5-10
[20] Exhibit B to Moving Papers; 76

9

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OR LIMIT THE OPINONS OF PLAINTIFFS' EXPERT, RICHARD STALNAKER; DECLARATION OF BORIS TREYZON

games during 1996-2001. This study analyzed the head injury criterion for helmet impacts and their correlation to concussions.[21] The moving papers argue that this study is irrelevant in the absence of links to impacts to Cornell and Bright.[22] As noted, Dr. Stalnaker's opinion testimony is proffered on issues related to the link between repeated, small hits and CTE as supported by the Pellman study. This opinion testimony as to the scientifically determined causal link between head injury and concussions is directly relevant to the issues raised by this case and supportive of an inference by the trier of fact based upon, " a deduction or conclusion that reason and common sense lead one to draw from proved facts." *City of Long Beach v. Standard Oil Co. of Calif.* (9th Cir. 1995) 46 F3d 929, 933, fn. 4.

Dr. Stalnaker's opinions with respect to the efficacy of NOCSAE helmets are well founded based upon his extensive studies on helmets including a 1972 presentation, "A Brain Injury Model for Crash Helmet Design[23]" Moreover, because of his institutional knowledge of the progression of helmet technology, and knowledge of helmet's efficacy in crash tests, he is competent to proffer opinion testimony concerning the efficacy of a NOCSAE certification. As set forth in his report, "NOCSAE has no youth standard, and only has the adult standard, they failed to differentiate between children and adults. The criteria considered is limited to a pass/fail standard of an SI of 1200. When NOCSEA gives a sticker to put on a helmet, it only guarantees the user that they have passed a drop test of 5 feet. This drop test number which is slightly less than a 15-16% chance of having an AIS 4. This means that a child can sustain a brain injury with an AIS 4, which is a 10% chance of the child dying."[24] No one denies that an expert might draw a conclusion

---

[21] Exhibit B to Moving Papers;71
[22] Moving Papers; 9-10
[23] Proceedings, 18th Annual Meeting of the Institute of Environmental Sciences, 1972.
[24] Exhibit B to Moving Papers; 75

10

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OR LIMIT THE OPINONS OF PLAINTIFFS' EXPERT, RICHARD STALNAKER; DECLARATION OF BORIS TREYZON

from a set of observations based on extensive and specialized experience. *Kumho Tire Co., Ltd v. Carmichael* (1999) 526 U.S. 137, 156.

Finally, based upon institutional knowledge and academic and related background, Dr. Stalnaker is competent to testify as to the state of research during the period that Paul Bright ("Bright") and Tyler Cornell ("Cornell") played Pop Warner Football and with respect to the efficacy of NOCSEA "certified" helmets to protect children from brain damage. From this testimony, a jury could potentially assess whether Pop Warner's implicit representation to parents and coaches that NOCSAE "certified" helmets protected their children from brain injury was misleading or false.

In a disconnect, the moving papers also argue that Dr. Stalnaker's opinions are not factually based because these opinions must be grounded in what Pop Warner actually communicated to parents and coaches. (Moving Papers;7-8) However, Dr. Stalnaker's opinions go to what information should have been provided, not what information Pop Warner actually provided. Through other evidence, Plaintiffs will establish what information was, or was not provided to parents and coaches.

Finally, the moving papers make the outlandish argument that Dr. Stalnaker should have attempted to "recreate Cornell's suicide or Bright's motorcycle accident,"[25] as if this would be either relevant or possible in the case of Cornell's suicide. The within action does not, as the moving papers attempt to suggest, arise out of a traffic accident, the circumstances of which are subject to replication. As such, this critique is without merit and does not constitute a basis to exclude Dr. Stalnaker's opinion testimony.

---

[25] Moving Papers p. 11

11

## VII. CONCLUSION

Based upon the foregoing, this court should deny Pop Warner's motion to exclude in its entirety.

Dated: December 2, 2019　　　　　　　　**ABIR COHEN TREYZON SALO, LLP**

By: _____
Boris Treyzon, Esq.
Slav Kasreliovich, Esq.
Joseph Finnerty, Esq
Michael P. Kelly, Esq.
Attorneys for Plaintiff

12

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OR LIMIT THE OPINONS OF PLAINTIFFS' EXPERT, RICHARD STALNAKER; DECLARATION OF BORIS TREYZON

# CERTIFICATE OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 16001 Ventura Blvd, Suite 200, Encino, California 91436

On December 2, 2019, I served true copies of the following document(s) described as

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OR LIMIT THE OPINONS OF PLAINTIFFS' EXPERT, RICHARD STALNAKER; DECLARATION OF BORIS TREYZON**

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on December 2, 2019, at Los Angeles, California.

/s/ Flor Pedro
Flor Pedro