UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6  #218

CIVIL MINUTES - GENERAL

| Case No. | CV 16-6603 PSG (PLAx) | Date | December 27, 2019 |
|---|---|---|---|
| Title | Kimberly Archie, et al. v. Pop Warner Little Scholars, Inc. | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge |
|---|---|
| Wendy Hernandez | Not Reported |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Not Present | Not Present |

**Proceedings (In Chambers):** The Court GRANTS the motion for summary judgment

Before the Court is a motion for summary judgment, or alternatively, partial summary judgment filed by Defendant Pop Warner Little Scholars, Inc. ("Defendant" or "Pop Warner" or "PWLS"). *See* Dkt. # 218-1 ("*Mot.*"). Plaintiffs Kimberly Archie and Jo Cornell opposed, *see* Dkt. # 237 ("*Opp.*"), and Defendant replied, *see* Dkt. # 250 ("*Reply*"). The Court held a hearing on the matter on December 23, 2019. Having considered the moving, opposing, and reply papers, and the arguments made at the hearing, the Court **GRANTS** the motion.

I.  Background

    A.  Factual Background

This suit was brought by parents of children who played Pop Warner youth football, alleging that Defendant failed to provide for the safety and health of child participants in its program.

Paul Bright, Jr. played Pop Warner football in Sparks, Nevada, from 1997 through 2004. *Defendant's Statement of Uncontroverted Facts*, Dkt. # 218-2 ("*DSUF*") ¶ 1. Paul Bright Jr. did not sustain any concussions or documented head injuries while playing PWLS football. *Id.* ¶ 3. Plaintiff Archie stated in deposition that she did not recall Paul Bright, Jr. ever sustaining a concussion. *Declaration of Anthony B. Corleto*, Dkt. # 218-3 ("*Corleto Decl.*"), Ex. G (Deposition of Kimberly Archie) 72:14–21 ("*Archie Dep.*"). Paul Bright, Sr. testified that Paul Bright, Jr. did not sustain a concussion, and that he "sustained no injuries the entire time that he played" Pop Warner football. *Id.*, Ex. F (Deposition of Paul Bright, Sr.) 42:4–8 ("*Bright Sr. Dep.*").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-6603 PSG (PLAx) | Date | December 27, 2019 |
|---|---|---|---|
| Title | Kimberly Archie, et al. v. Pop Warner Little Scholars, Inc. | | |

Paul Bright Jr. also wrestled, played basketball and high school football. *DSUF* ¶ 5. On September 1, 2014, he died in a motorcycle collision. *Id.* ¶ 9. After his death, Plaintiff Kimberly Archie sent his brain for study, and she received a report from Boston University diagnosing Paul with Stage I Chronic Traumatic Encephalopathy, or "CTE," on April 9, 2015. *See Declaration of Kimberly Archie*, Dkt. # 242-3 ("*Archie Decl.*") ¶¶ 16–19; *Declaration of Joseph Finnerty*, Dkt. # 238 ("*Finnerty Decl.*"), Ex. 4 (Neuropathology Report of Paul W. Bright Jr. from Boston University); *Declaration of Brent Harris*, Dkt. # 242-6 ("*Harris Decl.*"), Ex. 1.

Tyler Cornell played PWLS football in San Diego, California, from 1997 through 2002. *DSUF* ¶ 12. Plaintiff Jo Cornell testified that her son did not suffer a concussion. *Corleto Decl.* ¶ 61, Ex. I (Deposition of Jo Cornell) 107:20–25 ("*Jo Cornell Dep.*"). However, Craig Cornell, Tyler's father, testified at deposition that he witnessed his son hit hard at practice. *Finnerty Decl.*, Ex. 13 (Deposition of Craig Cornell) 39–43 ("*Craig Cornell Dep.*").

Tyler broke his nose in 2006, during high school preseason football practice. *DSUF* ¶ 18; *Craig Cornell Dep.* 96–97. Tyler also broke teeth from riding a skateboard in college. *DSUF* ¶ 18; *Craig Cornell Dep.* 98. A psychiatric episode was triggered for Tyler when a car accident resulted in the death of childhood friends. *DSUF* ¶ 23. Tyler was hospitalized approximately seven times over approximately six years for various psychological illnesses, including bipolar disorder, and was admitted to a thirty-day residential program. *DSUF* ¶¶ 21–22; *Jo Cornell Dep.* 95. On April 3, 2014 he died from a self-inflicted gun shot wound to the head. *DSUF* ¶ 24. After his death, Jo Cornell sent his brain for study, and on January 16, 2015, Boston University conducted a study of Tyler's brain which revealed that he suffered from Stage I CTE. *See Finnerty Decl.*, Ex. 5, (Neuropathology Report of Tyler Cornell from Boston University); *Harris Decl.*, Ex. 1.

B.     Procedural Background

The complaint in this case was initially filed on September 1, 2016, and subsequently amended various times. *See* Dkt. # 1 ("*Compl.*"). Parents of children who played youth tackle football between 1996 and 2015 brought suit against Pop Warner, as well as the National Operating Committee on Standards for Athletic Equipment ("NOCSAE"), USA Football, Inc., and Pop Warner affiliates, alleging that they failed to provide for the safety and health of child participants of the Pop Warner youth football program. *See* Dkt. # 40 ("*FAC*"); Dkt. # 72 ("*May 2017 Order*"). Both USA Football and NOCSAE were eventually dismissed from the lawsuit. Defendant Pop Warner moved to dismiss under Federal Rule of Civil Procedure 12(b), and the motion was granted in part and denied in part. *See* Dkt. # 107 ("*October 2017 Order*").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-6603 PSG (PLAx) | Date | December 27, 2019 |
|---|---|---|---|
| Title | Kimberly Archie, et al. v. Pop Warner Little Scholars, Inc. | | |

Thereafter, Plaintiffs filed a third amended complaint on November 20, 2017, the operative complaint. *See generally TAC*. On September 11, 2019, the Court denied Plaintiffs' motion for class certification. *See* Dkt. # 194.

Plaintiffs bring the following causes of action:

<u>First Cause of Action</u>: Negligence. *TAC* ¶¶ 97–128.

<u>Second Cause of Action</u>: Fraud. *Id.* ¶¶ 129–145.

<u>Third Cause of Action</u>: Fraudulent Concealment. *Id.* ¶¶146–160.

<u>Fourth Cause of Action</u>: Negligent Misrepresentation. *Id.* ¶¶ 161–179.

<u>Fifth Cause of Action</u>: Wrongful Death. *Id.* ¶¶ 180–184.

<u>Sixth Cause of Action</u>: Violation of Business & Professions Code §§ 17200 et seq. *Id.* ¶¶ 185–193.

<u>Seventh Cause of Action</u>: Violation of Business & Professions Code §§ 17500 et seq. *Id.* ¶¶ 194–202.

Defendant moves for summary judgment as to each cause of action. *See generally Mot.*

II.   <u>Legal Standard</u>

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the nonmoving party will have the burden of proof at trial, the movant can prevail by pointing out that there is an absence of evidence to support the moving party's case. *See id.* If the moving party meets its initial burden, the nonmoving party must set forth, by

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-6603 PSG (PLAx) | Date | December 27, 2019 |
|---|---|---|---|
| Title | Kimberly Archie, et al. v. Pop Warner Little Scholars, Inc. | | |

affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. Rather, it draws all reasonable inferences in the light most favorable to the nonmoving party. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987). The evidence presented by the parties must be capable of being presented at trial in a form that would be admissible in evidence. *See* Fed. R. Civ. P. 56(c)(2). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

III.  Discussion

Defendant argues that, with respect to Plaintiffs' first through fifth causes of action, (1) Plaintiffs cannot establish duty; (2) Plaintiffs cannot prove general causation; and (3) Plaintiffs cannot prove factual causation. *See generally Mot.* Defendant next argues that: (4) Plaintiffs' UCL and FAL claims fail because Plaintiffs cannot establish a false advertisement or misrepresentation, and because they cannot establish standing; and (5) each of Plaintiffs' causes of action are time barred. *See generally id.*

CTE has been defined as follows: "Chronic Traumatic Encephalopathy is a neuropathological diagnosis that currently can only be made post mortem." *In re Nat. Football League Players' Concussion Injury Litig.*, 307 F.R.D. 351, 397 (E.D. Pa. 2015).[1] "CTE involves the build-up of 'tau protein' in the brain, a result associated with repetitive head trauma.

---

[1] The court also stated that "[b]eyond identifying the existence of abnormal tau protein in a person's brain, researchers know very little about CTE. They have not reliably determined which events make a person more likely to develop CTE. McCrory et al., Consensus Statement on Concussions at 257 ("[I]t is not possible to determine the causality or risk factors [for CTE] with any certainty. As such, the speculation that repeated concussion or subconcussive impacts cause CTE remains unproven."). More importantly, researchers have not determined what symptoms individuals with CTE typically suffer from while they are alive . . . [a]rguably, these uncertainties exist because clinical study of CTE is in its infancy." *In re Nat. Football League Players' Concussion Injury Litig.*, 307 F.R.D. at 397. Moreover, "mood and behavioral conditions" are only "anecdotally associated with CTE." *Id.* The "study of CTE is nascent, and the symptoms of the disease, if any, are unknown." *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-6603 PSG (PLAx) | Date | December 27, 2019 |
|---|---|---|---|
| Title | Kimberly Archie, et al. v. Pop Warner Little Scholars, Inc. | | |

Medical personnel have examined approximately 200 brains with CTE as of 2015, in large part because it is only diagnosable post-mortem. That diagnosis requires examining sections of a person's brain under a microscope to see if abnormal tau proteins are present and, if so, whether they occur in the unique pattern associated with CTE." *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 421–22 (3d Cir. 2016).

The Court turns first to the arguments regarding causation. Because the first, second, third, fourth and fifth causes of action require demonstrating causation,[2] and because the Court

---

[2] The elements of a negligence claim, Plaintiffs' first cause of action, under California and Nevada law are: duty of care, breach of that duty, and defendant's breach was a substantial factor causing the harm. *See e.g.*, *Ladd v. County of San Mateo*, 12 Cal. 4th 913, 917 (1996); *Foster v. Costco Wholesale Corp.*, 128 Nev. 773, 777 (2012).

To establish fraud, Plaintiffs' second cause of action, the claimants' actual and justifiable reliance on the misrepresentation must have caused each Plaintiff to take a detrimental course of action, and that action must have caused the alleged damage. *Beckwith v. Dahl*, 205 Cal. App. 4th 1039, 1062 (2012); *see also Barmettler v. Reno Air, Inc.*, 114 Nev. 441, 446–47 (1998); *Goehring v. Chapman University*, 121 Cal. App. 4th 353 (2004) ("Assuming … a claimant's reliance on the actionable misrepresentation, no liability attaches if the damages sustained were otherwise inevitable or due to unrelated causes."); *Williams v. Wraxall*, 33 Cal. App. 4th 120 (1995).

The elements of fraudulent concealment, Plaintiffs' third cause of action, are: (a) defendant concealed or suppressed a material fact, (b) a duty to disclose the fact, (c) intentional concealment or suppression with intent to defraud, (d) plaintiff was unaware of the fact and would not have acted as he did if he knew the fact, and (e) as a result, sustained damage. *See e.g.*, *Boschma v. Home Loan Center, Inc.*, 198 Cal. App. 4th 230, 248 (2011); *Midwest Supply v. Waters*, 89 Nev. 210, 212-133 (1973).

The elements of negligent misrepresentation are (1) misrepresentation of a past or existing material fact, (2) without reasonable grounds to believe it true, (3) with intent to induce another's reliance, (4) justifiable reliance on the misrepresentation, and (5) resulting damage. *See e.g.*, *Shamsian v. Atlantic. Richfield Co.*, 107 Cal. App. 4th 967, 983 (2003); *Barmettler v. Reno Air, Inc.*, 114 Nev. 441, 448–49, 956 (1998).

Plaintiffs' fifth cause of action, wrongful death, requires evidence that the breach was the proximate or legal cause of resulting injury. *Boeken v. Philip Morris USA, Inc.*, 48 Cal. 4th at 806 (a wrongful death cause of action requires tort such as negligence or other wrongful act and resulting death); *Alsenz v. Clark County Sch. Dist.*, 109 Nev. 1062 (1993); *Kennedy v. Southern California Edison Co.*, 268 F.3d 763, 768 (9th Cir. 2001).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-6603 PSG (PLAx) | Date | December 27, 2019 |
|---|---|---|---|
| Title | Kimberly Archie, et al. v. Pop Warner Little Scholars, Inc. | | |

finds the causes of action fail on this basis, it need not address Defendant's other arguments. Next, the Court turns to Plaintiffs' UCL and FAL claims.

    A.    <u>First, Second, Third, Fourth, and Fifth Causes of Action</u>

The Court assumes without deciding that Plaintiffs have presented sufficient evidence to create a triable issue of fact as to duty and breach. As to causation, there are two types of causation: general and factual causation. In the context of toxic tort, the Ninth Circuit has explained that "[g]eneral, or 'generic' causation has been defined by courts to mean whether the substance at issue had the capacity to cause the harm alleged, while 'individual causation' refers to whether a particular individual suffers from a particular ailment as a result of exposure to a substance." *In re Hanford Nuclear Reservation Litig.*, 292 F.3d 1124, 1133 (9th Cir. 2002) (explaining that "plaintiffs must establish both generic and individual causation," thus, "that they must establish not only that the toxic substances released from Hanford are capable of causing the conditions complained of, but in addition, that Hanford emissions were the cause-in-fact of their specific conditions"). In the *In re National Football League Players Concussion Injury Litigation*, the Third Circuit explained that: "retired players would need to show both general causation (that repetitive head trauma is capable of causing ALS, Alzheimer's, and the like), and specific causation (that the brain trauma suffered by a particular player in fact caused his specific impairments)." *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d at 439–40; *see also Hilao v. Estate of Marcos*, 103 F.3d 767, 788 (9th Cir. 1996) (Rymer, J. dissenting in part and concurring in part) (contrasting "generic causation—that the defendant was responsible for a tort which had the capacity to cause the harm alleged—with individual proximate cause and individual damage").

Here, Plaintiffs argue that Defendant breached a duty of care by failing to warn children and parents about the risks of repetitive head injuries and of playing without proper equipment and techniques, including playing with helmets that were not certified as safe for children, and that it allowed children to play with such helmets. *See* Opp. 3–4. Plaintiffs argue that Defendant's negligent conduct caused Bright, Jr.'s and Cornell's deaths. *See* Opp. 15–18. Defendant argues that Plaintiffs cannot show either general or factual causation. *See* Mot. 9–10.

    i.    *Plaintiffs' Expert: James Merikangas, M.D.*[3]

---

[3] Defendant also moves to exclude or limit the expert opinions of Plaintiff's experts Lila F. Laux, Stephen Casper, Enrico Esposito, and Richard Stalnaker. *See* Dkts. # 203, 205, 207, 209. However, because neither party points to any of these experts as relevant for the causation

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-6603 PSG (PLAx) | Date | December 27, 2019 |
|---|---|---|---|
| Title | Kimberly Archie, et al. v. Pop Warner Little Scholars, Inc. | | |

As a preliminary matter, Defendant moves to exclude or limit the expert report of James Merikangas, M.D., *see* Dkt. # 211 ("*Merikangas Mot.*"), Plaintiffs have opposed, *see* Dkt. # 234 ("*Merikangas Opp.*"), and Defendant replied, *see* Dkt. # 246 ("*Merikangas Reply*").[4]

Federal Rule of Evidence 702 governs the admissibility of expert opinion. *See* Fed. R. Evid. 702(b)–(d). Expert opinion is admissible if it is based on sufficient facts or data, if it is the product of reliable principles and methods, and if the expert reasonably applies the principles and methods to the facts of the case. *See id.*; *see also City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1043 (9th Cir. 2014). The Rule 702 factors are broadly summarized as requiring "reliability, relevancy, and assistance to the trier of fact." *In re ConAgra Foods*, 302 F.R.D. at 549 (citing *Sementilli v. Trinidad Corp.*, 155 F.3d 1130, 1134 (9th Cir. 1998)). The expert opinion must involve scientific or technical knowledge. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 (1993). This requires consideration of the reliability and relevancy of the testimony. *Id.* at 592.

In conducting this preliminary assessment, the trial court is vested with broad discretion. *See United States v. Espinosa*, 827 F.2d 604, 611 (9th Cir. 1987) ("The decision to admit expert testimony is committed to the discretion of the district court and will not be disturbed unless manifestly erroneous."). "The trial court must act as a 'gatekeeper' to exclude junk science that does not meet Federal Rule of Evidence 702's reliability standards by making a preliminary determination that the expert's testimony is reliable" and relevant. *Ellis*, 657 F.3d at 982. In the case of Plaintiffs' experts, it is Plaintiffs' burden to prove by a preponderance of the evidence that the expert's testimony meets these admissibility requirements. *See Lust By & Through Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996); *Daubert*, 509 U.S. at 592 n.10.

The Ninth Circuit has stated that "[g]iven the difficulties in establishing a medical cause and effect relationship, causation can be proved even when we don't know precisely how the damage occurred, if there is sufficiently compelling proof that the agent must have caused the damage somehow." *Messick v. Novartis Pharm. Corp.*, 747 F.3d 1193, 1198 (9th Cir. 2014) (cleaned up). "Because of that inherent uncertainty, we do not require that an expert be able to identify the sole cause of a medical condition in order for his or her testimony to be reliable. It is

---

analysis, and because the Court finds the causation analysis dispositive, it need not reach these issues. *See generally Mot.*; *Opp.*

[4] In exercising its "gatekeeping role," the Court is not required to conduct a separate evidentiary hearing on admissibility under Daubert. *See U.S. v. Alatorre*, 222 F.3d 1098, 1102 (9th Cir. 2000).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-6603 PSG (PLAx) | Date | December 27, 2019 |
|---|---|---|---|
| Title | Kimberly Archie, et al. v. Pop Warner Little Scholars, Inc. | | |

enough that a medical condition be a substantial causative factor." *Id.* "The first several victims of a new toxic tort should not be barred from having their day in court simply because the medical literature, which will eventually show the connection between the victims' condition and the toxic substance, has not yet been completed." *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1237 (9th Cir. 2017).

In determining reliability, a court may consider a number of factors, including: (1) whether the theory can be and has been tested; (2) whether it has been subjected to peer review; (3) the known or potential rate of error; (4) whether the theory or methodology employed is generally accepted in the relevant scientific community. *Daubert*, 509 U.S. 579, 592–94 (1993). But "*Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141–42 (1999). "The adjective 'scientific' implies a grounding in the methods and procedures of science. Similarly, the word 'knowledge' connotes more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590. "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Federal judges must exclude scientific evidence under Rule 702 unless they are convinced that it speaks clearly and directly to an issue in dispute in the case, and that it will not mislead the jury. *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1321 (9th Cir. 1995).

Dr. James Merikangas is board certified in psychiatry and neurology. *See* Dkt. # 211-4 ("*Merikangas Report*"). He received his M.D. from Johns Hopkins University, School of Medicine. *Id.* He has a clinical specialty in neuropsychiatry focused on brain and spinal disease. *See Deposition of James Merikangas*, Dkt. # 211-3 ("*Merikangas Dep.*") 6–8. He has never personally authored any publications on CTE or sports-related concussions and has never participated in any research on the topic of CTE. *Id.* 8–9. Dr. Merikangas has been qualified as an expert in numerous cases, *see Merikangas Report*, 170–82. Dr. Merikangas offers opinions on CTE and its causative relationship to the deaths of Bright, Jr. and Cornell. *See generally Merikangas Report*.

As well as arguing generally that the science of CTE is undeveloped, Defendant makes a number of arguments as to why Dr. Merikangas's opinions should be excluded. Defendant argues that Dr. Merikangas's opinion does not comment on Stage I, as opposed to more serious

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-6603 PSG (PLAx) | | Date | December 27, 2019 |
|---|---|---|---|---|
| Title | Kimberly Archie, et al. v. Pop Warner Little Scholars, Inc. | | | |

stages, of CTE, and he stated that he is not familiar with the staging characteristics used to describe CTE and has no understanding about the significance of the diagnosis of Stage I CTE – both decedents post mortem diagnosis. *See Merikangas Mot.*; *Merikangas Dep.* 30–31 ("Q: Are you aware of the staging characteristics used to describe CTE by Boston University? A: Only generally. Q: And in what respect are you aware of that? A: That there are stages. I'm not familiar with the pathological accompaniments of those various stages." "Q: [A]s you sit here, you have no understanding about what they describe as Stage I CTE? A: No."). Defendant argues that Dr. Merikangas has done no independent research of any kind involving CTE, and therefore is not qualified to give his opinion. *See Merikangas Mot.* 18–19; *Merikangas Dep.* 8–9; *Daubert*, 43 F.3d at 1317. Dr. Merikangas relied exclusively on the pathological reports surrounding the deaths, and death certificates of both Cornell and Bright, Jr., and some medical records of Cornell, he did not rely on any specific documentation of head injuries or other information about the decedents. *Merikangas Dep.* 42, 60.[5]

Defendant argues that Dr. Merikangas' testimony is flawed because he did not consider any other causes for Stage I CTE or for the cause of death for either decedent. *See Merikangas Mot.* 15–16. With respect to Bright, Jr., he states that "[p]oor judgment and risk taking that may have been related to this accident can also be a consequence of brain damage from repetitive head injury." *Merikangas Report* 138. He also stated that "risk-taking behavior has been linked to adolescent brain development." *Id.* In deposition Dr. Merikangas stated that he could not recall reading any medical or psychological reports, other than those documents surrounding his death, he could not conclude with certainty that the behavior that lead to Bright, Jr.'s motorcycle accident was the result of repetitive head injury: it could be related to independent adolescent behavior that he could not rule out. *Merikangas Dep.* 42–44. With regard to Cornell, Merikangas stated that bipolar disorder can be developed independent of sports activity, and bipolar disorder can be a factor for suicide. *Id.* 47. In his report, he states that the "association of suicide and CTE has been extensively studied," but "[m]uch research has been inconclusive, and it is difficult to identify specific risk factors for suicide," and "[a]lthough not a leading cause of suicide, CTE has been shown to be present in the brains of suicide victims." *Merikangas Report* 138. He had not examined other potential causes of the behaviors that lead to Cornell and Bright, Jr.'s deaths. *Merikangas Dep.* 59 ("Q: have you examined and considered alternative causes of the behavior that led to the death of these two young men? A: No. Not

---

[5] In explaining how he reached his conclusions, Dr. Merikangas stated: "I read the reports about the young men, and information I had been provided about them said they had CTE. I read the causes of death, and I used my general understanding of psychiatry and neurology to arrive at my conclusion, based upon Cartesian and Aristotelian logic." *Merikangas Dep.* 60:12–24.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-6603 PSG (PLAx) | Date | December 27, 2019 |
|---|---|---|---|
| Title | Kimberly Archie, et al. v. Pop Warner Little Scholars, Inc. | | |

specifically. . . Q: Have you eliminated other causes for the behavior that led to the death of these two young men? A: No."); *see also Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 424 (5th Cir. 1987) ("Dr. Johnson has admitted that Viterbo's symptoms could have numerous causes and, without support save Viterbo's oral history, simply picks the cause that is most advantageous to Viterbo's claim.").

Dr. Merikangas also stated in deposition that he has no specific basis for concluding that Cornell and Bright, Jr. suffered head trauma while playing Pop Warner football "aside from the fact that people playing football have head trauma." *Merikangas Dep.* 57–59 ("Q: What evidence do you have that Tyler Cornell or Paul Bright, Jr. suffered any head trauma playing Pop Warner football? A: Aside from the fact that people playing football have head trauma, none. Q: The generalized notion that people playing football have head trauma? A: Yes."). Defendant argues that Dr. Merikangas fails to address the context of the number of concussions or hits to the head and correlation to injury: he has no information about the number of impacts suffered by either Bright, Jr. or Cornell during their time in Pop Warner football. *See Merikangas Mot.* 17–18; *Merikangas Dep.* 17–18. The dose-response relationship observes whether "a change in amount, intensity, or duration of exposure to an agent is associated with a change—either an increase or decrease—in risk of disease." *McClain v. Metabolife Int. Inc.*, 401 F.3d 1233, 1242 (11th Cir. 2005). Plaintiffs respond that there is no requirement of a "dose level estimation," all that is required is a "determination, to a reasonable degree of medical probability," that exposure was a substantial factor in the injury. *Merikangas Opp.* 14:4–14 (citing *Davis v. Honeywell Internat., Inc.*, 245 Cal. App. 4th 477, 492 (2016)).

In a personal injury action, "causation must be proven within a reasonable medical probability based upon competent expert testimony. Mere possibility alone is insufficient to establish a prima facie case." *Jones v. Ortho Pharm. Corp.*, 163 Cal. App. 3d 396, 209 (1985); *see also Morgenroth v. Pacific Med. Ctr., Inc.*, 54 Cal. App. 3d 521, 533 (1976). Although Dr. Merikangas opines that playing Pop Warner football substantially caused the death of both decedents, he does not provide any methodology or analysis to assess other factors that may have caused their deaths, and he did not base his opinions on any medical records or evidence of hits sustained by either decedent. Plaintiffs point to no explanation as to how he concludes that participation in Pop Warner was a substantial factor in their deaths, given the evidence of significant other possible factors independent of Pop Warner football, rendering his causation opinion unreliable. *See Cloud v. Pfizer Inc.*, 198 F. Supp. 2d 1118, 1136 (D. Ariz. 2001) ("Additionally troubling is the fact that Dr. Johnstone did not fully explore other potential causes of Mr. Baskins' suicide, including his alcohol use and family problems . . . [t]he process of assessing alternative and specific causes is one of the hallmark tasks of a physician . . . [p]laintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-6603 PSG (PLAx) | Date | December 27, 2019 |
|---|---|---|---|
| Title | Kimberly Archie, et al. v. Pop Warner Little Scholars, Inc. | | |

has not produced evidence to show that Dr. Johnstone considered alternative explanations for the suicide, and as a result, Dr. Johnstone's testimony again appears to lack sufficient reliability to be admissible."). The Court concludes that Dr. Merikangas's testimony should be excluded under *Daubert*. However, assuming arguendo that Dr. Merikangas's testimony is admissible, the Court concludes that there is not a triable issue of fact as to causation, as discussed below.

      ii.     *Causation*

The Court addresses briefly general causation, and then turns to factual causation.

      a.     *General Causation*

As to general causation, Defendant argues that Plaintiffs cannot prove that "youth football generally causes CTE." *See Mot.* 10–13. Defendant relies on the following evidence. Its experts, Dr. Bailes, Dr. Barr, and Dr. Castellani, submitted declarations stating that the study of CTE is in its early stages and its correlation with football has not been scientifically proven. *See id.* 10:15–20. For instance, Bailes stated that "the studies that have been published are highly selective and the true incidence and prevalence of CTE in the general population are unknown," that "[c]ontrol subjects from the general population are needed in order to determine the true incidence and prevalence of CTE," that "[a]t this point in time, all we know is that phosphorylated tau protein has been found in post mortem brain studies of former athletes," and that "[t]here is presently no universal scientific or medical agreement about subconcussive impact" and "no consensus as to the significance of a subconcussive impact." *Declaration of Julian E. Bailes*, Dkt. # 218-6 ("*Bailes Decl.*") ¶¶ 8–9. In addition, Defendant's expert Rudy Castellani opines that "CTE is poorly understood," that "[p]athological features considered characteristic of CTE have evolved substantially over time, and will continue to evolve," and the "most characteristic feature of CTE reported by a 2015 consensus group is not specific for head trauma or athletic participation," it is similarly described in individuals with various other conditions. *Declaration of Rudy Castellani*, Dkt. # 218-8 ("*Castellani Decl.*") ¶¶ 16–19. Castellani also states that "[c]urrent CTE diagnosis suffers from many problems," that such diagnoses rely on techniques "not applied to diagnoses of other diseases," and the frequency of "neuropathological findings that have been described as CTE in athlete case series come from a single institution, are not available for independent review and have not been replicated by other research groups." *Id.* ¶ 19. Castellani also states that "[t]here is no scientific evidence that mild traumatic brain injury causes a progressive, neurodegenerative disease," that "[p]reliminary data to date conflict as to whether mild traumatic brain injury exposure poses a moderate relative risk for the development of neurodegenerative diseases; such a risk assessment cannot be made to a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-6603 PSG (PLAx) | Date | December 27, 2019 |
|---|---|---|---|
| Title | Kimberly Archie, et al. v. Pop Warner Little Scholars, Inc. | | |

reasonable degree of medical certainty." *Id.* ¶ 21. In addition, in deposition Plaintiff's expert Dr. Harris explained that there is not an understanding at this point of what causes the tau to become hyperphosphorylated and cause problems in the brain because tau protein occurs normally in the body. *See* Dkt. # 211, Ex. A 68–69. Defendant argues that Plaintiffs have not addressed the true causes, incidence and prevalence of CTE, which remain unknown; and that control subjects are needed to determine its incidence and prevalence. *See Reply* 8; *Bradley v. Brown*, 852 F. Supp. 690, 700 (N.D. Ind.), aff'd, 42 F.3d 434 (7th Cir. 1994) ("[P]laintiffs' own evidence clearly establishes that the 'science' of MCS's etiology has not progressed from the plausible, that is, the hypothetical, to knowledge capable of assisting a fact-finder, jury or judge.").

In response, Plaintiffs argue that in every game of football children suffer multiple blows to the head, that multiple blows together can cause cumulative brain damage, and that concussive as well as subconcussive injuries of the brain can cause brain damage. *See Declaration of Bennet Omalu*, Dkt. # 242-8 ("*Omalu Decl.*") ¶¶ 18–26; *Declaration of James Merikangas*, Dkt. # 242-12 ("*Merikangas Decl.*") ¶¶ 13–16 (opining that hits to the body and head are frequent in tackle football, that they "are especially dangerous to children because the brain does not fully mature until about 25 year of age, which places young people at the greatest risk from trauma to the brain," and that "repetitive brain impact exposures have a cumulative effect in the rapidly developing brains of youth football players"). Plaintiffs also cite to the deposition testimony of Dr. Bailes, in which he stated that "the number of impacts are one of the main criteria to exposure," and the "best predictor [of CTE] we have is probably exposure," and "repetitive subconcussive blows," are a factor in developing CTE. *Opp.* 14; *Finnerty Decl.*, Ex. 15 *Deposition of Julian Bailes*, 67–68, 70–71 ("*Bailes Dep.*").

The Court determines that, assuming the admissibility of Plaintiffs' experts, there may be triable issues of fact as to general causation regarding whether playing youth tackle football causes CTE. However, the Court concludes that there is not a triable issue of fact as to factual causation, whether playing Pop Warner football caused decedents' deaths, as discussed below.

        b.     *Factual Causation*

California has adopted the "substantial factor" test for cause-in-fact determinations. *Lawrence v. La Jolla Beach & Tennis Club, Inc.*, 231 Cal. App. 4th 11, 33 (2014). "A defendant's negligent conduct may combine with another factor to cause harm; if a defendant's negligence was a substantial factor in causing the plaintiff's harm, then the defendant is responsible for the harm; a defendant cannot avoid responsibility just because some other

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-6603 PSG (PLAx) | Date | December 27, 2019 |
|---|---|---|---|
| Title | Kimberly Archie, et al. v. Pop Warner Little Scholars, Inc. | | |

person, condition, or event was also a substantial factor in causing the plaintiff's harm; but conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct." *Id.* "The issue of causation may be decided as a question of law only if, under undisputed facts, there is no room for a reasonable difference of opinion." *Id.* A "force which plays only an 'infinitesimal' or 'theoretical' part in bringing about injury, damage, or loss is not a substantial factor." *Rutherford v. Owens-Illinois, Inc.*, 16 Cal. 4th 953, 969 (1997) (plaintiff must prove "there is a reasonable medical probability based upon competent expert testimony that the defendant's conduct contributed to plaintiff's injury").

"The law is well settled that in a personal injury action causation must be proven within a reasonable medical probability based upon competent expert testimony. Mere possibility alone is insufficient to establish a prima facie case. [Citations.] That there is a distinction between a reasonable medical 'probability' and a medical 'possibility' needs little discussion. There can be many possible 'causes,' indeed, an infinite number of circumstances which can produce an injury or disease. A possible cause only becomes 'probable' when, in the absence of other reasonable causal explanations, it becomes more likely than not that the injury was a result of its action. This is the outer limit of inference upon which an issue may be submitted to the jury." *Cooper v. Takeda Pharm. Am., Inc.*, 239 Cal. App. 4th 555, 577 (2015); *see also Miranda v. Bomel Construction Co.*, 187 Cal. App. 4th 1326, 1355 (2010). A plaintiff's expert testimony "can enable a plaintiff's action to go to the jury only if it establishes a reasonably probable causal connection between an act and a present injury." *Id.* at 578. "[P]roffering an expert opinion that there is some theoretical possibility the negligent act could have been a cause-in-fact of a particular injury is insufficient to establish causation." *Id.* (quoting *Saelzler v. Advanced Grp. 400*, 25 Cal. 4th 763, 775–76 (2001) (expert testimony positing a "mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant")). "Instead, the plaintiff must offer an expert opinion that contains a reasoned explanation illuminating why the facts have convinced the expert, and therefore should convince the jury, that it is more probable than not the negligent act was a cause-in-fact of the plaintiff's injury." *Id.* However, "it is not necessary for a plaintiff to establish the negligence of the defendant as the proximate cause of injury with absolute certainty so as to exclude every other possible cause of a plaintiff's illness, even if the expert's opinion was reached by performance of a differential diagnosis." *Id.*

For instance, in *Cooper*, the plaintiff alleged the defendant's drug caused his bladder cancer. *Id.* at 561. The plaintiff's specific causation expert had conducted a differential diagnosis based on his review of the plaintiff's medical records, review of relevant literature and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-6603 PSG (PLAx) | Date | December 27, 2019 |
|---|---|---|---|
| Title | Kimberly Archie, et al. v. Pop Warner Little Scholars, Inc. | | |

his own scientific research, and had ruled out numerous potential causes and risk factors, concluding that defendant's drug was the "most substantial causative factor." *Id.* at 567–70. The *Cooper* court held that the trial court erred in ruling the expert's testimony inadmissible, because he failed to definitively rule out potential causes of the cancer, because it was "not necessary for a plaintiff to establish the negligence of the defendant as the proximate cause of the injury with absolute certainty so as to exclude every other possible cause of a plaintiff's illness." *Id.* at 578.

In contrast, in *Cottle v. Superior Court*, the court determined that there was no showing of causation to "a degree of reasonable medical probability." 3 Cal. App. 4th 1367, 1386 (1992). The petitioners argued "that although not using the magic words, the declaration of [their expert], which tied exposure to specific chemicals to specific ailments suffered by specific plaintiffs as required by the court, fulfills the burden of establishing reasonable medical probability as it placed defendants on notice of petitioners' physical injury claims" and supported causation. *Id.* However, the expert "did not make any statement that exposure to the chemicals in the Dunes had caused any injury to any of the petitioners to a degree of reasonable probability," instead, the expert stated that because of the mixed nature of the chemicals, "it is impossible to assign specific chemicals has [sic] having caused specific conditions to specific individuals." *Id.* The opinion that exposure to the chemicals "placed these people at significantly increased risk to develop a number of diseases" and that "the changes exhibited by the group are in all probability related to living in close proximity to chemicals in the environment," was insufficient because it did not "tie the changes to the chemicals at the Dunes as separate from other chemicals in the environment and the changes referred to are those indicating an increased probability of infection (i.e., an increased risk of developing a number of diseases)." *Id.* The most the expert said was that the medical condition "could possibly be partially due to and/or exacerbated by continuous exposure" or "could possibly be [or have been] exacerbated by continuous exposure" to chemical substances, but "such statements of possibility instead of probability are not sufficient to prove causation." *Id.*

The Court turns first to the expert testimony in this case, then to factual causation as to Paul Bright, Jr., and then as to Tyler Cornell.

### 1. Expert Evidence

As discussed, expert medical testimony is a crucial element of the evidence needed to establish causation. *See Cooper*, 239 Cal. App. 4th at 577; *see also Jones*, 163 Cal. App. 3d at 403. Here, Plaintiffs rely on evidence from their experts Dr. Brent Harris and Dr. James

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-6603 PSG (PLAx) | Date | December 27, 2019 |
|---|---|---|---|
| Title | Kimberly Archie, et al. v. Pop Warner Little Scholars, Inc. | | |

Merikangas, as well as a declaration from Dr. Bennet Omalu regarding Bright, Jr. *Opp.* 17–18. Dr. Brent Harris stated in his declaration that "there is sufficient diagnostic evidence to support early chronic traumatic encephalopathy as a neuropathological diagnosis for both" Paul and Tyler's cases. *Id.* 17:19–24; *Harris Decl.* ¶ 12. But, in deposition, Dr. Harris explained that he cannot answer the question of whether there is any "clinical significance of Stage I CTE" because "we can't make a stage diagnosis while somebody is living, and there has not been enough study of cases to link somebody's clinical or psychological neurologic history with a particular stage, especially in the early stages of CTE." *Corleto Decl.*, Ex. C (Deposition of Brent T. Harris) 60 ("*Harris Dep.*"). He also stated he has no reason to believe Paul Bright Jr.'s death was anything but an accident, and that he cannot opine as to whether CTE was the cause of death in either decedent. *Id.* 52–53, 55–56.

Dr. Merikangas stated in his declaration that "[p]oor judgment and risk taking are a consequence of brain damage from repetitive brain trauma," and thus that CTE from playing Pop Warner was a "substantial factor" in Bright, Jr.'s death. *Merikangas Decl.* ¶¶ 25, 27. However, in deposition, Dr. Merikangas stated that he did not have a documented basis for concluding that either Tyler Cornell or Paul Bright, Jr. suffered head trauma playing Pop Warner football, and had not considered or eliminated other possible causes for the behaviors that led to their deaths, as discussed above. *Merikangas Dep.* 58–59.

Finally, Dr. Omalu stated in his declaration that "[a] post-mortem neuropathological examination of Paul Bright, Jr.'s brain confirmed that Paul Bright was suffering" from CTE, that his "family, social, education, criminal, and medical histories during his lifetime, prior to his death were consistent with the diagnosis of CTE," and that CTE "was a substantial and significant contributory factor to the violent death of Paul Bright." *Omalu Decl.* ¶¶ 33, 34, 37. Dr. Omalu also stated that in every game of football children suffer multiple blows to the head, that multiple blows together can cause cumulative brain damage, that concussive as well as subconcussive injuries of the brain can cause brain damage. *See id.* ¶¶ 18–26. He also stated that CTE may manifest with "mood disorders," such as "depression and anxiety disorders, bipolar disorders, parasuicides and suicides and other neuropsychiatric disorders." *Id.* ¶¶ 28–29. He stated that "the eventual outcome of brain damage is an accumulation of all exposures to trauma over time." *Id.*, Ex. A. The symptoms of CTE "may begin to manifest immediately during exposure," or may only emerge "after a latent period of weeks to months to years to decades." *Id.* There is a "variability in symptomatology": "CTE and brain trauma like other disease syndromes, do not manifest or affect each and every individual in the same way." *Id.* Dr. Omalu's declaration thus discusses broadly CTE, but does not explain how he arrived at his conclusion that Pop Warner football was a "substantial factor" in Bright, Jr.'s death, given the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-6603 PSG (PLAx) | Date | December 27, 2019 |
|---|---|---|---|
| Title | Kimberly Archie, et al. v. Pop Warner Little Scholars, Inc. | | |

multitude of other possible factors, and does not explain the scientific or methodological basis for his conclusion as to this specific incident in his declaration. The Court similarly finds that his testimony is unreliable. Thus, a separate basis to grant summary judgment on causation exists based on Plaintiffs' lack of competent expert testimony to establish causation.

The Court notes briefly the expert testimony presented by Defendant attacking a causal connection. For instance, Defendant puts forth the testimony of their expert Rudy Castellani, who opines that, after examining the case study material and reports from Boston University, neither Paul Bright, Jr. nor Tyler Cornell qualify for diagnoses of CTE pathology. *Castellani Decl.* ¶¶ 40–41 ("None of the numerous criteria for CTE pathology was present in either Paul Bright Jr. or Tyler Cornell, notwithstanding the extremely permissive nature of those criteria and the absence of guidance in terms of how to employ the supportive criteria."). Dr. Barr states that Stage I pathology "has been hypothesized in research papers by Dr. Ann Mckee as representing the earliest stage of CTE, but has not received validation as a formal clinical diagnosis in studies conducted by the larger scientific community." *Id.* ¶ 7. He states that "[a]lthough a report from an NIH Consensus Meeting revealed general agreement among experts on some of the neuropathological features of more severe (Stage III/IV) stages of CTE, less advanced stages of the disorder (Stage I/II) were not examined by the consensus panel and their existence remains somewhat controversial. For example in one well-known study, signs of abnormal tau were observed in 89% of individuals under age 30 who were not football players or known to exhibit clinical signs associated with CTE. Based on those findings, it remains totally unclear whether the neuropathological diagnoses provided in the BU reports for Mr. Cornell and Mr. Bright represent the effects of CTE secondary to football exposure or some other, possibly benign, cause." *Id.* Defendants thus argue that there is no defined threshold or generally accepted criteria of "Stage I" CTE and no known correlation between Stage I and the behaviors that led to the deaths of Cornell or Bright, Jr. *Mot.* 12:19–21. In addition, there "were 4,586 motorcycle fatalities in 2014 with 29% of them involving individuals less than 30 years of age." *Barr Decl.* ¶ 11. During that year "approximately 33% of the motorcycle riders involved in fatal crashes were speeding, in a manner similar to what was described in this case." *Id.* In addition, Defendant's expert opined that "males from that age group are prone to risky behaviors, whether or not they ever played football, and the social and individual factors that shape those behaviors extend far beyond what one can attribute to the effects of any CTE or exposure to football," and that "BU's conclusion that a clinical diagnosis of CTE was unlikely for Mr. Bright, indicates that the cause of the risky and thrill-seeking behaviors exhibited before his death were more likely to be the result of numerous other factors extending well beyond his exposure to youth football, which ended ten-years before his death." *Id.* ¶ 24.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-6603 PSG (PLAx) | Date | December 27, 2019 |
|---|---|---|---|
| Title | Kimberly Archie, et al. v. Pop Warner Little Scholars, Inc. | | |

   2.  *Paul Bright, Jr.*

  Paul Bright, Jr. died in a high-speed motorcycle accident at age 24. *DSUF* ¶ 9. Plaintiff alleges that he developed behavioral and emotional issues, although no such issues were medically documented, instead, Plaintiffs point to evidence that Paul Bright, Jr. was cited with reckless driving and driving under the influence, that he repeatedly blew off his court-ordered DUI classes, that it took him almost three years to complete the six-two-hour court-ordered DUI classes, and that he bought a used motorcycle even though he did not have a motorcycle license. *Id.* ¶¶ 7–8; *PSDF* ¶ 7. Bright, Jr. also played high school football, and he wrestled, did karate, and gymnastics, although for short periods of time. *DSUF* ¶ 5; *PSDF* ¶ 5. He did not sustain any known concussions while playing PWLS football. *DSUF* ¶ 3; *PSDF* ¶ 3. His neuropathology report from Boston University states that he was diagnosed with early stage CTE. *Finnerty Decl.*, Ex. 4, *Neuropathology Report of Paul Bright, Jr.*; *Harris Decl.* ¶ 12. However, Paul Bright, Jr.'s BU Clinical Report "makes a primary clinical diagnosis of Generalized Anxiety Disorder" and concludes that a clinical diagnosis of CTE is "unlikely," and there was "no reported history of any psychiatric or psychological treatment." *Declaration of William B. Barr*, Dkt. # 218-7 ("*Barr Decl.*") ¶ 10.

  The Court cannot conclude that Plaintiffs have presented evidence to create a triable issue as to factual causation which is not speculative. First, there is no evidence as to concussions or head injuries suffered by either Bright, Jr. or Cornell, nor any evidence as to how frequently either of them actually suffered head impacts during Pop Warner, so the jury would be required to assume the generalized notion that the playing of Pop Warner football resulted in sufficient head impacts to cause CTE, which would have been avoided but-for Defendant's negligent conduct. *See Opp.* 17–18; *Rutherford*, 16 Cal. 4th at 977 (holding that a plaintiff must show "that the contribution of the individual cause [was] more than negligible or theoretical"). Second, Plaintiffs' expert Dr. Merikangas did not analyze other potential factors that could have led to the diagnosis of CTE other than Pop Warner football, and Dr. Omalu has not provided an explanation as to why Pop Warner, as opposed to other factors, caused decedents' CTE. Third, Plaintiffs' expert Dr. Merikangas has not analyzed any other potential factors for the behavior of Bright, Jr., such that he could testify as to the fact that the behavioral issues resulted from CTE, as opposed to a host of other social, biological and environmental factors in causing certain behavior; and admits that risk-taking behavior can be attributed to a broad range of factors, including being "an adolescent, learning disabilities, and other mental or emotional problems." *See Merikangas Dep.* 43–44, 58–59. Dr. Omalu admits that the symptoms of CTE have significant "variability." *Omalu Decl.*, Ex. A. Accepting that risk-taking is one possible behavioral symptom of CTE, Bright, Jr. *may* have been exhibiting behavior as a result of CTE,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-6603 PSG (PLAx) | Date | December 27, 2019 |
|---|---|---|---|
| Title | Kimberly Archie, et al. v. Pop Warner Little Scholars, Inc. | | |

but he may have simply been exhibiting such behavior as a result of adolescence. Dr. Omalu has not offered any specific factual basis or explanation as to whether participation in Pop Warner caused, specifically, Bright, Jr.'s death, as opposed to independent causes. Plaintiffs have not provided expert evidence sufficiently connecting the behavior of speeding on a motorcycle as attributable to behavioral effects of Stage I CTE. The Court is mindful that a defendant's negligent conduct "may combine with another factor to cause the harm," and that an expert need not "exclude every other possible cause of a plaintiff's" injury. *See Cooper*, 239 Cal. App. 4th at 577; *Lawrence*, 231 Cal. App. 4th at 33. But the Court is not requiring that Plaintiffs' experts exclude all other possible causes, instead, they must at least consider other causes, and provide a sufficient basis to establish that this cause is a conceivably probable one, as opposed to others. "A possible cause only becomes 'probable' when, in the absence of other reasonable causal explanations, it becomes more likely than not that the injury was a result of its action. This is the outer limit of inference upon which an issue may be submitted to the jury." *Cooper*, 239 Cal. App. 4th at 577. Plaintiffs have not surmounted this production hurdle. Any behavioral factors that may have contributed to Bright, Jr's motorcycle accident have multifold origins, and Plaintiffs have not produced sufficient evidence to amount to more than a "possibility" that Pop Warner football was a substantial cause of his death. *See Cottle*, 3 Cal. App. 4th at 1386 (where petitioners did not "tie the changes to the chemicals at the Dunes as separate from other chemicals in the environment and the changes referred to are those indicating an increased probability of infection (i.e., an increased risk of developing a number of diseases)," the evidence was insufficient to establish causation, because the most petitioners' expert said was that the medical condition "could possibly be partially due to and/or exacerbated by continuous exposure" or "could possibly be [or have been] exacerbated by continuous exposure" to chemical substances, but "such statements of possibility instead of probability are not sufficient to prove causation"); *Miranda v. Bomei Construction Co.*, 187 Cal. App. 4th 1326, 1343 (2010). Plaintiffs' evidence "merely shows the speculative possibility that" Defendant's conduct might have prevented the deaths. *See Saelzler*, 25 Cal. 4th at 776.

        3.     *Tyler Cornell*

Tyler Cornell died from a self-inflicted gunshot wound to his head at age 25. *DSUF* ¶ 24. He played youth football and high school football. *Id.* ¶ 16. Craig Cornell testified that Tyler broke his nose in 2006, during preseason football practice in high school. *Id.* ¶ 18; *Craig Cornell Dep.* 96–97. He also testified that Tyler broke teeth from riding a skateboard in college. *DSUF* ¶ 18; *Craig Cornell Dep.* 98. Tyler was hospitalized approximately seven times over approximately six years for various psychological illnesses, and was admitted to a 30-day residential program. *DSUF* ¶¶ 21–22; *Jo Cornell Dep.* 95. He underwent psychiatric and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-6603 PSG (PLAx) | Date | December 27, 2019 |
|---|---|---|---|
| Title | Kimberly Archie, et al. v. Pop Warner Little Scholars, Inc. | | |

psychological treatment for bipolar disorder and associated psychiatric conditions. *DSUF* ¶¶ 21–23. When Cornell was in high school, there was a fatal car accident that resulted in the death and imprisonment of childhood friends. *Id.* ¶ 23. He was never diagnosed with nor received medical treatment for head injury or concussion related to PWLS. *Id.* ¶¶ 14–15. The BU Clinical Report concluded that his primary diagnosis was Bipolar Disorder, while CTE was listed as a "contributing" factor." *Barr Decl.* ¶ 9. It also indicated that Cornell had a family history of mood disorders with signs of depression reported in his father, paternal grandfather, and maternal grandmother, as well as a history of neurological and neurodegenerative disorders, including epilepsy, multisystem atrophy, and Parkinson's disease. *Id.*, Ex. A. In 2015 in the United States, suicide was the seventh leading cause of death for males and the fourteenth leading cause of females. *DSUF* ¶ 53. Suicide was the second leading cause of death for young people aged 15 to 34. *Id.*

As to Cornell, in addition to the above expert testimony, Dr. Merikangas confirmed that suicide is the leading cause of death for all young people age 15 through 34, that these statistics are not correlated with involvement in football or sports, and that prior to death, Cornell had been diagnosed with bipolar disorder, a condition that can develop independent of any sports and which increases the likelihood of suicide. *Merikangas Dep.* 45, 47. Plaintiffs' experts do not provide a factual basis or explanation as to how much the risk of suicide as a result of Pop Warner was increased as to Cornell, specifically. *See id.*; *Omalu Decl.*, Ex. A; *Cloud*, 198 F. Supp. 2d at 1136 (granting summary judgment because plaintiff could not prove that Zoloft caused suicide where the expert "did not fully explore other potential causes of Mr. Baskins' suicide, including his alcohol use and family problems").

The Court concludes as it did for Bright, Jr., that Plaintiffs have not produced evidence to show that Cornell's various psychological ailments, including bipolar disorder, which can be manifested in persons not suffering from any head impacts, are attributable to Pop Warner's negligence to a reasonable medical probability based on expert testimony. Plaintiffs' experts do not provide bases to opine on how or why Pop Warner football allegedly causing CTE is a substantial factor in his suicide, rather than other causes unrelated to CTE or Pop Warner. For the same reasons as discussed above, the Court concludes Plaintiffs have not provided expert evidence that make it more than a possibility that Pop Warner football was a substantial cause in Cornell's suicide.

The Court concludes that there is not a sufficient evidentiary basis that Pop Warner's alleged negligence in connection with Pop Warner Football, to the exclusion of high school football, other experiences, social or biological factors, was a substantial factor in Paul Bright,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-6603 PSG (PLAx) | Date | December 27, 2019 |
|---|---|---|---|
| Title | Kimberly Archie, et al. v. Pop Warner Little Scholars, Inc. | | |

Jr.'s motorcycle accident and Tyler Cornell's suicide. Plaintiffs essentially argue that any child that plays Pop Warner football, simply by virtue of participating, without any documentation of head trauma, if found with CTE post-mortem, has a viable cause of action based on any occurrence as a result of recklessness or mood behaviors in that person's life. The Court does not agree that this satisfies the factual causation standard.

Accordingly, the Court **GRANTS** summary judgment as to Plaintiffs' first through fifth causes of action.

B. Sixth and Seventh Causes of Action

Defendant argues that Plaintiffs' UCL claim, the sixth cause of action, and FAL claim, the seventh cause of action, fail because Plaintiffs cannot establish false advertisement or misrepresentation, and cannot establish "actual injury" for standing. *See Mot.* 15–22. Plaintiffs do not respond to any of these arguments in their opposition. *See generally Opp.* Arguments to which no response is supplied are deemed conceded. *See, e.g.*, *Tapia v. Wells Fargo Bank, N.A.*, No. CV 15-03922 DDP (AJWX), 2015 WL 4650066, at *2 (C.D. Cal. Aug. 4, 2015); *Silva v. U.S. Bancorp*, No. 5:10-cv-01854-JHN-PJWx, 2011 WL 7096576, at *3 (C.D. Cal. Oct. 6, 2011); *see also Reply* 2. Accordingly, the Court **GRANTS** summary judgment as to Plaintiffs' sixth and seventh causes of action.[6]

IV. Conclusion

For the foregoing reasons, Defendant's motion for summary judgment is **GRANTED**. This order closes the case.

**IT IS SO ORDERED.**

---

[6] In addition, Plaintiffs have stated they are not intending to pursue these claims at trial. *See* Dkt. # 588, 3.